THOMAS A. JOHNSON, #119203
KRISTY M. Kellogg, #271250
Johnson, Greene & Roberts LLP
400 Capitol Mall, Suite 1620
Sacramento, California  95814
Telephone:  (916) 422-4022

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>             Plaintiff,<br>      v.<br><br>MATTHEW MULLER,<br>             Defendant. | Case No.: 2:15-cr-00205-TLN<br><br>DEFENDANT'S NOTICE AND MOTION TO SUPPRESS EVIDENCE PURSUANT TO *FRCrP 12(b)* AND REQUEST FOR EVIDENTIARY HEARING |

TO THE COURT IN THE ABOVE-CAPTIONED CASE AND TO THE UNITED STATES ATTORNEY:

      PLEASE TAKE NOTICE that on June 23, 2016, or as soon thereafter as the matter may be heard, Defendant, MATTHEW MULLER, shall and hereby does move the Court to suppress evidence pursuant to *Federal Rules of Criminal Procedure, Rule 12(b)*.

1

# **Table of Contents**

Table of Authorities...............................................................................................3

I.      Introduction..........................................................................................5

II.     Description of Evidence to be Suppressed......................................5

III.    Statement of Facts...............................................................................6

        A. Relevant Facts from the Police Reports....................................6

        B. Relevant Facts from the Preliminary Hearing…………...........................8

IV.     Points and Authorities.......................................................................12

        A. Defendant Has a Legitimate Expectation of Privacy to Challenge the
           Legality of the Search and Seizure........................................................12

        B. The Burden is Upon the Prosecution to Prove That the Search was
           Reasonable Since the Police Did Not Possess a Search Warrant….......14

        C. Recent Supreme Court Case Law Dictates a Warrant is Generally
           Required to Search a Cell Phone...........................................................14

        D. No Exigent Circumstance Existed that Would Justify the Search of the
           Cell Phone.............................................................................................15

                1.   Probable Cause Does Not Exist Justify a Warrantless Search
                     Absent Exigency.......................................................................16

                2.   There Was No Danger to Others That Would Qualify as an
                     Exigency and Excuse the Warrant Requirement.......................17

                3.   A Concern Regarding the Escape of a Suspect is an Exigent
                     Circumstance that Does Not Apply in this Case.......................19

        E.  The Fruits of the Unlawful Search Must Be Suppressed and Forever
            Eliminated as Evidence in the Case and All Others that Follow……...19

        F. The Phone Was Never Abandoned, It Was Simply Lost.......................20

        G.  Request for Evidentiary Hearing……………………………………...22

V.      Conclusion...........................................................................................23

## **Table of Authorities**

*California v. Carney*, 471 U.S. 386, 390-391(1985)..................................................12

*Flippo v. West Virginia,* 528 U.S. 11, 13 (1999)....................................................12

*Horton v. California*, 496 U.S. 128, 137 n. 7 (1990)…………........................................16

*Mapp v. Ohio,* 367 U.S. 643 (1961)..................................................................12

*Maryland v. Dawson,* 527 U.S. 465, 466 (1999)....................................................12

*Mincey v. Arizona,* 437 U.S. 385, 392–393(1978).............................................16, 17

*Minnesota v. Carter*, 525 U.S. 83, 88 (1998)…………............................................12

*Murray v. U.S.,* 487 U.S. 533 (1988)................................................................12

*People v. Shepherd,* 23 Cal. App. 4th 825, 828–829 (1994)....................................13

*Rakas v. Illinois,* 439 U.S. 128, 133-134 (1978)..........................................12, 20-21

*Riley v. California,* 134 S. Ct. 2473 (2014)..............................13, 14-15, 21, 22

*Terry v. Ohio,* 392 U.S. 1, 12 (1968)...........................................................16, 23

*U.S. v. Alderman,* 394 U.S. 165, 171 (1969).....................................................12

*U.S. v. Camou*, 773 F.3d 932, 940 (9th Cir. 2014) ...........................................16

*U.S. v. Cervantes*, 703 F.3d 1135, 1141 (9th Cir.2012).......................................14

*U.S.v. Licavoli*, 604 F.2d 613, 621 (9th Cir.1979)…………………………………22

*U.S. v. Lopez-Cruz*, 730 F.3d 803 (9th Cir. 2013) ...........................................21

*U.S. v. Johnson*, 256 F.3d 895 (9th Cir. 2001) ................................................19

*U.S. v. McConney*, 728 F.2d 1195, 1199 (9th Cir.1984) ................................15-16

*U.S. v. Nordling*, 804 F.2d 1466, 1469 (9th Cir.1986) ......................................21

*U.S. v. Patzer*, 277 F.3d 1080, 1086 (9th Cir.2002)..........................................20

*U.S. v. Reyes–Bosque*, 596 F.3d 1017, 1029 (9th Cir.2010) ...........................16

*U.S.v. Santora*, 600 F.2d 1317, 1320 (9th Cir.1979)…………………………………22

*U.S. v. Salvador*, 740 F.2d 752, 758 n. 5 (9th Cir.1984) ..................................19

*U.S. v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986) …………………………………22

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*U.S. v. Wanless,* 822 F. 2d 1459 (9th Cir. 1989).................................................................20

*U.S. v. Washington*, 490 F.3d 765, 774 (9th Cir.2007) .....................................................20

*Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 298–299 (1967)…..........................17

*Weeks v. United States,* 232 U.S. 383 (1914).....................................................................12

*Welsh v. Wisconsin*, 466 U.S. 740, 753, (1984) .................................................................19

*Wong Sun v. U.S.,* 371 U.S. 471 (1963)………..................................................................19

*Wyoming v. Houghton*, 526 U.S. 295, 300 (1999)..............................................................12

# I – INTRODUCTION

On June 5, 2015, Mr. Muller's Fourth Amendment right to be free from unreasonable searches and seizures was violated by the warrantless search of his cellular ("cell") phone.  Mr. Muller left his phone at a home during the course of a residential burglary on the aforementioned date.  Without a warrant and without consent, a Dublin Police Officer took possession of the phone and made a call from the phone, thereby effectively searching the phone's contents.  The warrantless search of Mr. Muller's cell phone was the "poisonous tree" that eventually led to his arrest in this matter.

Thereafter, on October 1, 2015, Mr. Muller was indicted in this case and charged with kidnapping in violation of 18 U.S.C. § 981(a)(1)(C).

Pursuant to Federal Rules of Criminal Procedure, Rule 12(b)(3)(C), a motion to suppress must be made before trial.  Defendant submits the following points and authorities in support of the motion to suppress and requests an evidentiary hearing. The Defendant requests that the court suppress the warrantless search of the cellular phone, and all evidence that flowed from the search of the phone that was the "fruit" of the warrantless cell phone search.

# II – DESCRIPTION OF EVIDENCE TO BE SUPPRESSED

Defendant seeks suppression of all tangible and intangible evidence, including statements and observations obtained as a result of the deprivations of Mr. Muller's right to privacy following the unlawful warrantless search of the cell phone.  That would include any evidence that the police came into possession of after the search of the phone which includes the entire search of a residence and car in El Dorado County on June 9, 2015.  It would include all statements given by the defendant and all physical evidence seized at any time post search of the phone.  The entire investigation of Mr. Muller began when a police officer without consent and without a warrant activated the keypad to a phone and began to develop information from that exact moment in time.  This search was warrantless, unlawful and all the evidence obtained after the search should be

suppressed. The search was the genesis of the entire investigation against Mr. Muller.  It was quite literally the key that opened the door to the entire investigation and subsequent federal indictment.

## III - STATEMENT OF FACTS

**A.      Relevant Facts from the Police Reports**

The following information was obtained from the reports of the Dublin Police Department and has been included in this motion and labeled Exhibit A.  Mr. Muller has pled no contest to the charges stemming from this crime, effectively admitting his presence in the home and the seizure of his phone.

At 3:32 a.m. on June 5, 2015, the Alameda County Sheriff's received a 911 call from 1617 North Terracina Drive, Dublin, CA. Chung Yen and Lynn Yen are married and lived at the Terracina address with their daughter, Kelly Yen.  Lynn and Chung were sleeping in their bedroom and were awakened by a subject at about 3:25 a.m. who had a laser pointed at them.  The subject stated "they" had their daughter and that she was safe. The Yens were directed to lay face down on the bed with their hands behind their backs. As the subject moved closer, Chung Yen grabbed the subject and tackled him to the ground.  Lynn Yen grabbed her cell phone and locked herself in the bathroom and called 911.  Chung Yen told Lynn Yen to "get the gun" and the subject stuck Chung Yen on the head with what was believed to be a "mag light" flashlight.  Mr. Yen does not state that the suspect was armed with any other type of weapon such as a knife or a gun. Thereafter, a short struggle ensued and Mr. Yen was unable to subdue the perpetrator. The perpetrator fought with Mr. Yen but managed to escape the residence by running out the back of the house.  That person fled the area and was not apprehended.

Officers were dispatched to the Yen residence at 3:34 a.m.   They arrived within a few minutes.  First on scene was Sgt. Shepard, followed by deputies Dormer and Feroz. When the deputies arrived, Chung and Lynn Yen exited the residence and were waiting

outside with Sergeant Shepard of the Alameda County Sheriff's Department.  Within a minute or two, Kelly Yen then walked out of the residence and handed Sergeant Shepard a white Samsung Galaxy cell phone which she said she had found on the counter across from her bedroom.  None of the Yens claimed ownership of the cell phone.  By this time, approximately 3:40 a.m. to 3:45 a.m., the subject had been gone a minimum of ten minutes. The 911 call from Lynn Yen was placed at 0332 hours and the second set of officers was dispatched, not arrived, but dispatched at 0334 hours.

At some point the Sheriff's deputies then decided based upon the belief that "it was important to identify the owner of the phone and determine if he was the suspect, to prevent him from attempting to harm other residents in the area..." to activate the phone by calling 911 from the phone.  They did not have a warrant to do so, but in their reports cited an exigency as the primary reason. The house was cleared, the scene was quiet, and the Yens were completely safe.  There was no imminent danger to any person on the premises or in the area.

The deputies claimed these were exigent circumstances which warranted a search of the suspect's cell phone.  However, the phone was locked with a code.  In order to bypass the code, Sergeant Shepard dialed 911 from the phone and the Sheriff's Radio advised that the incoming call was (916)500-8047.  The deputies were able to bypass the lock screen to get to the phone screen to dial 911 effectively searching the phone.   With respect to Mr. Muller's cell phone, the Computer Aided Dispatch ("CAD") Log lists the following:

| | |
|---|---|
| 03:49:25 | Suspect left cell phone |
| 03:54:05 | 1A74 – CHP transferred 911 call / 916 5008047 Susp phone |
| 03:54:06 | Verizon |
| 03:54:34 | Verizon Wireless 800-451-5242 |
| 03:57:02 | Verizon faxing over form, will not release the info for subscriber info unless life threatening emergency |
| 04:12:02 | Late entry per 1S70/Not life threatening emergency for cell phone info |

Special Investigations Unit Detective K. Woods authored and obtained a search warrant for the recovered cell phone later that day, hours after the incident. The scene at the Yen home had been secure for several hours. The search warrant revealed that the cell phone belonged to John Zarback with an address of 5300 Mississippi Bar Drive in Orangevale, CA. Detective Woods had the Sacramento Sheriff's Department call John Zarback and advise him that they had found a cell phone that belonged to him and for him to call Deputy Buenrostero. At approximately 1922 hours on June 5, 2015, Deputy Buenrostero received a call from Joyce Zarback. Joyce stated that her husband paid the bill on the phone but it belonged to her son, Matthew Muller. A declaration of Joyce Zarback has been included with this motion and labeled Exhibit B. Deputy Buenrostero called again and John Zarback returned the call. He informed the deputy that his son was going to pick up the cell phone and that he was living in South Lake Tahoe, California. Using a local law enforcement database, Accurint, John Zarback was identified as the registered owner of a residence located at 2710 Genoa Avenue in South Lake Tahoe, California. That same day Mr. Muller was arrested and a residence in South Lake Tahoe was searched which produced evidentiary items connecting Mr. Muller to the Dublin event and alleged kidnapping of Denise Huskins in Vallejo, California on March 23, 2015.

**B.    Relevant Facts from the Preliminary Hearing**

On September 2, 2015, in the Contra Costa County Superior Court before the Honorable Joseph Hurley, a Preliminary Hearing occurred in this case and evidence was presented for Defendant's Motion to Suppress Evidence. *See* Exhibit C. Judge Hurley never ruled on the motion because Mr. Muller pled pursuant to a negotiated agreement with the District Attorney's Office prior to a ruling on the motion to suppress.

At the hearing, Mr. Yen testified to the following:

Mr. Johnson: Okay. And how long -- and this means in terms of seconds or minutes, Mr. Yen -- how much time expired between the time that you yelled, "Go get the gun,"

1    or, "Honey, go get the gun," between that time and the time that the person that
2    was in your room fled?

3    A.    Some -- very quick.  I just -- I couldn't make a time.  Maybe 20 second, 30
4    second, or very quick.

5          …

6    Q.    So you're yelling, "Honey, go get the gun.  Honey, go get the gun."  You're
7    fighting this guy, trying to pull his mask off.  Your wife runs away.  In the
8    meantime, the person you're struggling with breaks free and leaves the home; is
     that fair to say?

9    A.    Yes.

10
11   Q.    Did you see the person run downstairs?

12   A.    I saw that person ran out of my -- my bedroom door.

13
          …
14

15   Q.    Did you chase him down the stairs and out the door?

16   A.    I chase him downstairs.  I stand on my stairway, look left and right, I didn't see
17   anybody.

18   R. T. 27, ln 1 – ln 26.

19   Q.    When your wife came downstairs, did she come downstairs with the phone in her
20   hand?

21   A.    Yes.

22
23   Q.    And then what did you do once your wife came downstairs?

24   A.    She just said, "Honey, dispatcher want to talk -- officer want to talk to you."  So
25   she hand me the phone when I -- I talk to dispatcher.

26   Q.    And was that a cell phone that you and your wife share?

27   A.    That's her cell phone.  I have my own cell phone.

28   Q.    Okay.  Fair enough.  Did the dispatcher say that the officers were at your house?

A.      Yes. The officers come to the door.

Q.      Did you walk out of the door or what did you do?

A.      Yeah.  We -- he -- they order us to walk out the door.

Q.      And did you do that?

A.      We do that.  My wife and I do that.

Q.      And what about your daughter?

A.      I believe she came out eventually.  Yes.  Maybe one minute, 30 seconds later she came down.

R.T.  31 ln 1 – 32, ln 4.

Q.      And how much time expired between the time that you first walked out of the house after speaking with dispatch and the time that the paramedic came to see you?

A.      Maybe 10 minutes or so.  Five, 10 minutes.

Q.      How long were you at the house after you left the house before you went to the hospital?

A.      Say one more time, please.

Q.      How long were you out in the front yard after leaving the house?

A.      You mean get on the ER person vehicle to the hospital?

Q.      Yes.

A.      It's about five, 10 -- 10 minutes or so.

Q.      Ten minutes or so?

A.      Yes.

Q.      And did anybody ever tell you that they didn't want you standing on the front porch; that you should go to a police car with them?

A.      No.

Q.      Did anybody ever tell you, "We don't want you standing on the front porch.  Your life is in danger.  We've got to move you out of here"?

A.      No.

R. T. 35, line 14 – 36, line 8.

        The following are excerpts of testimony provided by Sergeant Shepard:

Q.      All right.  When you were given the phone, tell us what you did.

A.      At that point I believed that this was a violent crime.  We need to locate the suspect as quickly as possible.  We didn't know if it was the suspect's phone but we believed there's a good chance it was the suspect's phone. We believed there was exigent circumstances to locate the suspect.  It's a violent crime.  They were woken with a laser.  To me, if somebody says they are woken with a laser in a bedroom, that means somebody's pointing a gun at them.  We didn't -- and then he had fled the residence. We didn't know if he had fled into any adjacent residence or if he was still in the area.  We were concerned that we were at risk as well as the residents in the area were at risk of also becoming victims of a violent crime. So based on that, I dialed 911 from the cell phone which went to CHP dispatch and then eventually to our dispatch.

R. T. 44, ln 1 – 45, ln 20.

THE COURT:  Okay.  And when you're there looking at the phone that's just been given to you, did it occur to you this phone might belong to some innocent third party who left it there earlier and the Yen family just had noticed it?

THE WITNESS:  Yes.  Yes.

THE COURT:  Did it occur to you that it might be a phone that belonged to a third party who was totally innocent but it had been left there by the defendant and that this third party was also potentially a victim?

THE WITNESS:  Yes, it did.

R. T. 49, ln 10-20.

11

### IV – POINTS AND AUTHORITIES

The Fourth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, and the California Constitution, Article I, Section 13, guarantees the right of people to be free from unreasonable searches and seizures. The exclusionary rule prohibits the introduction of any evidence seized from the defendant in violation of his Fourth Amendment rights. Murray v. U.S., 487 U.S. 533 (1988); U.S. v. Alderman, 394 U.S. 165, 171 (1969); Mapp v. Ohio, 367 U.S. 643 (1961); Weeks v. United States, 232 U.S. 383 (1914).   The Fourth Amendment generally requires the police to secure a warrant before conducting a search.  Maryland v. Dawson, 527 U.S. 465, 466 (1999); California v. Carney, 471 U.S. 386, 390-391(1985).  Many courts have stated that the warrant requirement is subject only to a few "narrow and well-delineated exceptions." *See e.g.*, Flippo v. West Virginia, 528 U.S. 11, 13 (1999).  The courts generally determine whether to exempt a given type of search from the warrant requirement "by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." Wyoming v. Houghton, 526 U.S. 295, 300 (1999).

**A.**  **Defendant Has a Legitimate Expectation of Privacy to Challenge the Legality of the Search and Seizure.**

In order to for a defendant to suppress evidence seized in violation of his Fourth Amendment rights, the defendant must have a reasonable expectation of privacy in the place searched or items seized.  Rakas v. Illinois, 439 U.S. 128, 133-134 (1978).  "[I]n order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place [or thing] searched, and that his expectation is reasonable; *i. e.*, one that has 'a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society.' " Minnesota v. Carter, 525 U.S. 83, 88 (1998).  As stated in the declaration of Joyce Zarback, the cell phone with the

number of (916)500-8047 was Mr. Muller's phone.  Therefore, Mr. Muller had a

legitimate expectation of privacy in the phone.

The United States Supreme Court has recently emphasized the importance of

constitutional protection to be free from unreasonable searches and seizures of a person's

cell phone and found that:

> It is no exaggeration to say that many of the more than 90% of American
> adults who own a cell phone keep on their person a digital record of nearly
> every aspect of their lives—from the mundane to the intimate. (Citation)
> Allowing the police to scrutinize such records on a routine basis is quite
> different from allowing them to search a personal item or two in the
> occasional case.
> …
> Indeed, a cell phone search would typically expose to the government
> far *more* than the most exhaustive search of a house: A phone not only
> contains in digital form many sensitive records previously found in the
> home; it also contains a broad array of private information never found in a
> home in any form.

Riley v. California, 134 S. Ct. 2473, 2490-91 (2014).  Every person who uses a cell

phone has an expectation of privacy with respect to that item.  Mr. Muller is no different.

The reports indicate that Joyce and John Zarback stated that they paid the bill but the

phone belonged to Mr. Muller.  Therefore, Mr. Muller had an expectation of privacy with

respect to that phone.

In People v. Shepherd, 23 Cal. App. 4th 825, 828–829 (1994), the court noted that

"an important consideration in evaluating a privacy interest is whether a person has taken

normal precautions to maintain his or her privacy."  The phone was obviously not left at

the Yen residence on purpose by Mr. Muller.  Mr. Muller left running as quickly as

possible, right out the back door while the screaming, yelling, and the 911 call was

occurring.   Moreover, the phone had a pass-code.  Phones can be programmed to either

have a pass-code or not have a pass code.  That pass-code is no different than a password

to a bank account, or to a laptop, etc.  Having a pass-code is actually code for: this is my private information which I mean to keep secure and private.

As the police reports indicate, the cell phone was locked with a pass-code, and the deputies could not access the information on the cell phone since it was locked.  Based upon the recent United States Supreme Court case law emphasizing the importance of maintaining privacy in cell phones and the fact this phone was locked,  sufficient precautions were taken to protect the privacy of the user of the phone.

**B.**   **The Burden is Upon the Prosecution to Prove That the Search was Reasonable Since the Police Did Not Possess a Search Warrant.**

"[T]he government bears the burden of showing that a warrantless search or seizure falls within an exception to the Fourth Amendment's warrant requirement."  United States v. Cervantes, 703 F.3d 1135, 1141 (9th Cir.2012).  In this case, police searched the phone, knew it was locked and dialed 911 in order to obtain the cell phone number.  The carrier on the cell phone was Verizon and Verizon refused to provide the subscriber information unless there was a life threatening emergency.  Since no emergency existed, police subsequently wrote a search warrant. The first question this Court must address is whether there was a search of the phone.  The law enforcement officers freely admit that the lock screen was bypassed.  Law enforcement swiped the opening screen of the phone to put it in emergency mode.  Once in emergency mode, the phone was activated and a 911 call could be placed.  That 911 call from Mr. Muller's phone was a warrantless, unauthorized use and search of the phone.

**C.**   **Recent Supreme Court Case Law Dictates a Warrant is Generally Required to Search a Cell Phone.**

In a recent unanimous decision, the United States Supreme Court has ruled that searches of cell phones incident to arrest generally require a search warrant.  Riley v. California, 134 S. Ct. 2473 (2014).  "In the absence of a warrant, a search is reasonable

only if it falls within a specific exception to the warrant requirement."

Riley v. California, 134 S. Ct. 2473, 2482 (2014).  The Supreme Court held:

> Modern cell phones are not just another technological convenience. With all they contain and all they may reveal, they hold for many Americans "the privacies of life, *Boyd*, *supra*, at 630, 6 S. Ct. 524, 29 L. Ed. 746. The fact that technology now allows an individual to carry such information in his hand does not make the information any less worthy of the protection for which the Founders fought. Our answer to the question of what police must do before searching a cell phone seized incident to an arrest is accordingly simple—get a warrant.

*Id.* at 2494-95.  Due to the wealth of private information a cell phone can contain, the Court found that in order to search a cell phone incident to arrest police are generally required to obtain a search warrant. Even though a person arrested is subject to less privacy, the Court recognized the privacy rights of people with respect to searches of cell phones and stated a warrant was required.

In this case, the deputies needed to obtain a warrant before searching the cell phone.  It can be inferred from the evidence that Mr. Muller's phone was searched on two occasions.  First, an officer had to search the phone in order to determine that it was locked with a pass-code.  Second, once law enforcement learned from dispatch that a telephone number could be obtained by making an emergency call, an officer had to search the phone again in order to dial 911.  No immediate threat to the safety of others was present which would circumscribe the warrant requirement.

**D.**   **No Exigent Circumstance Existed that Would Justify the Search of the Cell Phone.**

The Ninth Circuit has defined exigent circumstances as "those circumstances that would cause a reasonable person to believe that entry [or search] ... was necessary to prevent physical harm to the officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating

legitimate law enforcement efforts." <u>United States v. McConney</u>, 728 F.2d 1195, 1199 (9th Cir.1984) (en banc), *overruled on other grounds by* <u>Estate of Merchant v. Comm'r</u>, 947 F.2d 1390, 1392–93 (9th Cir.1991). To be reasonable, a search under this exception must be limited in scope so that it is "strictly circumscribed by the exigencies which justify its initiation." <u>Mincey v. Arizona</u>, 437 U.S. 385, 393 (1978) (internal quotation marks omitted); *see also* <u>United States v. Reyes–Bosque</u>, 596 F.3d 1017, 1029 (9th Cir.2010) ("In order to prove that the exigent circumstances doctrine justified a warrantless search, the government must [also] show that ... the search's scope and manner were reasonable to meet the need.").

Under the exigency exception, officers may make a warrantless search if: (1) they have probable cause to believe that the item or place to be searched contains evidence of a crime, and (2) they are facing exigent circumstances that require immediate police action. <u>United States v. Camou</u>, 773 F.3d 932, 940 (9th Cir. 2014).

### 1.    *Probable Cause Does Not Justify a Warrantless Search Absent Exigency.*

"[N]o amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances.' " <u>Horton v. California</u>, 496 U.S. 128, 137 n. 7 (1990).  The Supreme Court has emphasized that probable cause "demands" factual "specificity" and "must be judged according to an objective standard." <u>Terry v. Ohio</u>, 392 U.S. 1, 21–22 n. 18 (1968). "Anything less would invite intrusions upon constitutionally guaranteed rights based on nothing more than *inarticulate hunches,* a result this Court has consistently refused to sanction." *Id.* at 22 (emphasis added).

The problem in this case is that there were no exigent circumstances.  Sergeant Shepard stated that the purpose of the search of the phone was to potentially identify the suspect.  The identification of a suspect through subscriber information is too speculative to suffice as an exigent circumstance requiring the warrantless search of a phone.  Such a belief was merely an "inarticulate hunch." There are many instances in which a person does not have their name on the phone bill: some people are in a family plan where

another person's name is listed on the bill, some people use a fake name, sometimes a business is listed on the bill, and some phones are pay-as-you go and do not require subscriber information.

After the illicit search, it was subsequently determined that John Zarback was the listed owner of the phone.  Such information would not have helped in the quick apprehension of the suspect.  Therefore, there was no exigency that existed which would validate a warrantless search.  A reasonable person would not have believed the warrantless search of the phone was appropriate.  The reasonable course of action was to write a search warrant.

### 2. There Was No Danger to Others That Would Qualify as an Exigency and Excuse the Warrant Requirement.

 "The Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others." Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 298–299 (1967).  "'The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency.'" Mincey v. Arizona, 437 U.S. 385, 392–393(1978).

In this case, there was no emergency situation that required swift action to prevent imminent danger to life. More importantly, it would not have assisted in the exigency claim.  There was no evidence presented at the preliminary hearing which showed that an actual need to protect life or avoid serious injury was present when Mr. Muller's cell phone was searched.  Officers first arrived on scene at approximately 3:39 a.m.  None of the members of the Yen family indicated that the suspect had a weapon.  It appears that the suspect was unarmed based on the fact that he fled once Mr. Yen directed his wife to get the gun.  Both Mr. Yen and Sergeant Shepard testified that the family was standing on the front porch for approximately 20 minutes before Mr. Yen left to receive medical care. The CAD log states that the residence was cleared at 3:48 a.m., one minute before the

cell phone was given to Sergeant Shepard.  The cell phone was not given to an officer until 3:49 a.m.

Deputy Buenrostero articulated that there was an exigent circumstance in his police report and stated "it was important to identify the owner of the phone and determine if he was the suspect, to prevent him from attempting to harm other residents in the area."  Had there been an immediate danger Verizon would have allowed the release of the subscriber information without a warrant, but there was no danger.  It is conceded in the CAD log that there was no life threatening emergency because officers declined to fill out the form from Verizon in order to get the subscriber information.  Instead, a search warrant was written.  As can be seen in the CAD log, Verizon would have breached Mr. Muller's privacy right if law enforcement took the small but necessary step of articulating an exigent set of circumstances.  The problem now is that they never took that step. So the police report was written later and they must have figured out they should articulate an exigency for what was admittedly a search of the phone.  What was not an exigency when it came to dealing with Verizon became an exigency by the time reports were written.

Deputy Buenrostero also wrote in this report that an exigent circumstance existed because if they identified the owner of the phone and it was the suspect they would be able to locate him in the area more easily by locating a photo of him in Cal Photo.  This statement that an exigency existed was simply a decision that had everything to do with investigating on the fly, which later morphed into an exigency, possibly because they realized the warrantless search would become problematic.  The problem with that for the Sheriff's Department is that the phone became the door that led to the treasure of evidence they located thereafter.

///
///
///
///

### 3. A Concern Regarding Escape of a Suspect is an Exigent Circumstance that Does Not Apply in this Case.

The escape of a suspect can be an exigent situation that would justify a warrantless search.  It is also known as the hot pursuit exception to the warrant requirement and only applies when officers are in "immediate" and "continuous" pursuit of a suspect from the scene of the crime. Welsh v. Wisconsin, 466 U.S. 740, 753, (1984); United States v. Salvador, 740 F.2d 752, 758 n. 5 (9th Cir.1984), *cert. denied* 469 U.S. 1196, 105 S.Ct. 978 (1985).

The case of United States v. Johnson, 256 F.3d 895 (9th Cir. 2001), provides an illustration of the hot pursuit analysis.  In an attempt to apprehend another person who was a misdemeanor suspect last seen by an officer 30 minutes previously and whose whereabouts were unknown, state sheriff officers broke into Michael Johnson's fenced and locked residential yard on his rural Washington property without a warrant. While searching his yard, officers smelled marijuana in a detached shed. As a result of this warrantless search, a search warrant was issued and Johnson was subsequently indicted on one count of manufacturing marijuana.  The court found the hot pursuit exception did not apply and the warrantless search was invalid.  *Id.* at 898.

In this case, officers did not know the identity of the suspect.  By the time officers arrived, the suspect had fled the scene.  Therefore, since the officers were not in immediate and continuous pursuit, the hot pursuit exception does not apply.

### E. The Fruits of the Unlawful Search Must be Suppressed and Forever Eliminated as Evidence in the Case and All Others That Follow.

Over 50 years ago, the United States Supreme Court in the sentinel case of Wong Sun v. United States, 371 U.S. 471 (1963), held that evidence obtained as a direct result of an illegal search may not be used against the defendant in a criminal proceeding. Referring to the illegal search as a "poisonous tree" and the evidence that flowed from it as the tainted fruit of that tree, the court held that the fruit of the poisonous tree is not

admissible evidence.  Furthermore, evidence obtained illegally may not even be used to establish probable cause for a subsequent search.  United States v. Wanless, 882 F. 2d 1459 (9th Cir. 1989).  It is well established that, under the 'fruits of the poisonous tree' doctrine, evidence obtained subsequent to a violation of the Fourth Amendment is tainted by the illegality and is inadmissible, despite a person's voluntary consent, unless the evidence obtained was purged of the primary taint." United States v. Washington, 490 F.3d 765, 774 (9th Cir.2007) (internal quotation marks omitted). "It is the government's burden to show that evidence is not 'fruit of the poisonous tree.'" United States v. Patzer, 277 F.3d 1080, 1086 (9th Cir.2002).

In this case, the entire investigation flowed directly from the illegal search of the phone to the subsequent arrest of Matthew Muller and to all of the subsequent searches and all statements from witnesses with the exception of the Yen family.  The phone search was quite literally the door that led to a room and a car full of evidence, not to mention the ultimate identification of Matt Muller as the possessor of the phone.  Without the illegal search, the authorities never would have called Joyce Zarback.  Thus, the primary taint of the illegal search cannot be purged.  All of the evidence in this case must be suppressed to protect the integrity of the Fourth Amendment of the United States Constitution.

**F.**      **The Phone Was Never Abandoned, It Was Simply Lost.**

The facts from the case do not support a conclusion that the phone was abandoned, but indicate that the phone was left at the scene when Mr. Muller fled the home. Whether property has been "abandoned," in this sense, does not depend on where legal title rests, or whether one asserting a Fourth Amendment right has a legally enforceable possessory interest in the property; the question, rather, is whether the person claiming the protection of the Fourth Amendment "has a legitimate expectation of privacy in the invaded place." Rakas v. Illinois, 439 U.S. 128, 143 (1978).  Mr. Muller had safeguarded his expectation of privacy by locking the phone with a pass-code.

1    In United States v. Lopez-Cruz, 730 F.3d 803 (9th Cir. 2013), the court found that

2  the defendant had a privacy interest to contest the search of cell phones even though the

3  defendant denied ownership and consented to search the phones.  The touchstone of

4  "abandonment is a question of intent." Id. at 808, citing United States v. Nordling, 804

5  F.2d 1466, 1469 (9th Cir.1986). The court held that in order to assess abandonment,

6  courts conduct a "totality of the circumstances" inquiry that "focus[es] on whether,

7  through words, acts or other objective indications, a person has relinquished a reasonable

8  expectation of privacy in the property at the time of the search or seizure." Id.

9    A review of the totality of the circumstances with regards to the phone in this case

10  shows that Mr. Muller did not intend to relinquish his right of privacy in his phone.  This

11  much we know from the reports about the sequence of events in the home:  Mr. Muller

12  entered the Yen residence and fled after a failed burglary attempt.  After the event ended,

13  Kelly Yen provided a phone to police that she said she found inside the residence on a

14  counter across from her bedroom.   The statements of Chung Yen and Lynn Yen

15  indicated that Mr. Muller was confronted and a fight ensued between him and Mr. Yen.

16  Mr. Yen yelled at his wife to get "the gun" and Mr. Muller then immediately ran out of

17  the house as the 911 call was being placed.  Mr. Muller never had an opportunity to

18  thoughtfully, after considering what was occurring, decide to abandon the phone.  The

19  most reasonable inference from these facts is that Mr. Muller intended to flee the

20  residence to avoid being shot by the Yens and arrested.  If a person has just burglarized a

21  home and the resident is calling 911, the first and most likely reaction is one of flight to

22  avoid arrest.  Mr. Muller did not intend to abandon the phone; it was simply left there in

23  the heat of an escape attempt.

24    The most indicative fact that shows Mr. Muller did not intend to give up his

25  expectation of privacy is that the phone had a pass-code.  Phones can be programmed

26  either to have a pass-code or not have a pass code.  That pass-code is no different than a

27  password to a bank account, or to a laptop, etc.  Having a pass code is actually code for:

28  this is my private information which I mean to keep secure and private.  As the police

reports indicate, the cell phone was locked with a pass-code, and the deputies could not access the information on the cell phone.  Based upon the recent United States Supreme Court case law in <u>Riley</u> which emphasized the importance of maintaining privacy in cell phones, and the fact Mr. Muller's phone was locked, the Court should find that Mr. Muller took sufficient precautions to protect the privacy of his phone.

**G.      Request for an Evidentiary Hearing**

An evidentiary hearing on a motion to suppress ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in issue. <u>United States v. Walczak</u>, 783 F.2d 852, 857 (9th Cir. 1986); <u>United States v. Licavoli</u>, 604 F.2d 613, 621 (9th Cir.1979).  Whether an evidentiary hearing is appropriate rests in the reasoned discretion of the district court. <u>United States v. Santora</u>, 600 F.2d 1317, 1320 (9th Cir.), *modified on other grounds,* 609 F.2d 433 (1979).

With respect to the search of Mr. Muller's phone, there are several contested issues of material facts: 1) whether there was a search of the phone; 2) why the police searched Mr. Muller's phone; 3) and whether there was an exigency to excuse the warrantless search.  Mr. Muller challenges that there was a search of his cell phone and that there were no exigent circumstances that bypassed the warrant requirement.  While the officers stated there were exigent circumstances, nothing in the police reports or testimony supports such a conclusion. Verizon stated that there must be a life threatening emergency in order to obtain the subscriber information without a warrant and no such request was made to Verizon.  Instead, a search warrant was authored.  Therefore, an evidentiary hearing is needed to enable the Court to determine the contested material facts at issue.

///

///

///

22

## **V - CONCLUSION**

Ever since its' inception, "the rule excluding evidence seized in violation of the Fourth Amendment has been recognized as a principal mode of discouraging lawless police conduct." <u>Terry v. Ohio</u>, 392 U.S. 1, 12 (1968).  The need to apprehend a suspect is not an emergency situation.  Apprehending a suspect is always the job of law enforcement and, while they may want to apprehend a suspect as fast as possible, such a justification is not an emergency that would warrant an illegal search. According to the <u>Riley</u> case, 134 S. Ct. 2473, the United States Supreme Court unanimously decided that cell phones should only be searched pursuant to a search warrant unless there is an exception to the warrant requirement.  No emergency existed to warrant an immediate search of the cell phone.   Violating a person's Fourth Amendment right to be free from unreasonable searches and seizures cannot be negated simply to make it easier for law enforcement to apprehend suspects more easily.

Based upon the facts of this case, precedent case law, and the evidence at the Preliminary Hearing, the prosecution cannot provide a reasonable justification for the warrantless search of Mr. Muller's cell phone and the Court should grant the motion to suppress.  Therefore, for all of the aforementioned reasons, Defendant, Matthew Muller, respectfully requests the Court to grant a motion to suppress evidence pursuant to Rule 12(b)(3)(C).

Dated:   April 11, 2016

Respectfully Submitted,

<u>/s/ Thomas A. Johnson</u>
Thomas A. Johnson
Attorney for Matthew Muller

<u>/s/ Kristy M. Kellogg</u>
Kristy M. Kellogg
Attorney for Matthew Muller