PHILLIP A. TALBERT
Acting United States Attorney
HEIKO P. COPPOLA
MATTHEW D. SEGAL
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone:  (916) 554-2700
Facsimile:   (916) 554-2900

Attorneys for Plaintiff
United States of America

## IN THE UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

                Plaintiff,

         v.

MATTHEW MULLER,

                Defendant.

CASE NO.  2:15-CR-00205 TLN

DATE: June 23, 2016
TIME: 9:30 a.m.
COURT: Hon. Troy L. Nunley

**UNITED STATES' OPPOSITION TO DEFENDANT'S
MOTION TO SUPPRESS EVIDENCE AND REQUEST
FOR AN EVIDENTIARY HEARING**

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................... I

TABLE OF AUTHORITIES ............................................................................................... II

I. INTRODUCTION ....................................................................................................... 1

II. FACTS ........................................................................................................................ 1

III. ANALYSIS ................................................................................................................ 3

    A      Muller Bears The Threshhold Burden To Demonstrate A Reasonable
           Expectation of Privacy ................................................................................... 3

    B.     The Burglar Had No Reasonable Expectation of Privacy in What Was
           Found In The House He Had Entered Illegally ....................................................... 4

    C.     The Burglar Abandoned Any Reasonable Expectation Of Privacy In
           The Phone When He Abandoned It In Flight ........................................................... 5

    D.     Muller Has Not Provided Any Evidence That He Was The Dublin
           Burglar…………………………………………………………………..…..8

    E.     Exigent Circumstances Justified The Warrantless Dialing From The Burglar's
           Abandoned Cellular Telephone ……………………………………………..8

    F.     Even If Sergeant Shepard Impermissibly Obtained The Burglar's Telephone
           Number, The Resulting Search Warrant Is Still Valid………………………….11

    G.     The Court Should Deny The Motion Without Holding An Evidentiary
           Hearing……………………………………………………………….………13

IV. CONCLUSION………………………………………………………….………14

i

# TABLE OF AUTHORITIES

## CASES

Abel v. United States,
    362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960) ........................................................ 5

California v. Hodari D.,
    499 U.S. 621 (1991) ........................................................................................................ 5,6

Cohen v. United States,
    378 F.2d 751 (9th Cir. 1967) ........................................................................................ 13

Hester v. United States,
    265 U.S. 57 (1924) .......................................................................................................... 5

Kentucky v. King,
    563 U.S., 131 S.Ct. ...................................................................................................... 10

Mincey v. Arizona,
    437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978) .................................................. 10

Nardone v. United States,
    308 U.S. 338 (1939) ...................................................................................................... 14

Nix v. Williams,
    467 U.S. 431 (1984) ...................................................................................................... 12

Ortiz-Sandoval v. Clarke,
    323 F.3d 1165 (9th Cir. 2003) ........................................................................................ 9

Rakas v. Illinois,
    439 U.S. 128 (1978) .............................................................................................. 3, 4, 8

Riley v. California,
    134 S. Ct. 2473 (2014) ................................................................................................. 10

Simmons v. United States,
    390 U.S. 377 (1968) ........................................................................................................ 8

United States v. Currency,
    554 F.3d 752 (9th Cir. 2009) .......................................................................................... 4

United States v. Boatright,
    822 F.2d 862 (9th Cir. 1987) ........................................................................................ 13

United States v. Burnette,
    698 F.2d 1038 (9th Cir. 1983) ........................................................................................ 5

United States v. Camou,
    773 F.3d 932 (9th Cir. 2014) ........................................................................................ 10

United States v. Caymen,
    404 F.3d 1196 (9th Cir. 2005) .................................................................................... 4, 5

United States v. Cunag,
    386 F.3d 888 (9th Cir. 2004) .................................................................................. 5

United States v. DiCesare,
    765 F.2d 890 (9th Cir. 1985) ................................................................................ 13

United States v. Diggs,
    649 F.2d 731 ............................................................................................................ 5

United States v. Echegoyen,
    799 F.2d 1271 (9th Cir. 1986) .............................................................................. 13

United States v. Harris,
    914 F.2d 927 (7th Cir. 1990) ................................................................................ 13

United States v. Howell,
    231 F.3d 615 (9th Cir. 2000) ................................................................................ 13

United States v. Issacs,
    708 F.2d 1365 (9th Cir. 1983) ................................................................................ 8

United States v. Jackson,
    544 F.2d 407 (9th Cir.1976) ............................................................................... 5, 6

United States v. Johnson,
    256 F.3d 895 (9th Cir. 2001) ................................................................................ 11

United States v. Kendall,
    655 F.2d 199 .......................................................................................................... 5, 6

United States v. Lai,
    944 F.2d 1434 (9th Cir. 1991) .............................................................................. 11

United States v. Ledesma,
    499 F.2d 36 (9th Cir. 1974) .................................................................................. 13

United States v. Long,
    301 F.3d 1095 (9th Cir. 2002) ................................................................................ 8

United States v. Lopez-Cruz,
    730 F.3d 803 (9th Cir. 2013) ............................................................................... 6, 7

United States v. Mejia,
    69 F.3d 309 (9th Cir. 1995) .................................................................................. 13

United States v. Nguyen,
    465 F.3d 1128 (9th Cir. 2006) ................................................................................ 8

United States v. Nora,
    765 F.3d 1049 (9th Cir. 2014) .............................................................................. 11

United States v. Nordling,
    804 F.2d 1466 (9th Cir.1986) ............................................................................. 6, 7

United States v. Poulsen,
    41 F.3d 1330 (9th Cir. 1994) ................................................................................ 5

United States v. Reed,
    15 F.3d 928 (9th Cir. 1994) .................................................................................. 11

United States v. Riley,
    224 F.3d 986 (9th Cir. 2000) ................................................................................ 12

United States v. Singleton,
    987 F.2d 1444 (9th Cir. 1993) ............................................................................ 4, 8

United States v. Struckman,
    603 F.3d 731 (9th Cir. 2010) .................................................................................. 8

United States v. Taylor,
    462 F.3d 1023 (8th Cir. 2006) ................................................................................ 5

United States v. Thomas,
    447 F.3d 1191 (9th Cir. 2006) ................................................................................ 5

United States v. Walczak,
    783 F.2d 852 (9th Cir. 1986) ................................................................................ 13

United States v. Wilson,
    472 F.2d 901 (9th Cir. 1972) .................................................................................. 7

United States v. Wong,
    334 F.3d 831 (9th Cir. 2003) .................................................................................. 5

United States v. W. R. Grace,
    526 F.3d 499 (9th Cir. 2008) (en banc) ................................................................. 5

United States v. Zermeno,
    66 F.3d 1058 (9th Cir. 1995) ............................................................................... 4, 6

454 U.S. 970, 102 S.Ct. 516, 70 L.Ed.2d 387 (1981) ................................................ 5

455 U.S. 941, 102 S.Ct. 1434, 71 L.Ed.2d 652 (1981) .............................................. 5

**RULES**

Fed.R.Evid. 410 ........................................................................................................ 8

# I.  INTRODUCTION

On the night of June 5, 2015, a masked burglar broke into a family residence in Dublin.  The burglar woke the parents of the house and ordered them to submit to him binding them in their bed.  But the man of the house fought back.  Though bloodied during his melee with the burglar, Chung Yen had the focus to yell for his wife to get a gun that was not there.  The burglar then fled, leaving behind in the house a cell phone, a glove, and zip-tie bindings.  When Dublin Police Services officers responded to the scene, they used the abandoned phone to make a call to 9-1-1 and they collected the phone, glove, and bindings.   Later, other officers of the same department executed search warrants on the abandoned phone and the carrier that provided its service.

When the officers dialed 9-1-1, they learned the mobile phone's assigned number.  Today, Matthew Muller's motion to suppress the phone's assigned number fails for at least four reasons:  (1) a burglar has no reasonable expectation of privacy in something he places in an intruded-upon house; (2) a fleeing suspect has no reasonable expectation of privacy in the evidence he abandons; (3) Muller cannot even invoke the burglar's *subjective* expectation of privacy because Muller has not provided any declaration that he was the burglar; and (4) the exclusionary rule does not apply here because the police subsequently applied for a search warrant for the very phone that they had operated.

# II. FACTS

In the early morning hours of June 5, 2015, a burglar pried the screen off a first floor window and entered the Yen residence in Dublin, California.[1] Defendant's Exhibit A at 6.  Chung Yen ("Chung"), his wife Lynn Yen ("Lynn") and young adult daughter Kelly Yen ("Kelly") were asleep inside the house. Defendant's Exhibit A at 6.  The burglar, who was wearing black clothing and a mask over his face, entered the master bedroom and woke the Yens with a red laser beam and a flashlight. Defendant's Exhibit A at 6.  The Yens were ordered to lay face down on the bed and told if they followed the burglar's instructions their daughter would be safe.  Defendant's Exhibit A at 6.  Lynn

---

[1] The facts are taken from Defendant's Exhibit A (police reports prepared by Sgt. Shepard, Detective Woods and Deputy Buenrostro) and from Defendant's Exhibit C (witness testimony during preliminary hearing and motion to suppress before the Alameda County Superior Court on September 2, 2015) which are incorporated by reference herein. Facts are also taken from the search warrant prepared by Detective Woods, which is attached hereto as Exhibit One.

escaped from the burglar, ran into the bathroom and called 9-1-1.  Defendant's Exhibit A at 6.  Chung fought the burglar and yelled for his wife to "go get the gun" on at least two occasions.  Defendant's Exhibit C at 17.   During the fight, the burglar struck Chung in the head with the heavy flashlight.  Defendant's Exhibit C at 18.  Chung sustained a laceration to his face/head and several other bruises and cuts on his arms and face.  Defendant's Exhibit A at 1 and 6.  Chung pulled the left side of the burglar's mask down during the fight and saw that the burglar had white skin.  Defendant's Exhibit A at 1 and 6; Defendant's Exhibit C at 16-17.  The burglar fled the residence prior to the arrival of the police, abandoning a white Verizon Samsung Galaxy 4 Note on a counter across from Kelly's bedroom.  Defendant's Exhibit A at 1-2.  Zip-tie bindings in the form of handcuffs and a single glove were found in the master bedroom.  Defendant's Exhibit A at 6.

Once the police arrived at the residence, Chung and Lynn opened the door and made contact.  Defendant's Exhibit A at 1.  Sgt. Shepard observed that Chung was bleeding from a wound on his forehead and had blood dripping down the front of his body.  Defendant's Exhibit A at 1.  According to Sgt. Shepard, both Chung and Lynn appeared to be in shock.   Defendant's Exhibit A at 1.  Two deputies entered and searched the residence for the burglar.  Defendant's Exhibit A at 1.  As they did so, Kelly exited the residence.  Defendant's Exhibit A at 1.  While standing with her parents outside the residence, Kelly handed Sgt. Shepard the white Verizon Samsung Galaxy Note 4 which she found on the counter across from her room.  Defendant's Exhibit A at 2.  Kelly told Sgt. Shepard that the phone didn't belong to anyone in the residence and thought it might belong to the burglar.  Defendant's Exhibit A at 2.  Simultaneously, deputies completed their search of the residence and the backyard while other deputies set up a perimeter and two K-9 officers arrived and began searching the neighborhood for the burglar.  Sgt. Shepard also requested air support, which was unavailable.  Defendant's Exhibit A at 1-2.

Although the phone was locked, believing that there were exigent circumstances, Sgt. Shepard dialed 9-1-1 from the lock-screen.  Defendant's Exhibit A at 2; Defendant's Exhibit C at 51.  Sgt. Shepard described the exigent circumstances in his police report as follows:

> We did not know if the suspect was still in the area and we were
> concerned he could come back for his cell phone and place the victims
> and deputies on the scene in danger.  We believed it was important to
> identify the owner of the phone and determine if he was the suspect, to

2

> prevent him from attempting to harm other residents in the area, since he had committed a violent crime.  We believed that if we identified the owner of the phone and it was the suspect we would be able to located him in the area more easily by locating a photo of him in Cal Photo. At the time we believed it was an exigent circumstance based on the aforementioned facts.[2]

Defendant's Exhibit A at 2.  A short time later, Sheriff's Radio advised that the telephone number for the cell phone was 916-500-8407.  Defendant's Exhibit A at 2.  Sgt. Shepard later learned that Verizon, the cell phone carrier, advised that it would not release subscriber information unless there was a life-threatening emergency.  Defendant's Exhibit A at 13; Defendant's Exhibit C at 55; United States' Exhibit One.

Later in the day, Detective Woods authored a search warrant for the contents of the cell phone itself and for subscriber information from Verizon which was granted by an Alameda County Superior Court judge. Defendant's Exhibit A at 4; Exhibit One.  The Verizon carrier logo was stamped on the rear case of the phone.  United States' Exhibit One at 6.

Based in part upon the information obtained through the search warrant and on further investigation, the police were eventually able to secure arrest and search warrants for Muller and his residence in South Lake Tahoe.  Defendant's Exhibit A at 5.  The search warrant at Muller's South Lake Tahoe residence produced evidence linking him to the kidnapping of Denise Huskins, as charged in the indictment.

### III.  ANALYSIS

**A.**   **Muller Bears The Threshold Burden To Demonstrate A Reasonable Expectation Of Privacy**

As "[t]he proponent of a motion to suppress[,]" Muller "has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure."  Rakas v. Illinois, 439 U.S. 128, 132 (1978).  His mother's declaration is insufficient.  "The capacity to claim the protection of the Fourth Amendment depends not upon a property right in the invaded place, but rather whether the individual by his conduct has exhibited an actual (subjective) expectation of privacy, and

---

[2] Sgt. Shepard testified consistently with this description of exigency at the combined motion to suppress and preliminary hearing on September 2, 2015.

further, whether the individual's subjective expectation of privacy is one that society is prepared to accept as reasonable." United States v. Caymen, 404 F.3d 1196, 1199-200 (9th Cir. 2005) (internal quotations omitted).  In other words, "while ownership of the good seized does not automatically confer standing on a defendant, ownership and possession of as well as access to the area in which the good was found is certainly an important factor in determining whether a defendant has a legitimate expectation of privacy in it."  United States v. $40,995.00 in U.S. Currency, 554 F.3d 752, 756 (9th Cir. 2009) (citations omitted).  Whether a defendant has a legitimate expectation of privacy is a mixed question of law and fact.  United States v. Singleton, 987 F.2d 1444, 1447 (9th Cir. 1993).  "The district court's ultimate legal conclusion is reviewed de novo, and the findings of fact underlying that conclusion are reviewed for clear error."  Id.

As the bearer of the burden of proof, Muller must support his averments with actual evidence.  United States v. Zermeno, 66 F.3d 1058, 1061 (9th Cir. 1995).  He cannot rely on defense counsel's arguments or what he expects the government to accuse him of.  Id.

## B.      The Burglar Had No Reasonable Expectation Of Privacy In What Was Found In The House He Had Entered Illegally.

The Supreme Court teaches that even if a burglar subjectively expects privacy in what he leaves in an invaded home, the law does not recognize his expectation as "legitimate."  The burglar who left that phone in the Yen house may not have expected the Yens or law enforcement to make any calls from the phone, but "'[L]egitimate' expectation of privacy by definition means more than a subjective expectation of not being discovered.  A burglar plying his trade in a summer cabin during the off season may have a thoroughly justified subjective expectation of privacy, but it is not one which the law recognizes as 'legitimate.'  His presence . . . is wrongful; his expectation is not one that society is prepared to recognize as 'reasonable.'"  Rakas, 439 U.S. at 143 n.12 (internal citation and quotations omitted).

This same principle applies with equal force against those who leave items in places they have no right to be.  When police accompany a hotel manager to eject the occupant of a room rented with a fraudulent credit card, the occupant has no reasonable expectation of privacy in the room.  See United States v. Cunag, 386 F.3d 888, 895 (9th Cir. 2004).  The unauthorized driver of rental car has no

4

Case 2:15-cr-00205-TLN-EFB   Document 29   Filed 05/27/16   Page 10 of 28

reasonable expectation of privacy in a bag in the car's trunk, absent evidence that the driver had at least received the authorized renter's permission to use the car.  United States v. Thomas, 447 F.3d 1191, 1199 (9th Cir. 2006).  A person who rents a storage locker and fails to pay has no Fourth Amendment right in the contents that the owner takes and gives to police.  See United States v. Poulsen, 41 F.3d 1330, 1337 (9th Cir. 1994), overruled on other grounds, United States v. W. R.Grace, 526 F.3d 499 (9th Cir. 2008) (en banc).  Someone who obtains a computer by fraud or theft has no reasonable expectation of privacy in the information he stores on that computer.  See United States v. Caymen, 404 F.3d 1196, 1201 (9th Cir. 2005) (computer obtained by fraud); United States v. Wong, 334 F.3d 831, 839 (9th Cir. 2003) (computer stolen from former employer).

## C.    The Burglar Abandoned Any Reasonable Expectation Of Privacy In The Phone When He Abandoned It In Flight.

The burglar abandoned the phone, glove, and bindings in a house where he was an intruder and attacker, and only when the homeowners ran him out of the house.  But he would not have had a reasonable expectation of privacy in those things even if he had abandoned them as police pursued him down the street outside.  See California v. Hodari D., 499 U.S. 621, 629 (1991) (narcotics); Hester v. United States, 265 U.S. 57, 58 (1924) (whiskey jug); United States v. Taylor, 462 F.3d 1023, 1026 (8th Cir. 2006) (cell phone, bag, and gun).  It is well settled and unremarkable that a fleeing criminal has no reasonable expectation of privacy in the things that he discards while fleeing from the police.  Hodari D., 499 U.S. at 629.  This is not a close case.

In closer cases, the Ninth Circuit has applied an objective test for whether an item is abandoned in United States v. Burnette, 698 F.2d 1038 (9th Cir. 1983):

> It is firmly established that warrantless searches of abandoned property do not violate the Fourth Amendment. Abel v. United States, 362 U.S. 217, 240–41, 80 S.Ct. 683, 697–98, 4 L.Ed.2d 668 (1960); United States v. Kendall, 655 F.2d 199, 200 (9th Cir.), cert. denied, 455 U.S. 941, 102 S.Ct. 1434, 71 L.Ed.2d 652 (1981); United States v. Diggs, 649 F.2d 731, 735 (9th Cir.), cert. denied, 454 U.S. 970, 102 S.Ct. 516, 70 L.Ed.2d 387 (1981).  One who has voluntarily abandoned property has no right to complain of its search or seizure. United States v. Kendall, 655 F.2d at 200.  The intention "to retain a reasonable expectation of privacy is determinative of abandonment." Id. See United States v. Jackson, 544 F.2d 407, 409 (9th Cir.1976). Thus, if the person alleged to have abandoned property intends to retain his or her privacy interest in the allegedly abandoned property, there has been no abandonment. Whether a person intends to retain a privacy interest in the property is determined by objective standards. United States v. Kendall, 655 F.2d at 201. In making this determination, we look to the party's "words,

5

acts, and other objective facts." United States v. Jackson, 544 F.2d at 409 (citation omitted).

Id.  The court engages in a totality of the circumstances analysis when analyzing the abandoning party's words, acts and other objective facts.  United States v. Lopez-Cruz, 730 F.3d 803, 808 (9th Cir. 2013).

The totality of the circumstances clearly demonstrates that in his haste to avoid being shot or apprehended for the violent burglary of the Yen residence, the burglar abandoned the phone and with it any reasonable expectation of privacy.  The burglar had surreptitiously entered through a window, prowled the house, used a heavy flashlight to strike the father of the house and draw blood from his face, and finally fled to in fear of the homeowner's non-existent firearm.  The burglar was not coming back to the house to retrieve his phone, glove, and bindings.

The fact that the burglar kept the phone locked with a passcode is of no consequence. Objectively, the burglar had lost that phone forever.  Opening an abandoned container does not infringe any reasonable expectation of privacy.  See Kendall, 655 F.2d at 201 (suitcase); Nordling, 804 F.2d at 1470 (tote bag).  Here, the Dublin officers did not even do anything that opened the phone by bypassing the lock screen.  By dialing, they never "unlocked" the lock screen.

Muller speculates that in the midst of his burglary and assault of Chung, the burglar "never had an opportunity to thoughtfully, after considering what was occurring, decide to abandon the phone…it was simply left there in the heat of an escape attempt."  Brief of Defendant at 21.  That speculation has no support in evidence.  Zermeno, 66 F.3d at 1061-62 (factual allegations of privacy must be supported by evidence).  Anyway, the same can be true of the burglar's glove and zip-ties and it makes no difference at all.  The juvenile defendant in Hodari D. did not have time to think clearly, either. Defendant cites no authority requiring such thoughtful deliberation in the abandonment cases.  Leaving a phone behind "in the heat of an escape attempt" is abandonment.  Here, there is no evidence that the burglar ever attempted to retrieve the phone from the police following the burglary or made any claim that the phone was lost or stolen.

Muller attempts to analogize United States v. Lopez-Cruz, 730 F.3d 803 (9th Cir. 2013) to the present case.  The facts of Lopez-Cruz are inapposite.  First and foremost, Lopez-Cruz did not involve a burglar leaving behind his personal property during his flight to avoid apprehension.  In Lopez-Cruz, the

1    defendant was stopped by border patrol agents.  Id. at 805.  During their contact with the defendant, the

2    agents observed two cell phones in the vehicle's center console.  Id.  The defendant denied ownership of

3    the phones, indicating to the agents that they belonged to "a friend."  Id. at 805-06.  The agent asked to

4    search the phones and the defendant said "yes."  Id.  The agent removed the phones from the vehicle and

5    outside of the defendant's presence began answering incoming calls.  Id.  Based on some of those calls,

6    the agents developed probable cause and subsequently arrested the defendant.  Id.  The defendant moved

7    to suppress, arguing that answering incoming calls exceeded the scope of his consent.  Id.  The

8    government argued that the defendant effectively abandoned the phones by disclaiming ownership.  Id.

9    The district court granted the defendant's motion to suppress.  Id.  In affirming the district court, the

10   Ninth Circuit concluded that "mere disavowal of ownership, without more" does not constitute

11   abandonment.  Id. at 809.  The Ninth Circuit relied heavily on district court's factual findings, including:

12   that the defendant did not disavow use of the phones and that the agent asking for permission to search

13   the phones militated against a finding that the phones did not belong to the defendant.  Id.  As noted

14   above, such was not the case here.

15       The facts of this case favor abandonment even more strongly than in United States v. Nordling,

16   804 F.2d 1466 (9th Cir. 1986).  In Nordling, the defendant was found to have abandoned his luggage

17   after leaving it behind underneath an airplane seat and then twice denying that he had any luggage.  Id.

18   at 1469-70.  In this case, the burglar knowingly left the phone behind during the burglary and never

19   made any attempt to return to the house to retrieve it.  Moreover, the Ninth Circuit has even found

20   abandonment where a landlord found pipe bombs in an apartment after the tenant moved out.  United

21   States v. Wilson, 472 F.2d 901, 903 (9th Cir. 1972).[3]

22       The objective facts are that the burglar ran from the house and left his property behind.  Even

23   once he realized he had left behind his phone, he did not return to the house to ask for it back.  These are

24   objective facts of abandonment.  The fact that his decisions were motivated by his desire not to get shot

25   by the homeowner or caught by the police are irrelevant.  If the burglar really did intend to retrieve his

26

27   [3] "When Wilson departed his lodgings, leaving the door open and the rent unpaid, he should not
     have been surprised at his landlord's visit. The landlord saw explosives in plain view and considerable
     evidence of abandonment. The assumption of control of the premises by the landlord was not only
28   reasonable; the failure to take control would have been unreasonable."  Wilson, 472 F.2d at 903.

7

phone, then an inevitable discovery argument is appropriate.  Then the burglar intended to return to the place where he left the phone (the house that he had burglarized) and asked the residents (whom he had attacked) for his phone back.  This would have led to an arrest and the discovery of all the evidence.[4]

### D.     Muller Has Not Provided Any Evidence That He Was The Dublin Burglar

Muller has available a limited form of immunity to file a declaration that he was the Dublin burglar.  See Simmons v. United States, 390 U.S. 377, 394 (1968).  He could have said that he had shared the phone with no one else and he did not intend to abandon it when he ran from the Dublin house and never came back.  Under Rakas v. Illinois, 439 U.S. 128, 133 (1979), it was Muller's threshold burden to come forward with evidence of standing.  But he never did.

If Muller filed a declaration that he was the Dublin burglar, the United States would not contest it.  See United States v. Issacs, 708 F.2d 1365, 1368 (9th Cir. 1983); United States v. Singleton, 987 F.2d 1444, 1447-48 (9th Cir. 1993).  But that does not relieve Muller of his obligation to make that factual showing.  United States v. Long, 301 F.3d 1095, 1100 (9th Cir. 2002).  He cannot rely on the positions that the government has taken about who the burglar was.  Id.  He also cannot rely on the fact that he did not contest the burglary charge in Alameda County Superior Court.  Defendant's Brief at 6. A *nolo contendere* plea and its resulting conviction is an unreliable source.  See United States v. Nguyen, 465 F.3d 1128, 1130-31 (9th Cir. 2006); Fed.R.Evid. 410 and 803(22) (Evidence of a *nolo contendere* plea is not admissible for any purpose or to prove "any fact essential to judgment.").

### E.     Exigent Circumstances Justified The Warrantless Dialing From The Burglar's Abandoned Cellular Telephone

 "The exigent circumstances exception is premised on 'few in number and carefully delineated' circumstances in which "'the exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." United States v. Struckman, 603 F.3d 731, 743 (9th Cir. 2010) (citations omitted).   The Ninth Circuit defined those circumstances to include: "(1) the need to prevent physical harm to the officers or other persons;

---

[4] The burglar most likely realized this and decided not to attempt to retrieve the phone.  No "reasoned, calm decision" to abandon the phone was required, but that decision no doubt occurred once the burglar caught his breath and realized that he no longer had his phone.

1    (2) the need to prevent the imminent destruction of relevant evidence; (3) the hot pursuit of a fleeing

2    suspect; and (4) the need to prevent the escape of a suspect." Id.  Courts examine the totality of the

3    circumstances in conjunction with the reasonableness of the officer's actions. Id.  "The government

4    bears the burden of showing specific and articulable facts to justify the finding of exigent

5    circumstances." Id.

6          Here, the warrantless dialing from the burglar's abandoned cell phone was equally justified by

7    exigency.  The investigating officers responded to a violent nighttime break-in where the burglar came

8    prepared with bindings, viciously assaulted one of the residents by striking him with a heavy flashlight

9    and fled only after a violent struggle.  The actions of the police in responding to this violent crime only

10   confirm the exigency of the situation, especially with respect to preventing further physical harm and the

11   need to prevent the burglar's escape.

12         Upon arrival, Sgt. Shepard immediately attempted to set up a perimeter to contain and capture

13   the fleeing burglar while other deputies searched the Yen residence and backyard.  He requested and

14   received two K-9 units who began searching the neighborhood for the suspect.  Sgt. Shepard even

15   requested air support, which was unavailable.  Sgt. Shepard testified in Alameda County Superior Court

16   that the situation was exigent because: (1) a violent crime had been committed against the Yen family,

17   potentially with a firearm; (2) the burglar fled the residence and it was unknown if the burglar was still

18   in the immediate area or had entered an adjacent residence; and (3) he was concerned for the safety of

19   the police officers on scene and other residents in the area.  Defendant's Exhibit C at 51.  Sergeant

20   Shepard made similar notations in his police report, including: (1) continued fear for the Yen family's

21   safety as the suspect may return to reclaim his phone; (2) the need to identify the suspect and prevent

22   harm to others in the area; and (3) that locating a photo of the suspect would materially assist in his

23   apprehension.  Defendant's Exhibit A at 2.

24         Moreover, the situation in the present case was objectively exigent, even if officers were not in

25   actual hot pursuit.  "Even in the absence of hot pursuit, the gravity of the crime and likelihood that the

26   suspect is armed may be considered when weighing the risk of danger[.]" Ortiz-Sandoval v. Clarke, 323

27   F.3d 1165, 1171 (9th Cir. 2003).  Here, the seriousness of the crime is evident.  The officers had reason

28   to believe that burglar was armed for two reasons: (1) Chung described being awakened with a red laser

light which can be characterized as similar to a laser sight from a firearm and (2) the burglar fought with and seriously assaulted Chung with a heavy flashlight prior to fleeing the residence.

The exigency rationale is supported by the Supreme Court's teaching in <u>Riley v. California</u>, 134 S. Ct. 2473, 2495 (2014), which held that the search incident to arrest exception to the warrant requirement does not apply to cell phones.  In <u>Riley</u>, the Supreme Court also generally identified exigency as a valid warrant exception applicable to cell phones and specifically identified pursuit of a fleeing suspect as exactly the kind of exigency that might arise:

> [E]ven though the search incident to arrest exception does not apply to cell phones, other case-specific exceptions may still justify a warrantless search of a particular phone. "One well-recognized exception applies when ' "the exigencies of the situation" make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable under the Fourth Amendment.' " *Kentucky v. King*, 563 U.S., at ——, 131 S.Ct., at 1856 (quoting *Mincey v. Arizona*, 437 U.S. 385, 394, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978)). Such exigencies could include the need to prevent the imminent destruction of evidence in individual cases, to pursue a fleeing suspect, and to assist persons who are seriously injured or are threatened with imminent injury.

<u>Riley</u>, 134 S. Ct. at 2494; <u>compare</u> <u>United States v. Camou</u>, 773 F.3d 932, 941 (9th Cir. 2014) (exigency of preserving volatile data from remote wipe did not justify warrantless cell phone search one hour and twenty minutes after defendant's arrest).  In light of the exigencies identified in this case, measures like Sgt. Shepard's on-scene use of the phone is expressly contemplated by <u>Riley</u>.

Muller makes much of the notion that once law enforcement obtained the telephone number that Verizon would not release subscriber information unless there was a life-threatening emergency.  Muller claims law enforcement's failure to complete Verizon's form to this effect is conclusive proof that no exigency and no emergency existed at the time Sergeant Shepard dialed 9-1-1.  Muller's assertion ignores Sgt. Shepard's direct testimony during the Alameda County Superior Court hearing where he outlined the factors supporting exigency, which were also contained within his police report.  Defendant's Exhibit A at 2 and Exhibit C at 51 .  Muller cites no authority for the proposition that exigency dissipates if an emergency is not life-threatening.  Muller also ignores Sgt. Shepard's testimony during the Alameda County Superior Court hearing where he explained that he did not follow up with Verizon because the exigency had dissipated by the time he learned of Verizon's requirements.

Exhibit C at 55-56.

Muller asserts, relying on United States v. Johnson, 256 F.3d 895 (9th Cir. 2001) that exigency cannot exist in this case because the police were not in actual hot pursuit having not yet identified the burglar.  Muller's reliance on Johnson is misplaced.  In Johnson, Smith, an individual with no fewer than five outstanding misdemeanor warrants, fled when a deputy attempted to arrest him.  Id. at 899. The deputy lost sight of Smith in a wooded area and waited for additional officers to arrive. Id.  After approximately 30 minutes had passed and without probable cause to believe Smith was on Johnson's property, the deputies entered Johnson's property through a locked gate and began searching for Smith. Id. at 900.  While on Johnson's property, the deputies detected the odor of marijuana near a shed.  Id. Although Smith was never located on the property, the deputies later returned with a search warrant and found 553 growing marijuana plants.  Id.  The district court denied Johnson's motion to suppress.  Id.  In reversing Johnson's conviction, the Ninth Circuit, citing United States v. Lai, 944 F.2d 1434, 1441 (9th Cir. 1991) noted that "when the government relies on the exigent circumstances exception, it must still satisfy two requirements: first the government must prove that the officer had probable cause to search [the phone]; and second, the government must prove that exigent circumstances justified the warrantless intrusion." Id. at 905.  The Ninth Circuit went on to conclude that the deputies did not have probable cause to believe that Smith was even on Johnson's property nor were they in hot pursuit of Smith at the time they searched Johnson's property 30 minutes after last seeing him.  Id. at 906-908.  The Ninth Circuit indicated that hot pursuit only applies "when officers are in 'immediate' and 'continuous' pursuit of a suspect from the scene of a crime." Id. at 907.

In this case, the deputies were focused on preventing the burglar from escaping and also protecting themselves and the Yen family.    The facts here are not even close to those in Johnson.

**F.     Even If Sergeant Shepard Impermissibly Obtained The Burglar's Telephone Number, The Resulting Search Warrant Is Still Valid.**

"A search warrant isn't rendered invalid merely because some of the evidence included in the affidavit is tainted."  United States v. Nora, 765 F.3d 1049, 1058 (9th Cir. 2014) citing United States v. Reed, 15 F.3d 928, 933 (9th Cir. 1994).  "The warrant remains valid if, after excising the tainted evidence, the affidavit's 'remaining untainted evidence would provide a neutral magistrate with

1    probable cause to issue a warrant.'" Id.  After excising the tainted evidence, courts examine the affidavit

2    "without the usual deference owned to the magistrate's initial finding of probable cause."  Id.

3            Alameda County Sheriff's Detective Kevan Woods authored the search warrant for the burglar's

4    abandoned telephone and for subscriber records from Verizon.  The search warrant was approved by an

5    Alameda County Superior Court judge.  In addition to his training and experience, Detective Woods

6    informed the Alameda Superior Court that he was investigating a violent, home invasion burglary that

7    had taken place in the early morning hours or June 5, 2015.  The affidavit contained a description of the

8    suspect and the crime, including the fact that Chung had been assaulted and that the burglar fled leaving

9    a cellular telephone behind.  The affidavit described the phone and noted that the Verizon carrier logo

10   was stamped on the rear cover of the phone.  The affidavit discussed how police obtained the telephone

11   number and Verizon's refusal to provide subscriber data in the absence of a life threatening emergency.

12           Although the United States does not concede that the telephone number in the affidavit is tainted

13   evidence, excising it would not affect the Alameda County Superior Court's finding of probable cause.

14   The excision of the phone number does not change that a burglar broke into the Yen residence, set his

15   phone on the counter  across from Kerry's bedroom and then viciously assaulted Chung.  The phone

16   number also has no impact on Detective Woods' recitation of his training and experience as applied to

17   how violent criminals typically use cell phones and what information he expected to find within the

18   phone itself.  In fact, the only real impact that the phone number had was to make it easier for Verizon to

19   more quickly gather the records and information requested.

20           Because the search warrant authorized the police to look at the contents of the burglar's phone

21   itself in addition to ordering Verizon to produce certain information, the doctrine of inevitable discovery

22   is also applicable to this case.  "The inevitable discovery doctrine acts as an exception to the

23   exclusionary rule, however, and permits the admission of otherwise excluded evidence 'if the

24   government can prove that the evidence would have been obtained inevitably and, therefore, would have

25   been admitted regardless of any overreaching by the police…" United States v. Riley, 224 F.3d 986,

26   994 (9th Cir. 2000) citing Nix v. Williams, 467 U.S. 431, 447 (1984).  The United States bears the

27   burden of showing inevitable discovery by a preponderance of evidence and district court rulings are

28   reviewed for clear error.  Id.  Presumably, when looking into the phone itself, the police would have

quickly and inevitably discovered the assigned telephone number and various other data referenced in the search warrant.[5]

### G.   The Court Should Deny The Motion Without Holding An Evidentiary Hearing.

"A hearing will not be held on a defendant's pre trial motion to suppress merely because a defendant wants one." United States v. Howell, 231 F.3d 615, 621 (9th Cir. 2000) (quoting United States v. Harris, 914 F.2d 927, 933 (7th Cir. 1990). Defendant concedes that the phone was left in a place where the burglar had no right to be. Defendant concedes that the burglar left the phone behind after the home's lawful occupants repelled the burglar. Defendant concedes that the burglar never came back for the phone. Defendant offers only argument and speculation about who the burglar was and what he intended when he ran from the Dublin house never to return. That falls far short of the "definite, specific, detailed, and nonconjectural showing" that he had to make. United States v. Walczak, 783 F.2d 852, 857 (9th Cir. 1986). The Court need not hold an evidentiary hearing unless "sworn statements and exhibits present directly contradictory accounts of the sequence of events," which are "sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question." United States v. DiCesare, 765 F.2d 890, 895-896 (9th Cir. 1985), citing United States v. Ledesma, 499 F.2d 36, 39 (9th Cir. 1974).

There is a reason that "[e]videntiary hearings should not be set as a matter of course." Cohen v. United States, 378 F.2d 751, 760 (9th Cir. 1967). "[F]actual allegations which are general and conclusory or based upon suspicion and conjecture will not suffice, for 'claims that taint attaches to any portion of the Government's case must satisfy the trial court with their solidity and not be merely a means of eliciting what is in the Government's possession before its submission to the jury.'" Id., quoting Nardone v. United States, 308 U.S. 338, 342 (1939).

Notwithstanding Muller's protestations that there are "several issues of material fact," as the

---

[5] The United States is aware that the inevitable discovery doctrine does not apply in circumstances where the police had probable cause and could have inevitably obtained a search warrant but failed to do so. See United States v. Echegoyen, 799 F.2d 1271, 1280 n.7 (9th Cir. 1986); United States v. Boatright, 822 F.2d 862 (9th Cir. 1987); United States v. Mejia, 69 F.3d 309, 320 (9th Cir. 1995) (The Ninth Circuit "has never applied the inevitable discovery exception so as to excuse the failure to obtain a search warrant where the police had probable cause but simply did not attempt to obtain a warrant."). Such is not the case here, because the police applied for and obtained a search warrant for the phone.

Court will note from the parties' moving papers, there is no real factual dispute as to what transpired on June 5, 2015.[6]  A burglar broke into the Yen residence, assaulted Chung, fled the residence and abandoned a cell phone.  The police arrived, secured the scene, set up perimeter to locate the burglar, recovered the abandoned cell phone and believing there to be exigent circumstances, placed a 9-1-1 call from the lock-screen.  The telephone number was later incorporated into a search warrant which allowed the police to search the phone and to obtain subscriber information and other information from Verizon.  At issue in this case is not what actually happened, but rather how those facts meet the applicable legal principles of standing, exigent circumstances, abandoned property, and the doctrine of excision.  This Court has more than sufficient information upon which to make appropriate findings of fact and conclusions of law without ordering an evidentiary hearing.

Additionally, it is worth noting that Muller has already had an evidentiary hearing in Alameda County Superior Court related to very issues he raises here.  Muller even attached a transcript of that hearing for this Court's consideration.  There is simply no need for Muller to get "another bite at the apple" in this Court to attempt further development of non-existent disputed factual issues.

Because there are no materially disputed facts, the Court should deny Muller's request for an evidentiary hearing.

## IV. CONCLUSION

For all of the foregoing reasons, this Court should deny Muller's motion to suppress and request for an evidentiary hearing.

Dated:  May 27, 2016

PHILLIP A. TALBERT
Acting United States Attorney


By:  /s/ HEIKO P. COPPOLA
HEIKO P. COPPOLA
Assistant United States Attorney

---

[6] Muller claims that an evidentiary hearing is required to address: "1) whether there was a search of the phone; 2) why the police searched Mr. Muller's phone; (3) and whether there was an exigency to excuse the warrantless search."  Brief of Defendant at 22.

# GOVERNMENT'S
# EXHIBIT 1

# SUPERIOR COURT OF CALIFORNIA
## County of Alameda



## SEARCH WARRANT

**THE PEOPLE OF THE STATE OF CALIFORNIA to:**     Warrant No. 2015 -1988
**Any peace officer in Alameda County**

The affidavit below, sworn to and subscribed before me, has established probable cause for this search warrant which you are ordered to execute as follows:

**Place(s) to be searched:** Described in Exhibit 1A, *attached* hereto and incorporated by reference.

**Property to be seized:** Described in Exhibit 1B, *attached* hereto and incorporated by reference.

**Night service:** [If initialed by judge] For good cause, night service is authorized: _____

**Disposition of property:** All property seized pursuant to this search warrant shall be retained in the affiant's custody pending further court order pursuant to Penal Code §§ 1528(a), 1536.

June 5, 2015 at 9:20 a.m.               Thomas C. Rog—
_____                _____
Date and time warrant issued           Judge of the Superior Court

ENDORSED
FILED
ALAMEDA COUNTY
JUN 1 2 2015
CLERK OF THE SUPERIOR COURT
By __Alicia Andriani__
Deputy

## ♦ AFFIDAVIT ♦

**Affiant's name and agency:** Detective K. Woods #1833, Alameda County Sheriff's Office / Dublin Police Services.

**Incorporation:** The facts in support of this warrant are contained in the Statement of Probable Cause which is incorporated by reference. Incorporated by reference and *attached* hereto are Exhibit 1A, describing the place(s) to be searched; and Exhibit 1B, describing the evidence to be seized.

**Evidence type:** (Penal Code § 1524)

[ ] Stolen or embezzled property.

[x] Property or things used as a means of committing a felony.

[ ] Property or things in the possession of any person with the intent to use it as a means of committing a public offense, or in the possession of another to whom he or she may have delivered it for the purpose of concealing it or preventing its being discovered.

[☒] Property or things that are evidence that tends to show a felony has been committed, or tends to show that a particular person has committed a felony.

[ ] Property or things consisting of evidence that tends to show that sexual exploitation of a child, in violation of Penal Code § 311.3, or possession of matter depicting sexual conduct of a person under the age of 18 years, in violation of Penal Code § 311.11 has occurred or is occurring.

[ ] **Night Service:** [If checked] Authorization for night service is requested based on information contained in the Statement of Probable Cause, filed herewith.

**Declaration:** I declare under penalty of perjury that the information within my personal knowledge contained in this affidavit, including all incorporated documents, is true.

6|5|15    0419
_____                _____
Date                                   Affiant

**Exhibit 1A**

I Detective Kevan Woods # 1833, being sworn says:

That there is probable and reasonable cause to believe, that there is now digital evidence in the memory of a cellular phone, the cellular phone is further described as a white in color, Samsung "Galaxy Note 4" cellular phone, model #SM-N910V, IMEI #990004824579217. The cellular phone belongs to an unknown suspect, who dropped the cellular phone during a home-invasion robbery. The cellular phone is currently located in a locked evidence locker at the Dublin Police Services station, located at 100 Civic Plaza, Dublin California, 94568.

I also believe there is probable and reasonable cause to believe, and I do believe, that there is now on and in the premises, structures, rooms, storage areas, safes, lockboxes and receptacles situated at;

1) **Verizon**, ATTN: Custodian of records,180 Washington Valley Road Bedminster, NJ 07921
   Contact # 800-451-8242, FAX # 1-888-667-0026

For the following property and things consisting of: See Exhibit 1B.

# Exhibit 1B

**For the following property and things consisting of:**

It has been my experience and the experience of other experienced investigators with whom I have spoken that persons involved in robberies will normally have; most if not all of the following items of evidence within the memory of their personal electronic devices. Personal telephone books, address books, lists of names and phone numbers of co-conspirators and suspects involved in the trafficking of stolen property. Text messages showing detailed conversations with co-conspirators, directly related to the pre-planning, details of the victim(s) and execution of the crime being investigated. Photographs of the potential suspect and other co-conspirators, weapons, even photographs of the victim's residence, which would indicate pre-planning of behalf of the suspect.

Additionally a search of the suspect's personal cellular telephone shall include any and all electronically stored data, including but not limited to, personal e-mail addresses, messages, photographs, videos, images, e-mail, read, unread, sent, unsent, saved, and deleted.

The court further authorizes the ability to by-pass any and all electronic security features such as password protection and encryption.

The court further authorizes the search of all electronic data offsite by investigators from the Alameda County Sheriff's Office or any other California Peace Officer.

The terms "records", "information" and "property" includes all of the foregoing items of evidence in whatever form and by whatever means that may have been created or stored, including records, whether stored on paper, on magnetic media such as tape, cassette, disk, diskette or on memory storage devices such as optical disks, programmable instruments such as telephones, "electronic address books," calculators, or any other storage media, or any other form of "writing" as defined by Evidence Code section 250, together with indicia of use, ownership, possession, or control of such records.

Investigating officers are authorized, at their discretion, to conduct an off-site search of the seized item for the evidence described. Investigating officers and those agents acting under the direction of the investigating officers are authorized to access all computer data to determine if the data contains "property," "records," and "information" as described above. If necessary, investigating officers are authorized to employ the use of outside experts, acting under the direction of the investigating officers, to access and preserve the cellular telephone data. The investigating officer has 90 days from the date of seizure to determine if the seized cellular telephone contains some or all of the evidence described in the warrant.

**A.) Subscriber information**, including but not limited to name, address, phone numbers, and other personal identifying information relating to the subscriber for:

Verizon      (916) 500-8047

**B.) Account comments** for:

Verizon      (916) 500-8047

**C.) Credit information for each such account,** including but not limited to credit reports and or payment method and associated credit/debit/account numbers for subscriber/customer prior to and after activating the account

**D.) Outbound and inbound calls and text messages/detail for each such account** for the time periods between 12/05/14, 0000 hours through 06/05/15 0840 hours.

**E.) Call and text origination / termination location for each such account,** for the time periods between 12/05/14, 0000 hours through 06/05/15 0840 hours.

**F.) Call and text detail and cell site information for each such account** for time periods between 12/05/14, 0000 hours through 06/05/15 0840 hours

**G.) Physical address of cell sites and RF coverage map for each such account** for time periods 12/05/14, 0000 hours through 06/05/15 0840 hours

**H.) Any other cellular telephone numbers that dial and text such numbers** associated with the following numbers for the time periods between 12/05/14, 0000 hours through 06/05/15 0840 hours.

Verizon     (916) 500-8047

**I.)Subscriber information on any cellular numbers that are dialed and text by**

Verizon     (916) 500-8047

**J.) All of the above records whether possessed by cellular service provider or any other cellular service provider**

**K.) All connection logs and records** of user activity for each such account including:
1. Connection dates and times.
2. Disconnect dates and times.
3. Method of connection (e.g., telnet, ftp, http)
4. Data transfer volume.
5. User name associated with the connections.
6. Telephone caller identification records.
7. Any other connection information, such as the Internet Protocol address of the source of the connection.
8. Connection information for the other computer to which the user of the above-referenced accounts connected, by any means, during the connection period, including the destination IP address, connection time and date, disconnect time and date, method of connection to the destination computer, and all other information related to the connection from cellular service provider.

**L.) Any other records or accounts, including archived records** related or associated to the above referenced names, user names, or accounts and any data field name definitions that describe these records.

**I request the documents be returned via electronic mail, to the following electronic mail address:** ████████████████ **I further request the documents be sent in the format of Portable Document Format (PDF).**

**ORDER FOR NON-DISCLOSURE OF SEARCH WARRANT**

It is further ordered that cellular service provider not to notify any person (including the subscriber or customer to which the materials relate) of the existence of this order for 90 days in that such a disclosure could give the subscriber an opportunity to destroy evidence, notify confederates, or flee or continue his flight from prosecution.

June 5, 2015 at 9:20 a.m
_____
Date and time warrant issued

Thomen C. Roger
_____
Judge of the Superior Court

### *Statement of Probable Cause*

Your affiant is Deputy K. Woods #1833. I am currently employed as a full-time, duly sworn Deputy Sheriff with the Alameda County Sheriff's Office. I have been a Deputy with the Sheriff's Office for approximately 8 years. During my 8 years as a Deputy Sheriff, I have been involved with the investigation of cases involving murder, attempted murder, shootings, assault, battery, rape, robbery, child abuse, property thefts and narcotic related crimes.

I graduated from a POST Certified Police Academy where I have been trained in Basic Investigation, Homicide Investigation, Robbery Investigation, Child Abuse Investigation, Sexual Assault Investigation, Narcotics Investigation, Property Crimes Investigation, and Vehicle Theft Investigation.

I received my education and training from the Alameda County Sheriff's Office Regional Training Center and have completed numerous training classes on my own time. Those specialized training classes include but are not limited to the following:

Interview and Interrogation, *Third Degree Communications, South San Francisco, CA*
Firearms Investigation Training, *Bureau of Alcohol, Tobacco and Firearms, Oakland, CA*
Street Crimes Seminar, *Pat McCarthy's Street Crimes, Modesto, CA*
Street Development, *California Narcotic Officer's Association Dublin, CA*
Marijuana Eradication, *California Narcotic Officer's Association Dublin, CA*
Oxycontin & Heroin Investigation, *California Narcotic Officer's Association, Dublin, CA*
Drug Trends/Drugs of Abuse, *California Narcotic Officer's Association, Dublin, CA*
Marijuana Update – Prop 215, *California Narcotic Officer's Association, Dublin, CA*
Search Warrants "A-Z", *Walnut Creek Police Department, Walnut Creek, CA*

I am also a member of the California Narcotic Officers Association.

On 060515, about 0410 hours, while working as a Detective for Dublin Police Services, the following occurred:

I was detailed to the scene of a home invasion robbery which occurred at the residence of ███████████ ████████ in the city of Dublin. Patrol units advised about 0330 hours, the suspect forced entry into the home through a downstairs window. When the suspect was confronted by the homeowner, a struggle ensued and the victim was able to escape from the suspect, after being struck in the head and face area, suffering minor injuries. The suspect fled from the residence and was able to elude capture. The victim advised the suspect dropped a white "Samsung" Galaxy Note 4 cellular phone during the struggle. The suspect was described as a white male, wearing all black clothing.

The suspect's cellular phone is described as a Samsung brand, model "Galaxy Note 4" (#SM-N910V), white in color. The "Verizon" carrier logo is stamped into the rear cover on the phone. The unique International Mobile station Equipment Identity number (IMEI) number on the cellular phone is listed as #990004824579217.

After the cellular phone was recovered from the victim's home, it was discovered the phone was locked by means of a screen pattern-lock and no information could be recovered from physical examination of the phone. An emergency "911" call was placed from the lock-screen of the phone, which revealed the cellular phone number of "9165008047" at the California Highway Patrol 911 dispatch center.

Page 1 of 3

Verizon corporation was contacted to attempt to get subscriber information for the cellular phone, however based on the fact that the current situation was not "life threatening", Verizon would not disclose the subscriber information, or any other information about the account. However, based on my training and experience, I know that home invasion robberies are violent felonies, which often result in the victims being murdered, sexually assaulted, or otherwise physically harmed, during the commission of the robbery. Based on information from the victim, about the suspect having zip-ties in his possession, I believe the suspect(s) entered the residence with the intent to handcuff the victims and commit violent crimes such as murder, rape and robbery. Based on these facts, I believe the subscriber information is imperative to this investigation in taking a violent, fleeing felon into custody, to prevent further acts of violence.

I conducted a check on the law enforcement website www.accurint.com for the suspect's phone number. The search returned with no result. The public website www.fonefinder.com confirmed the cellular phone provider was Verizon.

Based on my professional experience and training, I know that suspects who commit robberies often use their cellular phone as a means of communications between co-conspirators or associates. This communication often contains details specifics about the scene of the robbery, the potential victim(s) and a means of planning or furthering the commission of the crime.

Based on my training and experience, I know that suspect(s) who commit home-invasion robberies often have co-conspirators to assist them with the commission of the crime, based on the severity and complexity involved in gaining entry into an occupied residence and over-powering the occupants. These co-conspirators often include, but is not limited to: lookouts, "get-away" drivers and other suspects to assist gaining entry into the residence, by means of forced entry. I know that this complex crime is often pre-planned and may be strategized via cellular phone, in the form of text messages and phone calls to con-conspirators, to report updates and changes to the potential plan. I believe a search of the phone records will reveal information which will further my investigation as to identifying the suspect(s) involved in the home invasion robbery and will assist in locating evidence which may not have been discovered as of yet.

Based on my training and experience, I know that cellular phones are often equipped with a GPS system, to assist the user with "location services" or internet-based maps. This GPS data will assist in the investigation by showing where the suspect may have been prior to the commission of the robbery, or potentially revealing a possible residence of the suspect or co-conspirators.

Based on my training and experience, I know that cellular phones connect and use data via cellular phone "towers". I know that the usage and data transfer is tracked via the cellular phone towers. I believe through the use of "triangulation" that the cellular towers will show the location of the phone, prior to the commission of the robbery and may show a path of travel for the suspect(s), to the victim's residence. Triangulation is often accomplished through the GPS data of multiple cellular phone towers, to show the location of cellular phones in real-time. Based on my own experience, I know that cellular tower triangulation will show the current and past locations of a certain cellular phone.

I also believe that a search and review of the items listed in Exhibit 1B will show evidence that the unknown suspect and/or his accomplices are directly associated with the robbery and I believe the information requested will assist in revealing the suspect's identity.

Based on my training and experience I know that cellular phones contain phone numbers, listed as "contacts" in the phone of the suspect. The phone may also contain, but is not limited to text messages, phone call records, voicemail messages, pictures, videos, social media information, all which may contain information pertaining to this investigation and will provide investigative leads and evidence.

Page 2 of 3

Based on my training and experience, I know that suspects involved in robberies will often take photographs of themselves or other co-conspirators. These photographs are often taken with camera-enable cellular phones and the pictures are often stored in the internal memory or the removable expandable memory ports (i.e. SD cards, external memory cards) on the phone. I know that pictures are often sent and received in the form of messaging, commonly referred to as "picture messages" and stored in the internal memory of the phone, in the text message records. These photographs may also contain information vital to this investigation. Based on my training and experience, I know that communication between suspects of robberies are often conducted via text message. Text messages often contain, but are not limited to pre-planning of the crime, specific and intimate details of the victims. These text messages may provide a detailed account of the suspect's role and the role of the co-conspirators role in the crime.

Based on the above information, I believe the unknown suspect is using the cellular phone to conduct and coordinate robberies.

I therefore request that a search warrant be issued so these items of evidence can be immediatley recovered.

Your affiant is aware that cellular service provider is located within the States of New Jersey. Pursuant to Penal Code section 1524.2 and Corporations Code section 2105 a California search warrant may be served upon them and they have requested that this warrant be served by facsimile.

**I request the documents be returned immediately via electronic mail to the following electronic mail address:** ▇▇▇▇▇▇▇▇ **or relayed via voice telephone call to the affiant. I further request the documents be sent in the format of Portable Document Format (PDF).**

**I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge.**

**Subscribed and sworn on**

_(signature)_

(Detective Kevan Woods #1833)

6/5/15

Date

_(signature)_ Theman C. Rogers

(Signature of Magistrate)

June 9, 2015

Date