THOMAS A. JOHNSON, #119203
KRISTY M. Kellogg, #271250
Johnson, Greene & Roberts LLP
400 Capitol Mall, Suite 1620
Sacramento, California 95814
Telephone: (916) 422-4022

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>MATTHEW MULLER,<br>Defendant. | Case No.: 2:15-cr-00205-TLN<br><br>DEFENDANT'S REPLY TO MOTION TO SUPPRESS EVIDENCE PURSUANT TO *FRCrP 12(b)*AND REQUEST FOR EVIDENTIARY HEARING |

## I – REPLY

### A. Mr. Muller Has Proven He Has a Legitimate Expectation of Privacy to Contest the Search of His Phone.

With respect to the issue of Mr. Muller's expectation of privacy in his cell phone, the Government's Opposition relies upon case law establishing that a person does not have a legitimate expectation of privacy in a place that is searched when the defendant was unlawfully present or an item that was unlawfully obtained. *See* ECF Doc. No. 28 p. 4 ln 16 – 5, ln 9. The cases cited discuss the loss of a legitimate expectation of privacy in a place which the defendant did not have a right to be present or an item which the defendant was unauthorized to possess. In Rakas v. Illinois, 439 U.S. 128, 132 (1978), the United States Supreme Court held that you cannot steal a car and then later claim you have an expectation of privacy in the very car you stole. The Rakas facts are different than what the court is faced with here. Mr. Muller did not steal the phone he is seeking to

suppress. It was his phone, not a stolen phone. So he absolutely has an expectation of privacy in the phone. Likewise, the case of United States v. Luong, 386 F.3d 888, 895 (9th Cir. 2004), provides little or no assistance to the Government's arguments. Luong stands for the proposition that you cannot fraudulently gain access to a motel room and then claim an expectation of privacy in the search of that room. We are not contending Mr. Muller had an expectation of privacy in the Yen home, only in the phone that belonged to him that was searched without a warrant.

All of the cases cited by the Government deal with the expectation of privacy with regard to stolen items or venues that were accessed by fraud or deceit. These cases completely miss the mark when compared to the facts in this case. Mr. Muller's phone was not stolen before it was searched. Our motion rests upon the search of his phone, the phone that he lawfully possessed. These cases would apply if Mr. Muller was contesting the search of the house of the Yen family, a place where Mr. Muller had no right to be present. Mr. Muller is contesting the search of his own cell phone which was not stolen. His cell phone was locked with a pass-code and was owned by Mr. Muller. This information was discovered by the officers during the investigation and is supported by the declaration of Mr. Muller's mother.

The most analogous case with regard to the issue of a reasonable expectation of privacy is United States v. Lopez–Cruz, 730 F.3d 803 (9th Cir.2013). In Lopez-Cruz, similar to this case, "the government argue[d] that Lopez lacks standing because (1) he did not carry his burden by presenting affirmative evidence of ownership or permission to use the seized phones; or, (2) if he met his threshold burden, he abandoned any reasonable expectation of privacy when he renounced ownership of the phones. *Id.* at 807-808. The Ninth Circuit rejected both of these arguments and the Court found the defendant had a reasonable expectation of privacy to contest the search despite his disclaim of ownership. Riley has emphasized the importance of the privacy interests in a cell phone due to the amount of private information which can be stored on modern cell phones.

Additionally, the Government's argument that we have not shown that Mr. Muller was the burglar is without merit.  There was only one person in the house that night committing a burglary, Mr. Muller.  The phone traces back to Mr. Muller's step-father and mother, both of whom told police that the phone belonged to Mr. Muller.  So it appears that the Government is arguing that some unknown third person had possession of Mr. Muller's phone and committed the burglary.  No other person was charged and Mr. Muller pled no contest to the charges arising out of Dublin.  Mr. Muller has submitted a declaration in which he asserts ownership of the phone and admits he committed the burglary which has been attached and labeled Exhibit D.

**B.      Muller Did Not Abandon His Cell Phone.**

The abandonment cases cited by the Government are distinguishable and thus inapplicable in this analysis.  The cases cited by the Government deal with the intentional abandonment of items during police pursuit while attempting to seize the defendant.  In United States v. Taylor, 462 F.3d 1023, 1026 (8th Cir. 2006), after being stopped by police in a vehicle, the defendant took off on foot and intentionally dropped the cell phone in the street and threw the black bag and the gun into different back yards. There is no suggestion that Mr. Muller intentionally dropped the phone in the middle of a police pursuit.  There are simply no facts to show he dropped, threw, or otherwise tried to ditch the phone.  He just ran out of the house without the phone.  Thus, Taylor provides no help to the Government's arguments.  In California v. Hodari D., 499 U.S. 621, 629 (1991), the United States Supreme Court did not even rule on the issue of a reasonable expectation of  privacy of an abandoned item but focused on whether the defendant had been seized in violation of the Fourth Amendment.  The Government also cites United States v. Nordling, 804 F.2d 1466 (9th Cir. 1986).  In Nordling, the defendant left his tote bag on a plane and twice denied ownership of the tote bag.  Mr. Muller has never denied ownership of the phone.  In fact, he pled no contest and was told his no contest plea

would be treated as a guilty plea by the sentencing judge. That is the opposite of denying ownership.

In determining whether an item was abandoned, the court uses an objective test. United States v. Lopez-Cruz, 730 F.3d 803, 808 (9th Cir. 2013). In this case, none of the members of the Yen family state they saw Mr. Muller discard or abandon a cell phone. The cell phone was found on a counter in the Yen home and it appears that it was inadvertently misplaced. It would make no sense for Mr. Muller to intentionally abandon evidence at the scene of the crime when that evidence could be easily traced back to Mr. Muller. Contrary to the cases cited by the government, there are no facts which indicate Mr. Muller intentionally abandoned the cell phone. The items discarded by the defendants in Hodari D. and Taylor were intentionally abandoned in order to dispose of evidence during a police pursuit. In contrast to Nordling, Mr. Muller has never denied ownership of his cell phone. Mr. Muller retained his privacy interest by safeguarding his cell phone with a pass-code.

Defendant's mother indicated to police that Mr. Muller informed her that he lost his cell phone. *See* ECF Doc. No. 25, Exhibit A at p. 7, Report of Deputy Buenrostro. Mr. Muller's step-father also spoke to Deputy Buenrostro and informed him that Mr. Muller was going to pick up the cell phone from the police station. *Id*. Therefore, the Government's argument that the phone was abandoned is difficult to reconcile with these facts. If the phone was locked and if the lock screen was bypassed, it was searched. It is not that complicated. This conduct gave the police access to use the phone to call 911 and thereby learn the phone number of the cell phone. That is called searching and the Government has been reduced to simply splitting hairs. The police later sought a search warrant because they were specifically told by the cell phone carrier that they needed an exigency declaration in order to search for the information they wanted, the potential identity of the burglar, Mr. Muller.

Based upon the objective facts from the police report, Mr. Muller lost his cell phone and indicated to his parents his desire to retrieve his phone from the police station.

An item that was misplaced and inadvertently left behind is not abandoned and Mr. Muller retains his right to privacy to contest the warrantless search of his cell phone. Whether the cell phone was abandoned is a disputed material fact that was not a contested issue in the state court proceedings.  Thus, an evidentiary hearing is requested. The location of the phone, the timing of the discovery of the phone, and the search of the phone are all facts which necessitate an evidentiary hearing in this matter.

**C.     No Exigency Existed That Would Justify a Warrantless Search of the Cell Phone.**

This case is an issue of first impression and, because the set of facts in the case are unique, exigency is argued by analogous case law.  The Government cites Ortiz-Sandoval v. Clarke ("Ortiz-Sandoval"), which holds:

> Even in the absence of hot pursuit, the gravity of the crime and likelihood that the suspect is armed may be considered when weighing the risk of danger. Minnesota v. Olson, 495 U.S. 100 (1990). *See also* Welsh v. Wisconsin, 466 U.S. 740, 753, (1984) (holding that "an important factor to be considered when determining whether any exigency exists is the gravity of the underlying offense").

However, Ortiz-Sandoval is sufficiently distinguishable because the underlying offense was murder, and the police knew that the murder weapon had yet to be recovered, thus increasing the possibility that Sandoval was armed. These considerations supported the state court's determination that exigent circumstances excused the warrantless entry into the home of the defendant.

The facts of this case are nowhere near as severe as Ortiz-Sandoval.  No one was murdered in this case.  More importantly, everyone on scene was safe and secure by the time the phone was given to Sergeant Shephard.  The burglary was over and that is why the Yen family was allowed to stand around on the front porch to talk to the police.  Mr. Yen was injured but it was Mr. Yen who initiated the fight, not Mr. Muller.  According the Computer Aided Dispatch ("CAD") log, Mrs. Yen informed police that Mr. Muller

had fled the scene and ran through the back door at 3:36 a.m. *See* ECF Doc. No. 25, Exhibit A at p. 11. Mr. Muller fled after Mr. Yen told Mrs. Yen to "get the gun." Common sense dictates that Mr. Muller must have been unarmed if he fled at the possibility that the Yens had a gun in the home. None of the Yen family indicated that Mr. Muller had a gun. The first time anyone mentioned anything about the possibility that Mr. Muller may have been armed with a gun was at the Preliminary Hearing. The Preliminary Hearing occurred approximately three months after the incident took place and no such information was ever included in any police report or in the warrant.

According to Sergeant Shephard's report, the house had been cleared and eight officers and two police dogs were on scene by the time Kelly Yen gave Mr. Muller's cell phone to police. *Id.* at Exhibit A, p. 1-2. By the time police discovered the phone, approximately 23 minutes had passed since Mrs. Yen told police that Mr. Muller ran from the scene. *Id.* at Exhibit A, p. 11-12. At that point in time, no exigency was present which would have justified a warrantless search of the cell phone. Since there was no life threatening emergency, the form to obtain the subscriber information was not sent to Verizon. Only after the warrantless search occurred did police write in reports and testify there was an exigency. However, such a blanket conclusion is not supported in light of the objective facts and the Court should find no exigency existed. Whether an exigency is existed is a disputed material fact. The objective facts from the police reports and the testimony that Mr. Muller was potentially armed with a gun are inconsistent and a hearing is necessary for the Court to make a ruling on the issue.

**D. The Good Faith Exception Does Not Apply Since the Search Occurred Post-*Riley* and Police Had Probable Cause to Obtain a Warrant but Failed to Do So.**

The exclusionary rule should be applied when police exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights. *See* Davis v. United States, 564 U.S. 229 (2011). However, when "the police act with an objectively

'reasonable good-faith belief' that their conduct is lawful," exclusion is not favored. *Id.* at 2427–28 (*quoting* United States v. Leon, 468 U.S. 897, 909 (1984)).

In Davis v. United States, 564 U.S. 229 (2011), the Supreme Court analyzed whether the exclusionary rule applied "when the police conduct a search in compliance with binding precedent that is later overruled." 564 U.S. at 2423. The police in that case acted under a generally accepted interpretation of a Supreme Court decision. *Id.* at 2424. Two years later, the Supreme Court clarified the decision on which the police had relied. The Eleventh Circuit applied the new rule in the defendant's appeal, and held his Fourth Amendment rights had been violated. *Id.* at 2426. On appeal from that decision, the Supreme Court explained that the point of the exclusionary rule was deterrence, and that there was no deterrent value to discouraging the police from relying on what seemed at the time to be good precedent. *Id.* at 2427-28. The Court held that where a police officer relies on binding precedent, she is "act[ing] as a reasonable officer would and should act." *Id.* at 2429.

At the time when the police conducted this search, *Riley* had already been decided in 2014 which firmly establishes that the search of the cell phone required a warrant. Thus, Riley was binding precedent before the conduct in this case occurred. No exigency existed so a warrantless search was improper. Therefore, the police did take action in deliberate disregard of Mr. Muller's Fourth Amendment rights and the Court should grant the motion to suppress. Therefore, the doctrine of inevitable discovery is also inapplicable since the police had probable cause to obtain a search warrant but failed to do so. *See* United States v. Echegoyen, 799 F.2d 1271, 1280 n.7 (9th Cir. 1986).

## II - CONCLUSION

This case presents an issue of first impression. The arguments and case law presented by the Government are unpersuasive in light the holdings in Riley. According to the Riley case, 134 S. Ct. 2473, the United States Supreme Court unanimously decided that cell phones should only be searched pursuant to a search warrant unless there is an

exception to the warrant requirement. None of the cases cited by the Government regarding these issues post-date Riley. No emergency existed that warranted an immediate search of the cell phone. Violating a person's Fourth Amendment right to be free from unlawful cell phone searches cannot be negated simply to make it easier for law enforcement to apprehend suspects more easily.

Therefore, for all of the aforementioned reasons, Defendant, Matthew Muller, respectfully requests the Court to grant a motion to suppress evidence pursuant to Rule 12(b)(3)(C), or in the alternative, the Court should grant an evidentiary hearing to resolved the contested issues of material facts surrounding the cell phone and whether there was an exigency.

Dated: June 15, 2016

Respectfully Submitted,

/s/ Thomas A. Johnson
Thomas A. Johnson
Attorney for Matthew Muller

/s/ Kristy M. Kellogg
Kristy M. Kellogg
Attorney for Matthew Muller