PHILLIP A. TALBERT
United States Attorney
MATTHEW D. SEGAL
HEIKO P. COPPOLA
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 2:15-CR-205 TLN |
| Plaintiff, | UNITED STATES' RESPONSE TO OBJECTIONS |
| v. | DATE: March 16, 2017 |
| MATTHEW D. MULLER, | TIME: 1:30 p.m. |
| Defendant. | COURT: Hon. Troy L. Nunley |

### I.   INTRODUCTION

Muller's guidelines objection is without merit. The letter he has submitted from his supporters at Harvard Law School only highlights Muller's failure to submit any qualified opinion that treatment could make him less dangerous.

### II.   USE OF A DANGEROUS WEAPON

The PSR properly applies the specific offense characteristic for use of a dangerous weapon. PSR ¶ 73; U.S.S.G. § 2A4.1(b)(1). "Dangerous weapon" includes any object used to create the impression of a dangerous weapon. *See* U.S.S.G. § 1B1.1, application note 1(D), (C). "Used" means more than mere

//
//
//
//

brandishing.  *See* U.S.S.G. § 1B1.1, application note 1(I).  Muller, an ex-Marine, emailed the *San Francisco Chronicle* on March 26, 2015:

> Ms. Huskins and Mr. Quinn each woke up with a red dot on their faces looking down what appeared to be an assault pistol with rail mounted illumination and laser sight.  Actually it was an amateurishly spray painted water pistol with a laser pointer and flashlight duck taped on (photo of one actually used is attached) it looks much more serious in the dark.

PSR at p. 40.  Thus, Muller admits that he woke the victims in their bed and gave them orders while appearing to point an assault pistol at their heads.  *Id.*; PSR ¶ 7.  The specific offense characteristic applies because Muller did much more than just wave a gun around for intimidation.  *See United States v. Fuller*, 99 F.3d 926, 927 (9th Cir. 1996).  The same is true for his use of the stun gun.  The victims heard a stun gun sound and later the recorded message warned them that noncompliance would be punished with electric shock and then facial laceration.  PSR ¶ 8.

### III.  THE CHARACTER LETTER FROM HARVARD

Defendant Muller has submitted a letter signed by some people associated with Harvard Law School.  Muller worked hard as a clinical faculty member and they appreciate the work he did.  Dkt. 51-1.  Things like that do not support the magnitude of the downward variance that Muller seeks.  Muller committed a premeditated, violent crime.  His victims, Denise Huskins and Aaron Quinn, are entitled to see Muller sentenced to forty years imprisonment as appropriate and just punishment.  *See* 18 U.S.C. § 3553(a)(2)(A).

The letter from Harvard has no bearing on what sentence is required to protect the public from Muller's future crimes.  *See* 18 U.S.C. § 3553(a)(2)(C).  The Court should assign no weight at all to the supposition that this offense was the consequence of untreated mental illness and the opinion "that with treatment Matt can once again make tremendous contributions." Dkt. 55-1.  The people who signed this letter do not seem to know much about this case.  Their assessment discusses only Muller's work at Harvard,[1] a conversation that a professor had with Muller's now-ex-wife, and "news reports that have come to [their] attention." Dkt. 55-1 at 2.  No one who has signed the letter claims any expertise in mental health, and, obviously, no one has examined Muller.

---

[1] Muller's work focused on victims of torture and domestic violence.  PSR ¶¶ 115, 135.

The letter's speculative lay opinion actually highlights Muller's important failure of proof on exactly this subject. Muller was arrested on this charge on September 21, 2015. PSR ¶ 3. He pleaded guilty on September 29, 2016. PSR ¶ 1. Muller's plea agreement expressly contemplated a lengthy presentence investigation so that he might prepare and present evidence about his mental health. Dkt. 43 at 7. But Muller has apparently not been able to marshal a single mental health expert willing to opine that treatment could ever make him less dangerous.

In any event, the author of the letter has a poor record of assessing Muller's future dangerousness. In 2009, Muller attacked two women, one of whom was a graduate student who the previous year had attended one of his Harvard human rights seminars. PSR ¶ 88; Palo Alto Police Department Report 09-5866 at 18, Bates Stamp MDM_05734. In 2011, the same author wrote to the California Bar's moral character examiners and said of Muller, "I can think of no reason why he should be denied bar admission due to his health. I recommend him for admission to the bar with the highest enthusiasm." *See* Exh. 1. The PSR reflects what happens after that.

If the Court is interested on lay opinion about Muller's mental health and the prospects for his treatment, Aaron Quinn's opinion is just as valid: "This is a man who wants to torture and rape people. He will be dangerous for the rest of his life[.]" PSR ¶ 60.

Dated: March 14, 2017

Respectfully submitted,
PHILLIP A. TALBERT
United States Attorney

By: /s/ MATTHEW D. SEGAL
MATTHEW D. SEGAL
HEIKO P. COPPOLA
Assistant United States Attorney

U.S. RESPONSE TO OBJECTIONS           3