

# HARVARD IMMIGRATION AND REFUGEE CLINICAL PROGRAM
## of HARVARD LAW SCHOOL

1563 Massachusetts Avenue • Pound Hall 408 • Cambridge, Massachusetts 02138 • Voice: 617.495.5912 • Fax: 617.495.9393

April 7, 2011

**Re: Recommendation of Matthew Muller for California Bar Admission**

To Whom It May Concern:

I am a Clinical Professor of Law and Director of the Harvard Law School Immigration and Refugee Clinical Program. I have taught Harvard Law School students both in the classroom and in the clinical setting for over twenty-five years. On a campus filled with outstanding students and scholars, Matthew stood out. He is among the top law students and young lawyers with whom I have had the pleasure of working in over 25 years of teaching and directing this program.

I first came to know Matthew in 2003, while he was a student at Harvard Law School. He was eager to study immigration law and approached me to find out whether he could audit my asylum law course as a "1L." Matthew eventually became my research and teaching assistant, and spent many working on immigration litigation, legislation and agency policy-making. Matthew is the only HLS student of whom I know who satisfied his law school written work requirement by authoring a Supreme Court brief in a major asylum case.

Following his graduation, Matthew became a Clinical Teaching and Advocacy Fellow at Harvard. Matthew's duties included co-teaching law classes, co-supervising students in immigration casework, and engaging in various advocacy and programmatic activities. As you may know, law students and law graduates are allowed to practice before the immigration agencies so long as they are supervised and do not receive remuneration *from the client* (all Clinic clients were represented on a pro bono basis). All of Matthew's casework was supervised by licensed attorneys, and appellate briefs on which he worked were submitted in those attorneys' names.

Matthew excelled during his employment at Harvard. His casework and scholarship helped the Clinical Program move U.S. asylum law forward in several respects, including increasing recognition of gender-related asylum claims, helping to conform U.S. asylum standards to international norms, and ameliorating the impact of post-9/11 legislation on bona fide refugees. Matthew did the major research and drafting of multiple Supreme Court and Circuit Court briefs, and he was co-author of several scholarly articles. He assisted with the briefing and presentation of an international case before the Inter-American Commission on Human Rights. I can say of Matthew something that few attorneys can claim—that his casework and advocacy have helped avert a significant amount of human misery and possibly even saved lives.

In view of his accomplishments, Matthew was voted onto the Harvard Law School faculty as a Lecturer on Law. He assumed joint leadership of the Harvard Immigration and Refugee Clinical Program while I was on sabbatical. In addition to his successful management of the Clinic, Matthew received top ratings from students in course reviews and also continued his advocacy activities. During this time, he was the co-author of a Supreme Court brief in a significant asylum law case.

We were sorry to see Matthew leave Harvard to rejoin his wife in California. Of the many positive characteristics we might have listed on Matthew's departure plaque, we chose the following citation:

*In Recognition and Appreciation of Matthew Muller*

MDM_08836

*For His Integrity and Extraordinary Commitment to the
Immigrant Community and Students of Harvard Law School*

In my opinion, Matthew's moral character and fitness to practice law are beyond question.

**Matthew's Mental Health**

Last year, Matthew confided in me that he suffered from bipolar illness, and had dealt with the symptoms throughout his time at Harvard. I certainly would not have known it. I had always been impressed by Matthew's equanimity, his attention to detail and unwavering commitment to (and consistent top performance for) his clients.

I can think of no more psychologically and emotionally demanding legal practice than that of asylum law. The stakes are extraordinary. At best, clients are threatened with forcible banishment and often family separation. At worst, they face grave human rights abuses, torture, and potentially death. Many clients have already suffered unthinkable trauma. Given that asylum advocates must work so intimately with refugees, the phenomenon of secondary trauma—in which the strong emotions and experiences involved in a representation also affect the advocate—is well known in the field. In my experience, students and attorneys are often overwhelmed by the intensity of the work. Matthew, however, was consistently steadfast. He was never deterred, despite the particular difficulties in any given case. Matthew did a superb job irrespective of the challenges and the extraordinary volume of work he took on. Matthew was always available and always composed whether he was dealing with a traumatized client, or working with me on design of our program or pedagogy. Matthew had an amazing ability to listen to others and hear other perspectives, without judgment. He was the best of colleagues.

Considering that Matthew succeeded in so demanding an environment, I can think of no reason why he should be denied bar admission due to his health. I recommend him for admission to the California bar with the highest enthusiasm. Should you have any remaining uncertainty concerning Matthew's fitness to practice law, please do not hesitate to contact me on my mobile at (617) 584-2974, or at danker@law.harvard.edu.

Sincerely,

Deborah Anker
Clinical Professor of Law
Director, Harvard Immigration and Refugee Clinical Program

MDM_08837