

FILED

APR 0 9 2018

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

AO 243 (Rev. 01/15)

## MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

| United States District Court | District **Eastern District of California** | |
|---|---|---|
| Name *(under which you were convicted)* **Matthew D. Muller** | | Docket or Case No.: **2:15CR00205-01** |
| Place of Confinement: **USP Tucson, P.O. Box 24550, Tucson, AZ 85734** | | Prisoner No.: **72875-097** |
| UNITED STATES OF AMERICA | | Movant *(include name under which convicted)* |
| | V.    **Matthew D. Muller** | |

## MOTION

1. (a) Name and location of court which entered the judgment of conviction you are challenging:
**United States District Court for the Eastern District of California**
**Robert T. Matsui U.S. Courthouse**
**501 I Street, Room 4-200**
**Sacramento, CA 95814**

   (b) Criminal docket or case number (if you know):   **2:15CR00205-01**

2. (a) Date of the judgment of conviction (if you know): _____ **2016**

   (b) Date of sentencing: **March 16, 2017**

3. Length of sentence: **480 months imprisonment, 60 months supervised release**

4. Nature of crime (all counts):

   **Count 1: Kidnapping, in violation of 18 U.S.C. § 1201(a)(1)**

5. (a) What was your plea? (Check one)
   (1) Not guilty ☐     (2) Guilty ☒     (3) Nolo contendere (no contest) ☐

   (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or what did you plead guilty to and what did you plead not guilty to?

   **No other counts in indictment.**

6. If you went to trial, what kind of trial did you have? (Check one)     Jury ☐     Judge only ☐
   **No trial.**

7. Did you testify at a pretrial hearing, trial, or post-trial hearing?     Yes ☐     No ☒

8. Did you appeal from the judgment of conviction?     Yes ☐     No ☒

9.   If you did appeal, answer the following:  No appeal.

     (a)  Name of court: _____

     (b)  Docket or case number (if you know): _____

     (c)  Result: _____

     (d)  Date of result (if you know): _____

     (e)  Citation to the case (if you know): _____

     (f)  Grounds raised:

     (g) Did you file a petition for certiorari in the United States Supreme Court?   Yes ☐   No ☒

          If "Yes," answer the following:

          (1)  Docket or case number (if you know): _____

          (2)  Result: _____

          (3)  Date of result (if you know): _____

          (4)  Citation to the case (if you know): _____

          (5)  Grounds raised:

10.  Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications,
     concerning this judgment of conviction in any court?
     Yes ☐   No ☒   No filings ~~other than a motion to seal filed~~
                    ~~concurrently with this motion.~~

11.  If your answer to Question 10 was "Yes," give the following information:

     (a)  (1)  Name of court: _____

          (2)  Docket or case number (if you know): _____

          (3)  Date of filing (if you know): _____

          (4)  Nature of the proceeding: _____

          (5)  Grounds raised: _____

AO 243 (Rev. 01/15)

No other filings pertaining to this matter.

    (6)  Did you receive a hearing where evidence was given on your motion, petition, or application?

        Yes ☐    No ☐

    (7)  Result: _____

    (8)  Date of result (if you know): _____

(b) If you filed any second motion, petition, or application, give the same information:

    (1)  Name of court: _____

    (2)  Docket of case number (if you know): _____

    (3)  Date of filing (if you know): _____

    (4)  Nature of the proceeding: _____

    (5)  Grounds raised:

    (6)  Did you receive a hearing where evidence was given on your motion, petition, or application?

        Yes ☐    No ☐

    (7)  Result: _____

    (8)  Date of result (if you know): _____

(c) Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

    (1)  First petition:    Yes ☐    No ☐

    (2)  Second petition:    Yes ☐    No ☐

(d) If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not:

12.  For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

AO 243 (Rev. 01/15)                                                                                                   Page 5

**GROUND ONE:**   Please see concurrently filed Supplement to Motion to Vacate, Set Aside or Correct Sentence, which is hereby incorporated by reference.

    (a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

 

**(b) Direct Appeal of Ground One:**   No direct appeal was taken.

    (1)  If you appealed from the judgment of conviction, did you raise this issue?

        Yes ☐          No ☐

    (2)  If you did not raise this issue in your direct appeal, explain why:

 

**(c) Post-Conviction Proceedings:**   No other post-conviction proceedings.

    (1)  Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ☐          No ☐

    (2)  If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

 

    (3)  Did you receive a hearing on your motion, petition, or application?

        Yes ☐          No ☐

    (4)  Did you appeal from the denial of your motion, petition, or application?

        Yes ☐          No ☐

    (5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

        Yes ☐          No ☐

AO 243 (Rev. 01/15)                                                                                                                    Page 6

(6)   If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know):   _____

Date of the court's decision:   _____

Result (attach a copy of the court's opinion or order, if available):

_____

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this

issue:

_____

**GROUND TWO:**   Please see concurrently filed Supplement to Motion to Vacate,
                   Set Aside or Correct Sentence.

(a)   Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

(b)   **Direct Appeal of Ground Two:**

(1)   If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐         No ☐

(2)   If you did not raise this issue in your direct appeal, explain why:

(c)   **Post-Conviction Proceedings:**

(1)   Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐         No ☐

(2)   If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(3)   Did you receive a hearing on your motion, petition, or application?

      Yes ☐     No ☐

(4)   Did you appeal from the denial of your motion, petition, or application?

      Yes ☐     No ☐

(5)   If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

      Yes ☐     No ☐

(6)   If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

 

**GROUND THREE:**  Please see concurrently filed Supplement to Motion to Vacate, Set Aside or Correct Sentence.

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

(b) **Direct Appeal of Ground Three:**

   (1)  If you appealed from the judgment of conviction, did you raise this issue?

       Yes ☐     No ☐

   (2)  If you did not raise this issue in your direct appeal, explain why:

(c) **Post-Conviction Proceedings:**

   (1)  Did you raise this issue in any post-conviction motion, petition, or application?

       Yes ☐     No ☐

   (2)  If you answer to Question (c)(1) is "Yes," state:

     Type of motion or petition:

     Name and location of the court where the motion or petition was filed:

     Docket or case number (if you know):

     Date of the court's decision:

     Result (attach a copy of the court's opinion or order, if available):

   (3)  Did you receive a hearing on your motion, petition, or application?

       Yes ☐     No ☐

   (4)  Did you appeal from the denial of your motion, petition, or application?

       Yes ☐     No ☐

   (5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

       Yes ☐     No ☐

   (6)  If your answer to Question (c)(4) is "Yes," state:

     Name and location of the court where the appeal was filed:

     Docket or case number (if you know):

     Date of the court's decision:

     Result (attach a copy of the court's opinion or order, if available):

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND FOUR:**   Please see concurrently filed Supplement to Motion to Vacate, Set Aside or Correct Sentence.

(a)   Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

(b)   **Direct Appeal of Ground Four:**

(1)   If you appealed from the judgment of conviction, did you raise this issue?

Yes [ ]        No [ ]

(2)   If you did not raise this issue in your direct appeal, explain why:

(c)   **Post-Conviction Proceedings:**

(1)   Did you raise this issue in any post-conviction motion, petition, or application?

Yes [ ]        No [ ]

(2)   If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3)  Did you receive a hearing on your motion, petition, or application?

   Yes [ ]      No [ ]

(4)  Did you appeal from the denial of your motion, petition, or application?

   Yes [ ]      No [ ]

(5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

   Yes [ ]      No [ ]

(6)  If your answer to Question (c)(4) is "Yes," state:

   Name and location of the court where the appeal was filed:

   _____

   Docket or case number (if you know): _____

   Date of the court's decision: _____

   Result (attach a copy of the court's opinion or order, if available):

   _____

(7)  If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

   _____

13.  Is there any ground in this motion that you have not previously presented in some federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

All grounds relied upon in this motion are raised for the first time on collateral review.  The grounds presented herein were not raised earlier due to ineffective assistance of counsel, due to the Movant's severe mental health disability, due to concealment of circumstances giving rise to the grounds from Movant and for other reasons to be discussed further in a memorandum of law and/or in response to any claims of waiver, procedural default or noncognizability raised in response to this motion.

14.  Do you have any motion, petition, or appeal now pending (filed and not decided yet) in any court for the you are challenging?      Yes [ ]      No [X]

   If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.

15.  Give the name and address, if known, of each attorney who represented you in the following stages of the you are challenging:

(a)  At the preliminary hearing:

    Preliminary hearing ~~waived.~~ not held. MM

(b)  At the arraignment and plea:

    Thomas Johnson, 400 Capitol Mall, Suite 1620, Sacramento, California

(c)  At the trial:                                                              95814

    No trial.

(d)  At sentencing:

    Thomas Johnson, see address above.

(e)  On appeal:

    No appeal.

(f)  In any post-conviction proceeding:

    No other post-conviction proceeding.

(g)  On appeal from any ruling against you in a post-conviction proceeding:

    No appeal.

16.  Were you sentenced on more than one court of an indictment, or on more than one indictment, in the same court and at the same time?          Yes ☐          No ☒

17.  Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?          Yes ☐          No ☒

(a)  If so, give name and location of court that imposed the other sentence you will serve in the future:

    I do not have a future sentence to serve after my federal sentence. However, I do have an 11-year concurrent sentence from the Superior Court of California for the County of Alameda.

(b)  Give the date the other sentence was imposed:

(c)  Give the length of the other sentence:

(d)  Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?          Yes ☐          No ☒

18.  TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*

    This motion is timely filed under the "prison mailbox rule" set forth in Houston v. Lack, 487 U.S. 266 (1988) (holding that the petition of a pro se prisoner is timely filed on the day it is submitted to prison officials for mailing).

(Intentionally left blank.)

---

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:

A one-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of –

    (1)   the date on which the judgment of conviction became final;

    (2)   the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;

    (3)   the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    (4)   the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

AO 243 (Rev. 01/15)                                                                                                          Page 13

Therefore, movant asks that the Court grant the following relief:

Vacate the conviction and sentence and set aside Defendant/Movant's
plea of guilty in this matter.

or any other relief to which movant may be entitled.

_____
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Motion
under 28 U.S.C. § 2255 was placed in the prison mailing system on March 26, 2018 .
                                                                                                (month, date, year)

I further declare that the attached Supplement to Motion to Vacate,
Set Aside or Correct Sentence and supporting documentation were
submitted concurrently with this motion.

Executed (signed) on March 26, 2018 _____ (date)

_____
Signature of Movant
Matthew Muller
Pro Se

If the person signing is not movant, state relationship to movant and explain why movant is not signing this motion.

Matthew Muller
Reg. No. 72875-097
U.S. Penitentiary Tucson
P.O. Box 24550
Tucson, AZ 85734
Pro Se

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,          )    Crim. No. 2:15CR00205-01 (TLN)
            Plaintiff/Respondent,  )
                                   )    Civil No.
            v.                     )
                                   )    SUPPLEMENT TO MOTION TO
MATTHEW MULLER,                    )    VACATE, SET ASIDE OR
            Defendant/Movant.      )    CORRECT SENTENCE
                                   )
_____)

COMES NOW Defendant/Movant Matthew Muller ("Movant") and respectfully requests all relief appropriate under 28 U.S.C. § 2255 from his criminal conviction in this Court.

## INTRODUCTION

1.  This motion challenges Movant's 480-month sentence of imprisonment and 60-month term of supervised release, as well as the conviction and plea underlying this sentence. The judgment at issue was entered on March 16, 2018. See United States District Court, Eastern District of California, Case No. 2:15-cr-00205-TLN, Doc. 60.[1]

2.  Movant incorporates by reference the information and

_____

1. All further docket references in this motion will be to this case number in the Eastern District of California.

-1-

procedural history set forth in his concurrently filed Form Motion to Vacate, Set Aside or Correct Sentence (hereinafter "§2255 Form Motion"). The instant document will be referred to as the "§2255 Supplement" and the two documents collectively constitute Movant's "§2255 Motion."

3. Filed concurrently with the §2255 Motion are Movant's (1) Request to Seal Documents and supporting materials; (2) Motion to Proceed In Forma Pauperis and supporting documents; (3) Motion to Hold Matter In Abeyance For 60 Days and supporting materials; and (4) Motion for Transcripts.

4. As explained further in Movant's Motion to Hold Matter in Abeyance, Mr. Muller has been unable to obtain all documents needed to fully frame and support his §2255 Motion despite exercising due diligence in seeking those materials. Movant anticipates filing an amended §2255 Motion superseding and relating back to the current motion. Filing of the instant motion was necessary to preserve Mr. Muller's rights in light of the statutory filing deadline of 28 U.S.C. §2255.

**PARTIES**

5. Movant Matthew Daniel Muller is currently incarcerated at U.S. Penitentiary Tucson (Inmate No. 72875-097). He is serving a sentence imposed by this Court following a guilty plea to a single count of kidnapping in violation of 18 U.S.C. §1201(a)(1).

6. Plaintiff/Respondent United States of America ("Respondent") was represented in the underlying criminal matter by Matthew

-2-

Segal of the Sacramento United States Attorney's Office.

## JURISDICTION AND VENUE

7.   Jurisdiction and venue are proper in this Court under 28 U.S.C. §2255, as it is the court in which the underlying judgment of conviction was entered.

8.   Judgment against Mr. Muller was entered on March 16, 2017. The jdugment became final when the time for appeal expired on March 30, 2017. See Doc. 60; Fed. R. App. P. 4(b).  Movant submitted the instant motion to prison authorities for mailing on March 30, 2018 and it is deemed filed as of that date.  See Houston v. Lack, 487 U.S. 266 (1988) (petition of a pro se inmate is deemed filed the day it is given to prison authorities for mailing). Accordingly, this motion is timely filed under 28 U.S.C. §2255 and this Court has jurisdiction to proceed.

## PROCEDURAL HISTORY

9.   The relevant procedural history is set forth in the accompanying §2255 Form Motion.

## GROUNDS FOR RELIEF

### First Ground for Relief:
### Unlawful Warrantless Search of Cellular Phone

10.  Alameda County law enforcement officers effected a warrantless search of Movant's cellular phone in violation of the Fourth Amendment of the U.S. Constitution.

11.  The officers' interaction with the cellular phone's operating system and their manipulation and use of its touchscreen, display,

-3-

speakers, microphones, transmitted, antenna and calling functions amounted to a search for purposes of the Fourth Amendment Amendment.

12.   The phone was not abandoned by its owner and no reasonable law enforcement officer would believe under the circumstances that it had been intentionally abandoned by a suspect fleeing the scene of a burglary.

13.   By the time the warrantless search occurred, no exigent circumstances existed that were sufficient to justify a warrantless search.  Officers did not act with an actual belief that exigent circumstances required a warrantless search.  Rather, they were simply eager to begin their investigation into the burglary and did so without obtaining a warrant to search the phone.

14.   In addition to the above-described search, additional searches of the cellular phone, including review of its use and digital contents, were conducted by both California state and federal law enforcement officers well after any arguable exigency had dissipated.

15.   Any identifying information obtained in the warrantless searches of the cellular phone, as well as the other fruits of that search, would hav been suppressible in any criminal trial of Movant.  In particular, decisions to seek additional warrants relating to Movant's property and premises and/or decisions to seek additional electronic devices for search or to include them

-4-

in search warrants were "tainted fruit" of the earlier unlawful searches.  Evidence yielded by those tainted search warrants would have been suppressible as well.

### Second Ground for Relief:
### Illegal Seizure of Mr. Muller

16.  Movant incorporates all preceding paragraphs as if fully set forth herein.

17.  Alameda County law enforcement used unlawfully obtained information and evidence to secure an arrest warrant and search warrant for the person of Movant, used the same as probable cause justification for the search and seizure of Movant and did in fact seize and search Movant.

18.  These searches and seizures constitute tainted fruits of earlier unlawful acts by law enforcment.  Any information obtained or law enforcement action taken as a result of these searches and seizures would be suppressible in any criminal trial of Movant. So, too, would be any additional fruits flowing from these events, including but not limited to subsequently obtained evidence or law enforcment action taken.

### Third Ground for Relief:
### Defective Warrants in Search of South Lake Tahoe Property, Ford Mustang, E-Mail Accounts, Bank Accounts and Cellular Phone

19.  Movant incorporates all preceding paragraphs as if fully set forth herein.

20.  Alameda County law enforcement used a series of warrants

-5-

issued between June 8 and July 23, 2015, to seize and search the person and various property associated with Movant.   These warrants were defective in multiple regards.

21.   **First**, the warrants, the decision to seek the warrants and the information used to seek the warrants were the tainted fruit of prior unlawful searches and of other unlawful acts by police.

22.   Second, the warrants were insufficiently particularized with regard to the location and/or descriptions of the property to be searched and as to the evidence to be searched and/or seized.

23. **Third**, there was insufficient probable cause to support search and/or seizure of the items and properties listed.

24. <u>Fourth</u>, the warrant to search the South Lake Tahoe property was so broad as to be considered an unlawful general warrant.

25.   The above defects rose to such a leval that a reasonable law enforcement officer, knowing what the executing officers knew about the investigation and surrounding circumstances, could not have believed in good faith that the warrants were valid. In addition, several of the warrants used were invalid on their faces.

26.   Evidence obtained on the purported authority of the defective warrants would have been suppressible in any criminal trial of Movant.   In addition, any further law enforcement action taken and/or evidence obtained as a result of the above warrants would have been suppressible as tainted fruits of unlawful warrants.

### Fourth Ground for Relief:

### Search and Seizure in Excess of Scope of Warrants

27.  Movant incorporates all preceding paragraphs as if fully set forth herein.

28.  Law enforcement officers purporting to act on the authority of the warrants described above seized and/or searched items not described by the warrants, thereby exceeding their scope. These excessive searches and seizures include, but are not limited to, searches of electronic devices for evidence beyond that named in the warrant.  Movant was effectively subjected to an unlawful general, roving search of exactly the sort that the Fourth Amendment was intended to proscribe.

29.  Evidence seized and/or searched in excess of the authority of the above warrants would have been suppressible in any criminal trial of Movant.  So, too, would be any fur/ther evidence obtained or law enforcement action taken as a result of such illegally obtained evidence.

### Fifth Ground for Relief:

### Unlawful Warrantless Searches of Property Seized and of Private Accounts

30.  Movant incorporates all preceding paragraphs as if fully set forth herein.

31.  Law enforcement officers--including both California and federal authorities--illegally searched Movant's electronic devices, electronic media and other property without a warrant and prior to obtaining any proper authorization for doind so.

32.  Officers also searched Movant's e-mail and financial accounts

without a warrant and without obtaining any other proper authoriz-
ation to do so.

33.  Evidence obtained as a result of the above acts would be
suppressible in any criminal trial of Movant.  So, too, would
be any further evidence obtained or law enforcement action taken
as a result of such illegally obtained evidence, including but
not limited to decisions to seek further warrants relating to
Movant.

Sixth Ground for Relief:

Defective Federal Search Warrant

34.  Movant incorporates all preceding paragraphs as if fully
set forth herein.

35. Beginning by at least June 30, 2015, federal authorities
sought and obtained warrants purporting to authorize seizure
and/or search of items and premises owned by and/or associated
with Movant.  These warrants were illegal and defective in multiple
regards.

36.  First, the warrants, the decision to seek the warrants and
the information used to seek the warrants were tainted by prior
unlawful searches and seizures and by other illegal acts by law
enforcment authoirties.

37.  Second, there was insufficient probable cause to support
search and/or seizure of the properties and items described.

38.  Third, the warrants were issued as a result of knowing mis-
representations by the affiants and/or based on their statements

made in reckless disregard of the truth.

39. Fourth, the warrants were insufficiently particularized as to the items or premises to be searched and the evidence to be seized and/or searched.

40. The above defects rose to such a level that a reasonable law enforcement officer, knowing what the executing officers and agents knew about the investigation and surrounding circumstances, could not have believed in good faith that the warrants were valid.

41. Evidence obtained on the purported authority of the above warrants would be suppressible in any criminal trial of Movant. So, too, would be any further evidence obtained or law enforcement action taken as a result of such illegally obtained evidence.

### Seventh Ground for Relief:
### Unlawful Full Shackling of Movant During Court Appearances

42. Movant incorporates all preceding paragraphs as if fully set forth herein.

43. Movant was shackled in full restraints for all court appearances. Mr. Muller was nonviolent and cooperative when first taken into custody by police in June of 2015. he had been in custody over four months with no incident or disciplinary issues and had made several previous court appearances with no or only partial restraints. Movant was fully complying with his prescribed psychiatric treatment and was sedated with an antipsychotic drug for all court appearances. Nevertheless, the Court ordered that Movant remain fully shackled throughout all courtroom appearances.

-9-

44.   Movant suffered actual prejudice as a result of his shackling.
The full shackling added to Movant's mental distress during court
proceedings.   The shackling was unecessary for courtroom security
and instead acted to shame and impugn Movant in front of his
family, a large media presence and other courtroom observers.
Together with Movant's poor state of mental health, the shackling
caused Movant to seek to avoid appearing in Court and to ask
that a waiver of his appearance be filed.   This in turn caused
Movant to be less aware of developments in his case.

45.   In addition, the prosecution improperly sought to portray
Movant--who had a perfect record of total compliance with all
rules and orders while in custody and who was flanked by multiple
armed U.S. Marshals--as a present danger to persons present in
the courtroom, making such comments as "look at him, he's huge."
Movant was not allowed to take notes during most proceedings,
and had his right hand freed only as needed for the Court to
swear him in.

### Eighth Ground for Relief:
### No Preliminary Hearing

46.   Movant incorporates all preceding paragraphs as if fully
set forth herein.

47.   Although the Court set a date for a preliminary hearing
in Movant's case, that hearing date was vacated after the Respon-
ondent was able to secure an indictment against Movant.

48.   The preliminary hearing provided by Rule 5 is intended to

-10-

serve as a forum for determining probable cause, but is also an important means of discovery for the accused, such that the need for a preliminary exam is not eliminated by the return of an indictment.

49.  It was a violation of Movant's constitutional rights under the Due Process and Equal Protection clauses to deny him a preliminary hearing simply because the Respondent happened to control when Movant entered its custody and was able to obtain an indictment before Movant's scheduled preliminary hearing.

50.  Movant suffered actual prejudice from the denial of a preliminary hearing, including but not limited to loss of the opportunity to discover <u>Brady</u> material, <u>Giglio</u> material and other exculpatory, impeaching or relevant evidence in possession of Respondent that he did not receive in regular discovery.

<u>Ninth Ground for Relief:</u>

<u>Kidnapping Statute Unconstitutional As Applied<br>And/Or Factual Basis of Plea Does Not Satisfy Offense Elements</u>

51.  Movant incorporates all preceding paragraphs as if fully set forth herein.

52.  The statute under which Movant was convicted provides for federal jurisdiction if any means, facility or instrumentality of interstate or foreign commerce is used during the offense. Given the broad and permissive interpretation this language appeared to receive in Movant's case, the statute would exceed Congress's authority under the Commerce Clause.

53.  Alternatively, given a narrower construction to avoid uncon-

stitutionality, the jurisdictional element of the kidnapping
offense would not be satisfied by the alleged conduct to which
Movant stipulated in the factual basis for his plea.

### Tenth Ground for Relief:

#### Unlawful Seizure of Movant's
#### Attorney-Client Privileged Legal Materials

54.  In September, 2015, agents or the Federal Bureau of Investig-
ations ("FBI") took custody of Movant from the Alameda County
Sheriff's Department.  At the time he was picked up from Alameda
County, Movant had on his person a folder prominently marked
"Legal Materials: Confidential and Attorney-Client Privileged."
The folder contained strategic notes about Movant's case, draft
legal documents, letters from Movant's attorney to Movant and
draft letters to be sent to Movant's attorney.

55.  The FBI agents took this folder from Movant and placed it
in the trunk of the vehicle used to transport him.  After arriving
at Sacramento County Jail, Movant asked the FBI agents for his
folder.  The FBI agents advised that he could not have the folder
back.  Movant advised the agents that the folder contained confid-
ential and privileged legal documents and that he should be allowed
to retain it.  On of the FBI agents then promised that he would
deliver the folder to Movant's attorney.  Movant requested a prop-
erty receipt for the envelope and the agents told him that they
did not have anything to write one with.  They reassured him again
that the folder would be delivered to his attorney.

56.  Movant followed up with his attorney multiple times concerning

-12-

the folder. As of the last time he remembers asking about it in December of 2015, it still had not beed delivered to Movant's attorney.

## Eleventh Ground for Relief:
### Prosecutorial Misconduct

57. Movant incorporates all preceding paragraphs as if fully set forth herein .

58. Movant submits that he was prejudiced by multiple instances of prosecutorial misconduct, including but not limited to those listed below.

59. The prosecution failed to produce relevant <u>Brady</u> and <u>Giglio</u> material during discovery. In particular, the prosecution failed to produce evidence relating to the alleged victims concerning the multiple conflicting accounts they gave of the crimes alleged, evidence of their motive to misrepresent facts concerning the alleged crimes and derogatory investigatory materials on the alleged victims tending to impugn their credibility as prosecution witnesses.

60. The prosecution also failed to produce other relevant evidence during discovery, including communications and investigatory records indicating the Movant's electronic devices and other records had been searched and examined by authorities in advance of obtaining any warrants or other authorization.

61. The prosecution made statements about Movant to the Court and to the public that it knew to be false, and/or made such

-13-

statements in reckless disregard of their falsity and/or made such statements while in possession of evidence and records clearly indicating the statements were false and while having a responsibility to reasonably investigate said evidence and records prior to making the false claims.

62. The prosecution failed to make a full and truthful disclosure of investigatory sources they relief upon in developing their case against Mr. Muller.  While they purported to have obtained information from a particular source such as pursuant to a lawful search, in fact they had received it first from a different source and/or under circumstances that could make the information suppressible or that could lead Movant to discover information unfavorable to the prosecution's case.

63. The prosecution reviewed confidential and privileged legal papers unlawfully seized from Movant's person when FBI agents assumed custody of Movant.  The prosecution failed to return the papers to Movant's attorney or to notify Movant's attorney that the papers had come into their possession.

64. The prosecution engaged in inappropriate contacts and activities calculated to impugn Movant and to harm his interests and ability to defend against criminal charges.  This conduct includes but is not limited to communications with Movant's ex-spouse and/or her attorneys providing information to help her in a civil action to terminate her spousal support obligations to Movant.  Movant's former spouse was successful in her action as a result, diminishing the financial resources available to Movant to mount his

-14-

criminal defense.

## Twelfth Ground for Relief:
## Ineffective Assistance of Counsel

65. Movant incorporates all preceding paragraphs as if fully
set forth herein.

66. As explained more fully in his concurrently filed Motion
to Hold Matter in Abeyance, Movant has been required to file the
instant motion before completing a full investigation of the circum-
stances surrounding his attorney's representation of him.   The
following averments are based on current information and belief
and will likely be amended in a superseding motion relating back
to this pleading.

67. Movant's counsel failed to sufficiently investigate both
his then-present and past mental health.   Counsel was aware that
Movant had a history that included severe depression, suicide
attempts, psychosis, delusions, hallucinations, mania, anxiety
and other mental health symptoms.   He was further aware that at
several points in his history, Movant had to all appearances seemed
mentally well but in fact had been suffering severe symptoms that
precipitated a major breakdown.   Counsel was aware that Movant
had been placed on extended suicide watch at the Alameda County
Jail, and that while in Alameda County custody had been committed
for a time to an inpatient mental health crisis center.   Counsel
was also aware that before entering federal custody, Movant had
suffered an in-court panic attack during his plea hearing and

-15-

had lost consciousness, requiring emergency medical care to stabil-
ize him.  Counsel was further aware that Movant was taking multiple
psychotropic medications.  He was aware that Movant had taken actions
inconsistent with his own best interests while in custody.  Movant
had reported suffering ongoing episodic symptoms of psychosis
while in custody, including a belief that Alameda County Jail
personnel were replacing his medications with placebos as part
of an experiment.

68.  Despite being aware of the foregoing circumstances, Movant's
counsel did not seek a competency hearing for Movant or arrange
for him to meet with an appropriate expert for a competency eval-
uation.

69.  Movant's counsel failed to make sufficient efforts to obtain
all of Movant's relevant psychological and psychiatric records
in preparation for a planned insanity defense.  Movant provided
counsel with detailed information about his mental health history
and treatment records.  However, counsel did not make sufficient
efforts to secure the needed records.

70.  Movant informed counsel of numerous electronic records and
items of evidence that would corroborate a planned insanity defense.
Counsel failed to follow up on these leads or to investigate and
obtain the relevant evidence.

71.  Movant's counsel consistently advised up until September
of 2015 that he was planning and preparing a mental health defense.
Counsel reassured Movant that progress was being made on his case

-16-

and that counsel was looking for the best expert witness.   In
Septermber of 2015, Movant's counsel called a meeting with him
and advised him that he just did not see the grounds for a success-
ful insanity defense.   He stated that Movant's alleged conduct
had "just been too organized" to support an insanity defense.
Movant's attorney counseled that the best thing for him to do
would be to accept a plea offer, and that he had negotiated a
recommended sentence of forty years with the prosecution.   Movant's
attorney opined that this was the best offer Movant would get
and that while it was a large amount of time, it at least avoided
a life sentence, which is what counsel advised Movant he would
receive if he took the matter to trial.   In reliance on counsel's
advice and representations, Movant agreed to the plea deal.

72.   Movant later learned that unknown to him, his attorney had
missed a key deadline by which to notify opposing counsel of his
intention to mount an insanity defense.   The prosecution had accord-
ingly moved to exclude any defense of insanity, and a hearing
had been set on the motion.   Movant does not recall being advised
of this motion, nor do Movant's parents, who communicated closely
with Movant's counsel concerning developments in the case.   In
addition, when Movant's counsel sent him a copy of his case file
that counsel stated contained all documents filed by either party
with the court, the prosecution's motion to exclude a defense
of insanity was omitted.

73   Movant's attorney at this point moved quickly to conclude a
plea agreement and set a change of plea hearing.   Movant entered

-17-

a plea of guilty at a hearing, and Movant's counsel thereby avoided
responding to the prosecution motion to exclude a defense of
insanity.

74. Movant submits that his attorney's recommendation to plead
guilty was unduly influenced by the prospect of having to explain
to Movant, to Movant's parents and to the court why he had failed
in the course of over a year to secure a psychological examination
of Movant and to take other steps to research, assess and prepare
a mental defense. He had consistently advised his client and
his client's family that this was the planned strategy for the
case, up until the time that the prosecution filed its motion
to exclude an insanity defense. Movant submits that counsel's
advice was not in keeping with the best interests of his client,
and that it caused his client to accept a plea agreement and
plead guilty when he would not have done so had he received
effective legal advice.

75. Although Movant's attorney had not obtained a psychological
examination of Movant to assess his competency or to assess the
vioability of an insanity defense, he later advised Movant and
his family that it would be important to do so for purposes of
sentencing. Movant's counsel requested a continuance of sentencing,
specifically citing the need to obtain a psychological examination
of Movant.

76. Movant's family paid what was for it a large sum of money
to retain an expert witness, who examined Movant. Following

-18-

severak hours of meetings and various written assessments and
mental health inventories completed by Movant, the expert produced
a draft report.   The report was based on those meetings and exams,
on Movant's psychiatric records, and on case and discovery materials
reviewed by the expert, including the presentence report.   The
expert report concluded that the Movant's alleged conduct was
clearly caused by serious mental illness, and that it was highly
unlikely he would ever have engaged in such alleged conduct but
for that illness.   Upon reviewing the report with Movant, Movant's
attorney opined that the expert report was in effect <u>too</u> good,
and too absolving of Movant's criminal responsibility.   He expressed
concern that it was dissonant with the overall message of Movant
accepting criminal responsibility for the alleged conduct.   He
asked the expert to revise the report and "tone down" such language
as a passage stating that Movant had suffered greatly and was
himself a victim in the case.

77. Ultimately, Movant's counsel decided no to submit the expert
report at all.   Movant's attorney advised that the report showed
Movant was so mentally ill that the judge might actually decide
to impose a longer sentence to prevent Movant from being a danger
to the public.   Movant's counsel stated that although such a
report might be helpful in the criminal liability phase of a
case, it could end up hurting Movant at sentencing.   Movant once
again deferred to his attorney's advise.   Movant submits that
his attorney's advice may have been a bona fide strategic choice.
However, the choice not to submit an expert report absolving

Movant due to his mental illness was also consistent with a
possible concern by Movant's attorney that it would raise questions
why he had not obtained such an expert report in the first place
and why he had counseled against an insanity defense.

78. In their sentencing memorandum and at the sentencing hearing,
prosecution attorneys mentioned several times that Movant's counsel
had requested a continuance specifically to obtain a psychological
examination of Movant, but that Movant had chosen not to submit
any expert evidence.  The implication was that there must be
nothing wrong with Movant's mental health that would bear on
his criminal responsibility, or he would have produced expert
evidence shoing it.  Accordingly, the prosecution argued Movant
should be held fully responsible for his conduct and that there
was no reliable evidence of mitigating mental health circumstances.

79. Slightly less than a year after sentencing in this matter,
Movant's counsel,held a meeting with Movant concerning the pending
charges filed by Solano County related to the alleged conduct
in this case.  Movant and his family were assessing whetherh
to hire Movant's counsel to represent him in the Solano matter.
Movant's counsel stated at this meeting that he believed Movant
had a strong mental defense, and that he could overcome most
or all of the charges Solano County was bringing against him..

80. Since pleading guilty, Movant has conducted research into
both the law and the psychiatry relating to a not guilty by reason
of insanity plea.  Many of his psychiatric symptoms have gone
into remission or become better-controlled by medication, allowing

-20-

Movant more accurate insight into his current and past mental
states.  Based upon his research and knowledge of relevant facts
and available evidence and means of proving the same, Movant
has determined he would have a very strong insanity defense to
the charge in this case.  Had he and/or his family (who were
acting as Movant's de facto guardian    ad litem) known of the
strenth of this legal defense, Movant never would have pleaded
guilty under the terms of the plea agreement in this matter.
Movant and his family would have insisted on going to trial or
would have accepted only a plea agreement on much better terms
than those offered.

81. Movant submits that his attorney also failed tot ake steps
to assert applicable rights and obtain appropriate remedies in
connection with all previously asserted grounds for relief in
this motion, except grounds one and seven.  For example, Movant's
attorney failed to investigate and obtain evidence of authorities'
warrantless searches of his electronic devices (other than the
first warrantless search by Dublin Police Services) and to file
motions to suppress relating to these unlawful searches.

82. Although Movant was indigent, Movant's counsel failed to
advise him of the existence of and his eligibility for government-
funded experts and investigators in his case, pursuant to 18
U.S.C. §3006(a).  Movant was of the belief that any experts or
investigators used in his case would necessarily have to be paid
for by his family.  Movant repeatedly expressed to his attorney
that he felt deeply guilty and ashamed that his family had to

pay for his legal defense.  Movant agreed that he should be examined
by a forensic psychological expert, but expressed concern over
the cost when his attorney suggested retaining a cellular phone
expert to testify in relation to Movant's motion to suppress.
Had he known it was possible to obtain litigation expenses through
public funds, Movant would have insisted on expert testimony
in case.  This particularly would have included a computer forensics
expert to investigate and prove that authorities had access various
electronic devices of Movant before obtaining proper authorization
to do so.  This analysis in turn would have been the basis of
motions to suppress key evidence in Movant's case.

83. On information and belief, Movant's counsel failed to timely
communicate to him a plea offer more favorable than that ultimately
accepted by the Movant.  The prosecution offered a plea agreement
in which it would recommend a sentence of 32 years and also include
and bind the Solano County Ditrict Attorney's Office in the same
agreement not to bring any charges against Movant (though it
was unclear whether this latter term had been finalized).  By
the time this offer was communicated to Movant, it had been withdrawn
by prosecutors.  Based on the fact that he ultimately accepted
a plea agreement under less favorable terms, Movant submits that
he would have accepted the better plea agreement had it been
timely communicated to him by counsel.

84. Movant's counsel failed to object to statements in the presen-
tence report that were inaccurate.  When reviewing the draft
report, Movant expressed to counsel that various facts were incorrect.
His attorney stated that he could raise those matters in his

objections, but that ultimately it would be up to the probation officer what to include in her report.  Upon reviewing objections his attorney submitted to the probation officer, Movant saw that some of the matters he had discussed with his attorney were raised and some were not.  The omitted matters were not raised in objections to the final presentence report.

### Thirteenth Ground for Relief:
### Plea Agreement and Plea Not Knowing, Intelligent and Voluntary

85. Movant incorporates all preceding paragraphs as if fully set forth herein.

86. At the time he pleaded guilty, Movant was suffering a severe depressive episode, including suicidal ideation with specific plans to take his own life, anxiety attacks, sleep disturbances and pervasive thoughts of guilt, of hopelessness, of pointlessness and of no future, among other psychiatric symptoms.  Movant's poor mental health was exacerbated by being locked down in solitary confinement for the preceding year an average of 23.6 hours a day, with no more than four periods of recreation in an enclosed area during that full year.

87. At the time of the plea, the Court ascertained a partial report of Movant's symptoms and the medications he was taking to address them.  The Court did not rely upon the Movant's medical records or any expert report on his psychological health.  Instead, it relied upon Movant's own self-report of his symptoms and his subjective perception and beliefs about whether he was competent to plead guilty.  The questioning of Movant relied upon an incorrect assumption that Movant had full insight into his own mental health

-23-

and the effects of multiple psychotropic medications he was taking.
The Court further assumed that Movant would be willing to fully
disclose the nature and effect of acute psychiatric symptoms--
symptoms most patients would find highly personal and embarassing--
in open court and in front of a large local and national media
presence.

88. Movant submits that due to the above symptoms and circumstances,
his guilty plea was not knowing, intelligent and voluntary.

89. Movant's guilty plea was also strongly influenced by the
ineffective assistance of counsel alleged under the previous
ground.  As a result of counsel's poor performance, Movant entered
the plea bargain process in a far worse position than he would
have had he received adequate representation.  Had he been in
this better bargaining position and been aware of all relevant .
factual and legal circumstances, Movant would not have pleaded
guilty.

90. In addition, whether or not Movant's psychiatric illness
rendered him incompetent to plead guilty, it did interact with
other factors in his case to deprive him of protections and rights
to which he was entitled under the Constitution and U.S. statutes,
including but not limited to the Rehabilitation and Americans
With Disabilities Acts.  For example, Movant was especially
susceptible to accepting erroneous legal advice from his attorney
due to his compromised mental state.  Although he had been previously
licensed to practice law, Movant conducted no legal research of

his own while incarcerated at the Sacramento County Jail. By contrast, during a period of temporarily improved mental health while in custody in Alameda County--before Movant had lapsed into a depressive episode--Movant requested multiple legal materials from his attorney concerning his state charges and sent his attorney a detailed legal memorandum to assist his attorney in filing a pretrial motion.

### Fourteenth Ground for Relief:

### Sentence Enhanced Based on Facts
### Not Admitted or Found by a Jury Beyond a Reasonable Doubt

91. Movant incorporates all preceding paragraphs as if fully set forth herein.

92. Movant submits that his sentence was enhanced based upon alleged facts and conduct that was not admitted in the factual basis of his plea agreement, nor found beyond a reasonable doubt by a jury. Movant submits that such enhancements are in effect an end-run around his fundamental trial rights and amounted to punishment for crimes with which Movant was never charged or tried.

93. Movant submits that all enhancements applied to him that were not necessarily part of an essential element of the charged offense were imposed in violation of Movant's constitutional rights under the Fifth and Sixth Amendments.

//
//
//

## CONCLUSION

WHEREFORE Movant respectfully requests that the Court:

(1) Vacate his conviction and sentence in this matter;

(2) Set aside Movant's guilty plea and all purported waivers of trial rights by Movant;

(3) Order Respondent to preserve all evidence relating to the Movant's claims herein; and

(4) Grant such other relief as the Court deems appropriate.

Respectfully submitted this thirtieth day of March, 2018.

Signed:

Matthew Muller
Pro Se