UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Respondent,<br><br>v.<br><br>MATTHEW MULLER,<br><br>Movant. | No. 2:15-cr-0205-TLN-EFB P<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

Matthew Muller is a federal prisoner proceeding without counsel with this motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. As an initial matter, the court must screen the motion under Rule 4 of the Rules Governing Section 2255 Proceedings in the District Courts. The court has done so and for the reasons that follow, several grounds raised by Muller must be dismissed. He may proceed, however, on his claims that his plea was not knowing and voluntary and that his counsel was ineffective in advising him to accept the plea agreement.

**I.      Background**

On September 29, 2016, pursuant to a plea agreement, Muller pleaded guilty to kidnapping, in violation of 18 U.S.C. § 1201. ECF No. 43 at 1. The plea agreement contained the following "Factual Basis for [his] Plea":

> Automobiles, the Interstate Highway System, the U.S. Highway System, mobile telephones, the Internet, and the Global Positioning System (GPS) of earth-orbiting satellites are all facilities and instrumentalities of interstate commerce.

1

Between 3:00 a.m. and 5:00 a.m. on March 23, 2015, on Mare Island in Vallejo, California, the defendant broke into the home occupied by Aaron Quinn and Denise Huskins ("the Victims"). Muller used a modified water pistol to simulate a lighted firearm. He also had an electric stun gun. Muller used those devices to intimidate the Victims and ordered them to lie still while he used zip ties to bind them. He placed blacked-out swim goggles on their eyes. He made each Victim drink a liquid soporific. Defendant used headphones to play the Victims a message warning against resistance. The recording warned that in the event of noncompliance, Huskins would be hurt by electric shock or the cutting of her face. The defendant collected information from Quinn about his various financial and Internet accounts. The Victims thought that they overheard multiple voices whispering.

Muller forced Huskins to get into the trunk of Quinn's Toyota Camry, which he used to move her to a stolen Ford Mustang. Muller then put Huskins in the Mustang and drove her to his residence in South Lake Tahoe. From Vallejo, the most direct route to South Lake Tahoe requires use of Interstate 80, part of the Interstate Highway System, and U.S. Route 50, part of the U.S. Highway System. Muller then held Huskins at his South Lake Tahoe residence. At times, she was secured to a bed with a zip tie. When Muller was in the room with her, she was blindfolded on his command.

While Muller was in South Lake Tahoe confining Huskins, Muller used a TracPhone to call Quinn's phone. The defendant also used the Internet to send emails from Quinn's email account back to Quinn. The emails demanded from Quinn, as ransom to release Huskins, two separate payments of $8,500, each to come from different accounts that Quinn held at separate FDIC-insured financial institutions.

On March 24, 2015, the defendant, purporting to represent a group of kidnappers, sent an email from one of Quinn's email accounts to a reporter for the *San Francisco Chronicle*. It stated that Huskins would be returned, and "We will send a link to her location after she has been dropped off. She will be in good health and safe while she waits. Any advance on us or our associates will create a dangerous situation for Denise. Wait until she is recovered and then proceed how you will. We will be ready." The email attached a link to a "proof of life" audio file in which Huskins said she was alright. No ransom was ever paid.

On March 25, 2015, the defendant put Huskins in the Mustang and used the car's Global Positioning System to navigate to a location in Huntington Beach, where he dropped off Huskins at about 9:48 a.m. The only practical ways to do this drive required use of the Interstate Highway System and/or the U.S. Highway System.

At 9:27 p.m. on March 25, 2015, Vallejo Police Department's Public Information Officer gave a press statement that the whole affair had not been an authentic kidnapping.

At 2:13 p.m. on March 26, 2015, using a server in Singapore, Muller sent an email to the *Chronicle* reporter. The email represented that a group of criminals who had been doing home invasions and car thefts on Mare Island for some time had decided to try kidnapping for ransom. The writer said they felt badly for what "they" had done and thought it was terrible that Huskins was being publicly doubted by law enforcement. The email attached pictures of instrumentalities of

2

the kidnapping offense, including a black spray-painted water pistol with a flashlight and laser pen attached.

At 4:39 p.m. on March 28, 2015, Muller sent the reporter another anonymized email again claiming responsibility for the kidnapping, decrying Huskins's treatment by police, and expressing remorse for the crime. A number of corroborating photos were attached: fake guns, cameras, computer equipment, zip-ties, and a photo of the room where Huskins had been held. The email stated that the supposed group of perpetrators had subdued Quinn and Huskins "by threat."

On March 30, 2015, Kenny Park, Vallejo P.D.'s public information officer, got an anonymized email threatening to harm him unless he apologized to Huskins. An email to him the next day took back the threat and further described the operation, including its use of an aerial drone.

On June 8, 2015, Dublin Police Services of the Alameda County Sheriff's Department searched Muller's South Lake Tahoe residence and his stolen white Mustang. They were investigating a similar, separate nighttime residential burglary committed on June 5, 2015 in Dublin. The Dublin investigators seized items described by the Victims and depicted in the email attachments. They seized taped-over swim goggles that still had a blond hair stuck to them. They seized a water pistol with a laser pointer taped to it. They seized computers. They seized zip ties. One of the computers Muller had stolen from Quinn. The GPS history of the stolen Mustang contained as a user-input destination the place in Huntington Beach where Huskins was dropped off. Officers seized a military-style mesh vest. In its pockets, they found the blacked-out swim goggles, a portable speaker, and duct tape.

On June 30, 3015, the FBI conducted a second search of Muller's South Lake Tahoe residence. They also searched Muller's biological parents' respective residences, a Vallejo storage locker, and the electronic devices seized by the Dublin investigators.

In South Lake Tahoe, FBI photographed the room where Huskins had been held. It matched the photo attached to one of the anonymized emails. They also found a blonde hair under the bed and seized a piece of cardboard that matched the one used to black out the window in the room photograph. In the Vallejo storage locker, FBI found aerial surveillance drones consistent with the narrative in one of the anonymized emails.

On the computers, the FBI found a sound recording that appeared designed to simulate people whispering to each other and they found a sound recording consistent with the instructions that had played on the headphones during the Vallejo break in. They also found digital video recordings of Muller and Huskins together in Muller's South Lake Tahoe residence. Huskins was blindfolded and fully under Muller's control.

FBI chemists analyzed a sample taken from a stain on the floor where Aaron Quinn had been bound and drugged. The stain contained a mixture of drugs that cause drowsiness.

Muller met with a reporter from KPIX while incarcerated in the Alameda County Jail. In an attempt to limit what information the reporter could use in her subsequent story, Muller frequently began his responses to her questions with the

> phrase "off the record and on background." The Alameda County Jail automatically and overtly records jail conversations.
>
> Muller indicated during the interview that the Huskins kidnapping had not been random. Muller was not surprised that he was linked to the Huskins kidnapping and noted whether it was discovered independently or by the FBI, the kidnapping was going to "come out." Muller stated that his "terrible disease" caused the crimes. Muller admitted that he acted alone and that there was "no gang."
>
> Muller was aware that the Huskins kidnapping was labeled a hoax by the police and "that's why those emails were sent after she got back." He admitted that he sent the emails to the *Chronicle*.

*Id.* at 10-12.

In the plea agreement he signed, Muller indicated that he understood that he was waiving various constitutional rights, and he further agreed to waive his rights to appeal and collaterally attack his sentence (including by filing a motion under 28 U.S.C. § 2255), except as to non-waivable claims. *Id.* at 8. On March 16, 2017, the court sentenced Muller to 40 years' incarceration to be followed by 60 months of supervised release, consistent with the government's recommendation. ECF Nos. 59, 60.

## II. Motion for In Forma Pauperis Status

Muller has filed an application to proceed in forma pauperis. ECF No. 62. His application makes the showing required by 28 U.S.C. § 1915(a)(1) and the request is granted.

## III. Rule 4 Screening

Rule 4 of the Rules Governing § 2255 Proceedings for the U.S. District Courts requires that the court perform a preliminary review of any motion brought under § 2255. "If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party. If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order." Rule 4, Rules Governing § 2255 Proceedings. After performing this review, it is clear that Muller is plainly not entitled to relief on the majority of his claims for the reasons that follow. Accordingly, those claims must be dismissed. The court does direct the U.S. Attorney to respond to the remaining two claims.

4

Muller challenges his conviction on fourteen enumerated grounds. The first six grounds all allege some form of Fourth Amendment violation in the searches and seizures of Muller and various items of his property or accounts. ECF No. 61 at 15-21. Ground 7 alleges that Muller's shackling during court appearances was unlawful. *Id.* at 21-22. Ground 8 challenges the lack of a preliminary hearing in this case. *Id.* at 22-23. In Ground 9, Muller argues that 18 U.S.C. § 1201 exceeds Congress's authority under the Commerce Clause and that the jurisdictional element of the kidnapping offense was not satisfied by the alleged conduct to which he stipulated in the plea's factual basis. *Id.* at 23-24. The tenth ground also alleges an unlawful seizure of Muller's property. *Id.* at 24-25. Ground 11 alleges various incidents of prosecutorial misconduct. *Id.* at 25-27.

Ground 12 contains several claims of ineffective assistance of counsel ("IAC"). *Id.* at 27-35. The court will label these claims as Grounds 12(a)-(i) for ease of discussion. Ground 12(a) alleges that counsel failed to investigate Muller's mental health. *Id.* at 27-28. Ground 12(b) alleges that counsel failed to seek a competency hearing. *Id.* at 28. Ground 12(c) alleges that counsel failed to pursue an insanity defense. *Id.* at 28-29, 32-33. Ground 12(d) alleges that counsel blew a deadline for notifying opposing counsel of his intention to pursue an insanity defense. *Id.* at 29. Ground 12(e) alleges that counsel recommended the plea agreement to Muller to avoid the fallout from the blown deadline. *Id.* at 29-30. Ground 12(f) alleges that counsel was ineffective in failing to "assert applicable rights and obtain appropriate remedies in connection with all previously asserted grounds in this motion, except grounds one and seven." *Id.* at 33. Ground 12(g) alleges that counsel failed to advise Muller of the availability of government funds to pay for experts and investigators. *Id.* Ground 12(h) alleges that counsel failed to timely communicate to Muller a more favorable plea offer. *Id.* at 34. Ground 12(i) alleges that counsel failed to object to inaccurate statements in the presentence report. *Id.* at 34-35.

In Ground 13, Muller argues that his guilty plea was not knowing and voluntary. *Id.* at 35-37. Finally, Muller argues in Ground 14 that the trial court unconstitutionally enhanced his sentence based on facts not admitted by him nor found by a jury beyond a reasonable doubt. *Id.* at 37.

The bulk of Muller's claims for relief are barred by his guilty plea and/or the plea agreement's waiver provision. In *Tollett v. Henderson*, 411 U.S. 258 (1973), the U.S. Supreme Court held that, once a criminal defendant has pleaded guilty, the defendant can no longer raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the plea. 411 U.S. at 267. Once the plea has been entered, the defendant is limited to challenging: (1) the voluntary and intelligent nature of the plea (*id.*), (2) the competence of counsel in advising the defendant to plead guilty (*United States v. Broce*, 488 U.S. 563, 569 (1989)), (3) certain double jeopardy claims apparent from the record (*id.* at 574-76), and (4) the power of the court to enter the conviction or impose the sentence, where the absence of such power is apparent from the record (*id.* at 569; *Hilderbrand v. United States*, 261 F.2d 354, 357 (9th Cir. 1958)).

Waiver provisions in plea agreements also operate to bar claims in subsequent proceedings. *United States v. Abarca*, 985 F.2d 1012, 1014 (9th Cir. 1993). In fact, such a waiver can bar a § 2255 motion entirely, except for claims that implicate the voluntary nature of the plea (including IAC claims regarding counsel's advice to the defendant about the plea deal). *Id.*; *Washington v. Lampert*, 422 F.3d 864, 871 (9th Cir. 2005). For such a waiver to be enforceable, it must expressly waive the right to file a § 2255 motion. *United States v. Pruitt*, 32 F.3d 431, 433 (9th Cir. 1994). Here, the plea agreement Muller signed contained such an express waiver. ECF No. 43 at 8 ("In addition, regardless of the sentence the defendant receives, the defendant also gives up any right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or 2241, challenging any aspect of the guilty plea, conviction, or sentence, except for non-waivable claims.").

These two bars – the *Tollett* rule and the plea agreement's waiver provision – prevent this court from reviewing all of Muller's claims that do not implicate the voluntary or knowing nature of his plea. Muller's claims regarding unlawful searches and seizures (Grounds 1-6, Ground 10)[1],

---

[1] "[W]hen a defendant is convicted pursuant to his guilty plea rather than a trial, the validity of that conviction cannot be affected by an alleged Fourth Amendment violation because the conviction does not rest in any way on evidence that may have been improperly seized." *Haring v. Prosise*, 462 U.S. 306, 321 (1983). Instead, the conviction rests upon the defendant's

6

that he was not provided a preliminary hearing (Ground 8)[2], that the prosecutor committed various acts of misconduct (Ground 11)[3], and that his attorney was ineffective in various ways that do not implicate the voluntariness of the plea (Grounds 12(a) through 12(d), and 12(f) through 12(h))[4] all concern alleged constitutional errors that occurred before his guilty plea. These claims are thus barred by *Tollett*. *Rishor v. Ferguson*, 822 F.3d 482, 498-99 (9th Cir. 2016) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty

/////

---

admission of factual guilt. *Menna v. New York*, 423 U.S. 61, 62-63 n.2 (1975). The guilty plea "simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt[.]" *Id.*

[2] *See Lee v. Perry*, No. f:17-cv-00233-VBF (SK), 2017 U.S. Dist. LEXIS 156831, at *8-9 (C.D. Cal. July 7, 2017) (claims that due process was violated by delayed arraignment, that searches and seizures violated the Fourth Amendment, and that the defendant had been subjected to double jeopardy were barred by the defendant's guilty plea under *Tollett*).

[3] Courts have sometimes allowed defendants to raise claims of government misconduct despite a guilty plea where the misconduct was so egregious that it called into question the defendant's guilt. *E.g., United States v. Fisher*, 711 F.3d 460, 464-65 (4th Cir. 2013); *Ferrara v. United States*, 384 F. Supp. 2d 384, 409 (D. Mass. 2005). Such claims of government misconduct are best viewed not as standalone claims, however, but as part of the defendant's showing that the misconduct prevented him from making a knowing and voluntary plea, a claim that is never barred by the *Tollett* rule. *Mabry v. Johnson*, 467 U.S. 504, 508-09 (1984); *Brady v. United States*, 397 U.S. 742, 748 (1970). In any event, Muller does not allege any conduct so egregious (ECF No. 61 at 25-27), and any claims of prosecutorial misconduct that do not implicate voluntary or knowing nature of his plea are additionally barred by his agreement to forgo collateral attack. *United States v. Dykstra*, No. 93-55747, 1994 U.S. App. LEXIS 761, at *7 (9th Cir. Jan. 7, 1994) (claims that the government had conducted unlawful searches and seizures, used "unconstitutional evidence," tampered with evidence, and withheld exculpatory evidence were barred by plea agreement's waiver provision).

[4] *United States v. Gevock*, No. 2:11-cr-526-JAM-EFB P, 2016 U.S. Dist. LEXIS 105155, at *19-20 (E.D. Cal. Aug. 9, 2016) (movant's allegations that his lawyer rendered IAC in various ways prior to the plea, including in failing to negotiate the filing of lesser charges by the government, were all barred by the *Tollett* rule); *Singh v. United States*, No. 1:09-cr-00369-AWI, 2014 U.S. Dist. LEXIS 83532, at *21-22 (E.D. Cal. June 18, 2014) (movant's claims that trial counsel was ineffective in failing to investigate and file pre-trial motions related to conduct that occurred prior to the guilty plea were barred by *Tollett*); *United States v. Rosales*, No. CR F 05-0179 LJO, 2009 U.S. Dist. LEXIS 139635, at *9-10 (E.D. Cal. Nov. 9, 2009) (movant's claim that he could have obtained a better deal if his counsel had responded to a plea deal offered by the government prior to his guilty plea was barred by the guilty plea).

of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.")

These claims are additionally barred by the plain language of the waiver in Muller's plea agreement. *See United States v. Jeronimo*, 398 F.3d 1149, 1153 (9th Cir. 2005) (plea agreements are contracts and courts will enforce their plain language if it is clear and unambiguous on its face).

Muller's claim that the factual basis of the plea did not satisfy the "jurisdictional" element of 18 U.S.C. § 1201 or that that statute exceeds Congress's Commerce Clause power (Ground 9) is also likely barred by his plea of guilty, although this question is somewhat unsettled in the Ninth Circuit.[5] However, the question need not be decided here because the claim is undoubtedly barred by the waiver provision of the plea agreement, which contained no exclusion for such claims. *United States v. Young*, 651 F. App'x 939, 944 (11th Cir. 2016).

/////

---

[5] The Ninth Circuit has not squarely settled on whether this kind of argument presents a "jurisdictional" challenge that falls within the exception to *Tollett* for claims challenging the court's power to convict the defendant or the government's power to bring the charge. *Compare United States v. Caperell*, 938 F.2d 975, 977 (9th Cir. 1991) ("[A]lthough the dividing line between constitutional claims waived by a plea of guilty and those that survive the plea is not always clear, claims that the applicable statute is unconstitutional or that the indictment fails to state an offense are jurisdictional claims not waived by the guilty plea." (internal quotation marks omitted)) *with United States v. Price*, 589 F. App'x 350, 351 (9th Cir. 2015) (holding that the court obtained jurisdiction to convict the defendant when he admitted to the jurisdictional facts contained in plea's factual basis) *and United States v. Ratigan*, (the "jurisdictional element" of an offense (i.e., the nexus with interstate commerce which is necessary to make the crime a federal offense) is simply an essential element of the offense and a failure of proof on that element does not affect the federal court's subject matter jurisdiction). Other circuits have concluded that challenges to federal statutes as exceeding the Commerce Clause power or challenges to the facts forming the nexus to interstate commerce as insufficient are barred by a knowing and voluntary guilty plea pursuant to *Tollett* and do not fall within the "jurisdiction" exception. *E.g., United States v. Sealed Appellant*, 526 F.3d 241, 243 (5th Cir. 2008) (the "jurisdiction" exception refers to the court's jurisdiction over the defendant, not the legislature's jurisdiction to enact the law); *United States v. Martin*, 147 F.3d 529, 531-33 (7th Cir. 1998) ("[O]nce a defendant pleads guilty in a court which has jurisdiction of the subject matter and of the defendant. . . the court's judgment cannot be assailed on the grounds that the government has not met its burden of proving so-called jurisdictional facts. Even if the government fails to establish the connection to interstate commerce, the district court is not deprived of jurisdiction to hear the case." (internal quotation marks and citations omitted)).

8

Muller's claim regarding his shackling in court (Ground 7) is, to the extent it concerns shackling prior to the entry of the plea, barred by *Tollett*. The claim is also barred by the plea agreement's waiver clause regardless of when the shackling occurred. Muller's claims alleging post-plea errors (that his attorney failed to object to errors in the presentence report (Ground 12(i)) and that the court enhanced his sentence based on facts he did not admit and which were not found by a jury (Ground 14)), while not falling under the *Tollett* rule, are nevertheless barred by the plea agreement's waiver provision. *Young*, 651 F. App'x at 943-44.

Muller raises two claims that fall within the exceptions to the *Tollett* rule and which are not waivable. One is an IAC claim, in which he alleges that his attorney advised him to plead guilty because the attorney had missed a key deadline for mounting an insanity defense (Ground 12(e)). The other, Ground 13, alleges that his plea was not knowing and voluntary. ECF No. 61 at 28-33, 35-37. These two claims should proceed and the government be directed to respond to them. Muller's § 2255 motion must be denied as to all other claims.

**IV.    Order and Recommendation**

Accordingly, It is hereby ORDERED that movant's motion to proceed in forma pauperis (ECF No. 62) is GRANTED.

Further, it is further RECOMMENDED that:

1. Movant's Motion to Vacate (ECF No. 61) be DENIED as to Grounds 1-11, Grounds 12(a)-(d), Grounds 12(f)-(i), and Ground 14.
2. The Government be directed to file a response to movant's Grounds 12(e) and 13 within 60 days of any order adopting these recommendations;
3. The Government be directed to submit any proposed plea agreements relating to this case and a transcript of the plea colloquy along with their response to the motion; and
4. Movant's trial counsel be directed to file a declaration within 60 days of any order adopting these findings and recommendations addressing movant's allegations regarding ineffective assistance in connection with the guilty plea, in particular, his conversations with movant relating to the plea, the likely outcome of a trial, the merits of any mental health defense, and the timing for presenting such a defense.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 18, 2018.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE