1    Matthew Muller
2    P.O. BOX 2563
     San Francisco, CA 94126-2563
3    Pro Se

**FILED**

**NOV 13 2018**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
          DEPUTY CLERK

5    UNITED STATES DISTRICT COURT

6    FOR THE EASTERN DISTRICT OF CALIFORNIA

8    UNITED STATES OF AMERICA,          No. 2:15-cr-00205-TLN-EFB

9              Respondent,              **FIRST AMENDED SUPPLEMENT TO**
                                        **MOTION TO VACATE, SET ASIDE OR**
10         v.                           **CORRECT SENTENCE (VERIFIED)**

11   MATTHEW MULLER,

12             Movant.

14        The Movant Matthew Muller respectfully requests all relief appropriate under 28

15   U.S.C. §2255 from his criminal conviction in this Court, based upon the grounds set forth

16   below.

17                              **INTRODUCTION**

18   1.    This motion challenges Movant's 480-month sentence of imprisonment and 60-

19   month term of supervised release, as well as the conviction and plea underlying this

20   sentence. The judgment at issue was entered on March 16, 2017. *See* United States

21   District Court, Eastern District of California, Case No. 2:15-cr-00205-TLN, ECF No. 60.[1]

22   2.    Movant incorporates by reference the information and procedural history set forth

23   in his previously First Amended Form Motion to Vacate, Set Aside or Correct Sentence,

24   filed herewith. The instant document will be referred to as the "§2255 First Amended

25   Supplement," and together with the First Amended Form Motion supersedes Movant's

26   previous §2255 filing.

27

28   _____
     [1]      All further docket references in this motion will be to this case number in the United States District Court
     for the Eastern District of California.

First Amended Supplement
To Motion to Vacate                    - 1 -                    United States v. Muller

3.     After nearly a year of requesting his complete client file from his former attorneys Thomas Johnson and Kristy Horton, Movant has still been unable to gain their compliance.    Accordingly, the motion remains based only upon the incomplete and selectively-disclosed documents provided by former counsel.    Movant is separately seeking relief from the Court to obtain the balance of his client file.

## PARTIES

4.     Movant Matthew Daniel Muller is currently serving a sentence imposed by this Court following a guilty plea to a single count of kidnapping in violation of 18 U.S.C. §1201(a) (1).

5.     Respondent United States of America was represented in the underlying criminal matter by Matthew Segal and Heiko Coppola of the Sacramento United States Attorney's Office.

## JURISDICTION AND VENUE

6.     Jurisdiction and venue are proper in this Court under 28 U.S.C. §2255, as it is the court in which the underlying judgment of conviction was entered.

7.     Judgment against Mr. Muller was entered on March 16, 2017.  The judgment became final when the time for appeal expired on March 30, 2017. *See* ECF No. 60; Fed. R. App. P. 4(b). Movant submitted the instant motion to prison authorities for mailing on March 30, 2018 and it is deemed filed as of that date. *See Houston v. Lack*, 487 U.S. 266 (1988) (petition of a *pro se* inmate is deemed filed the day it is given to prison authorities for mailing).  Accordingly, this motion is timely filed under 28 U.S.C. §2255 and this Court has jurisdiction to proceed.

///

///

# **PROCEDURAL HISTORY**

8.     The relevant procedural history is set forth in the accompanying §2255 Form Motion.

# **GROUNDS FOR RELIEF**

9.     Each of the following claims is submitted (1) as an independent ground for relief, to the extent allowed by law; (2) as evidence that Movant's plea was not knowing, intelligent and voluntary; (3) as arguments that the performance of Movant's former attorneys fell below an objective standard of reasonableness, and that but for their errors a reasonable probability exists that Movant would have obtained a different result; and/or (4) as matters relevant to the nature of any relief to be granted.

## First Ground for Relief:

## Unlawful Warrantless Searches of Cellular Phone

10.     Alameda County law enforcement officers effected a warrantless search of Movant's cellular phone in violation of the Fourth Amendment of the U.S. Constitution.

11.     The officers' interaction with the cellular phone's operating system shortly after the phone was discovered, and their manipulation and use of its touchscreen, display, speakers, microphones, transmitted, antenna and calling functions amounted to a search for purposes of the Fourth Amendment Amendment.

12.     The phone was not abandoned by its owner and no reasonable law enforcement officer would believe under the circumstances that it had been intentionally abandoned by a suspect fleeing the scene of a burglary.

13. By the time the warrantless search occurred, no exigent circumstances existed that were sufficient to justify a warrantless search. Officers did not act with an actual belief that exigent circumstances required a warrantless search. Rather, they were simply eager to begin their investigation into the burglary and did so without obtaining a warrant to search the phone.

14. In addition to the above-described search, additional warrantless searches of the cellular phone, including review of its use and digital contents, were conducted by both California state and federal law enforcement officers well after any arguable exigency had dissipated.

15. Any identifying information obtained in the warrantless searches of the cellular phone, as well as the other fruits of that search, would have been suppressible in any criminal trial of Movant. In particular, decisions to seek additional warrants relating to Movant's property and premises and/or decisions to seek additional electronic devices for search or to include them in search warrants were reliant upon and tainted by the earlier unlawful searches. Evidence obtained pursuant to the tainted search warrants would have been suppressible as well.

Second Ground for Relief:

Illegal Seizure of Mr. Muller

16. Movant incorporates all preceding paragraphs as if fully set forth herein.

17. Alameda County law enforcement used unlawfully obtained information and evidence to secure an arrest and search warrant for the person of Movant, and did in fact seize and search Movant.

18.  These searches and seizures were reliant upon and tainted by earlier unlawful acts by law enforcement. Any information obtained or law enforcement action taken as a result of these searches and seizures would have been suppressible in any criminal trial of Movant.  So, too, any additional "fruits" flowing from these events, including but not limited to subsequently obtained evidence or law enforcement action taken.

### Third Ground for Relief:

#### Defective Warrants in Search of South Lake Tahoe Property, Ford Mustang, E-Mail Accounts, Bank Accounts and Cellular Phone

19.  Movant incorporates all preceding paragraphs as if fully set forth herein.

20.  Alameda County law enforcement used a series of warrants issued between June 8 and July 23, 2015, to seize and search the person and various properties associated with Movant. These warrants were defective in multiple regards.

21.  **First**, the warrants, the decision to seek the warrants and the information used to seek the warrants were the tainted fruit of prior unlawful searches and of other unlawful acts by police.

22.  **Second**, the warrants were insufficiently particularized with regard to the location and/or descriptions of the property to be searched and as to the evidence to be searched and/or seized.

23.  **Third**, there was insufficient probable cause to support search and/or seizure of the items and properties listed.

24.  **Fourth**, the warrant to search the South Lake Tahoe property was so broad as to be considered an unlawful general warrant of exactly the sort the Fourth Amendment was intended to proscribe.

25.    **Fifth**, the scope of the search warrant was broader than the probable cause upon which it was based. In particular, there was insufficient probable cause to support search warrant terms allowing seizure of electronic devices and storage media taken by authorities from the property.

26.    The above defects rose to such a level that a reasonable law enforcement officer, knowing what the executing officers knew about the investigation and surrounding circumstances, could not have believed in good faith that the warrants were valid. In addition, several of the warrants used were invalid on their faces.

27.    Evidence obtained on the purported authority of the defective warrants would have been suppressible in any criminal trial of Movant. In addition, any further law enforcement action taken and/or evidence obtained as a result of the above warrants would have been suppressible as tainted fruits of unlawful warrants.

### Fourth Ground for Relief:

#### Search and Seizure in Excess of Scope of Warrants And/Or Unlawful General Warrant

28.    Movant incorporates all preceding paragraphs as if fully set forth herein.

29.    Law enforcement officers purporting to act on the authority of the warrants described above seized and/or searched items not described by the warrants, thereby exceeding their scope. These excessive searches and seizures include, but are not limited to, searches of electronic devices for evidence beyond that named in the warrant. Movant was in effect subjected to an unlawful general, roving search of exactly the sort that the Fourth Amendment was intended to proscribe. Any construction of the warrant terms broad enough to encompass all items searched and/or seized would render it an unlawful general warrant.

30.     Evidence seized and/or searched in excess of the authority of the above warrants would have been suppressible in any criminal trial of Movant. So, too, would be any further evidence obtained or law enforcement action taken as a result of such illegally obtained evidence.

Fifth Ground for Relief:

Unlawful Warrantless Searches of
Property Seized and of Private Accounts

31.     Movant incorporates all preceding paragraphs as if fully set forth herein.

32.     Law enforcement officers—including both California and federal authorities—illegally searched Movant's electronic devices, electronic media and other property without a warrant and prior to obtaining any proper authorization for doing so.

33.     Officers also searched Movant's e-mail and financial accounts without a warrant and without obtaining any other proper authorization to do so.

34.     Evidence obtained as a result of the above acts would have been suppressible in any criminal trial of Movant. So, too, any further evidence obtained or law enforcement action taken as a result of such illegally obtained evidence, including but not limited to decisions to seek further warrants relating to Movant.

Sixth Ground for Relief:

Defective Federal Search Warrants

35.     Movant incorporates all preceding paragraphs as if fully set forth herein.

36.     Beginning by at least June 30, 2015, federal authorities sought and obtained warrants purporting to authorize seizure and/or search of items and premises owned by,

occupied by and/or associated with Movant. These warrants were illegal and defective in multiple regards.

37.     **First**, the warrants, the decision to seek the warrants and the information used to seek the warrants were tainted by prior unlawful searches and seizures and by other illegal acts by law enforcement authorities, as detailed above.

38.     **Second**, there was insufficient probable cause to support search and/or seizure of the properties and items described, and the warrant terms were broader than what probable cause did exist.

39.     **Third**, the warrants were issued as a result of knowing misrepresentations by the affiants and/or based on their statements made in reckless disregard of the truth.

40.     **Fourth**, the warrants were insufficiently particularized as to the items or premises to be searched and the evidence to be seized and/or searched. Any construction of the warrant terms broad enough to encompass all items and properties searched and/or seized would render them unlawful general warrants.

41.     The above defects rose to such a level that a reasonable law enforcement officer, knowing what the executing officers and agents knew about the investigation and surrounding circumstances, could not have believed in good faith that the warrants were valid.

42.     Evidence obtained on the purported authority of the above warrants would have been suppressible in any criminal trial of Movant. So, too, any further evidence obtained or law enforcement action taken as a result of such illegally obtained evidence.

///

43.     Movant incorporates all preceding paragraphs as if fully set forth herein.

44.     Movant was shackled in full restraints for all court appearances. Mr. Muller was nonviolent and cooperative when first taken into custody by police in June of 2015. He had been in custody over four months with no incident or disciplinary issues and had made several previous state court appearances with no or only partial restraints. Movant was fully complying with his prescribed psychiatric treatment and was sedated with an antipsychotic drug for all court appearances. Nevertheless, the Court ordered that Movant remain fully shackled throughout all courtroom appearances.  It refused to hold an evidentiary hearing on the issue, at which Movant would have presented evidence documenting the above circumstances.

45.     Movant suffered actual prejudice as a result of his shackling. The full shackling added to Movant's mental distress during court proceedings.  The shackling was unnecessary for courtroom security and instead acted to shame and impugn Movant in front of his family, a large media presence and other courtroom observers. Together with Movant's poor state of mental health, the shackling caused Movant to seek to avoid appearing in Court and to ask that a waiver of his appearance be filed. *See* ECF No. 32. This in turn caused Movant to be less aware of developments in his case, and of incompetent representation by his attorneys.

46.     In addition, the prosecution improperly sought to portray Movant—who had a perfect record of total compliance with all rules and orders while in custody and who was

flanked by multiple armed U.S. Marshals—as an immediate danger to persons present in the courtroom, making such comments as "look at him, he's huge." Movant was not allowed to take notes during most proceedings, and had his right hand freed only as needed for the Court to swear him in.

### Eighth Ground for Relief:

### No Preliminary Hearing

47.     Movant incorporates all preceding paragraphs as if fully set forth herein.

48.     Although the Court set a date for a preliminary hearing in Movant's case, that hearing date was vacated after the Respondent was able to secure an indictment against Movant.

49.     The preliminary hearing provided by Federal Rule of Criminal Procedure 5 is intended to serve as a forum for determining probable cause, but is also an important means of discovery for the accused, such that the justification for a preliminary exam is not eliminated by the return of an indictment.

50,     It was a violation of Movant's constitutional rights under the Due Process and Equal Protection clauses to deny him a preliminary hearing simply because the Respondent happened to control when Movant entered its custody and was able to obtain an indictment before Movant's scheduled preliminary hearing.

51.     Movant suffered actual prejudice from the denial of a preliminary hearing, including but not limited to loss of the opportunity to discover *Brady* material, *Giglio* material and other exculpatory, impeaching or relevant evidence in possession of Respondent that he did not receive in regular discovery.

## Ninth Ground for Relief:

### Kidnapping Statute Unconstitutional As Applied
### And/Or Factual Basis of Plea Does Not Satisfy Offense Elements

52. Movant incorporates all preceding paragraphs as if fully set forth herein.

53. The statute under which Movant was convicted provides for federal jurisdiction where any means, facility or instrumentality of interstate or foreign commerce is used during the offense. Given the broad and permissive interpretation this language appeared to receive in Movant's case, the statute would exceed Congress's authority under the Commerce Clause.

54. Alternatively, given a narrower construction to avoid unconstitutionality, the jurisdictional element of the kidnapping offense would not be satisfied by the alleged conduct Movant conceded that the Respondent could prove at trial.

## Tenth Ground for Relief:

### Unlawful Seizure of Movant's
### Attorney-Client Privileged Legal Materials

55. In September 2015, agents of the Federal Bureau of Investigations (FBI) took custody of Movant from the Alameda County Sheriff's Department. At the time he was picked up from Alameda County, Movant had on his person a folder prominently marked with words to the effect of "Legal Materials: Confidential and Attorney-Client Privileged." The folder contained strategic notes about Movant's case, draft legal documents, letters from Movant's attorney to Movant and draft letters to be sent to Movant's attorney. It also contained two letters that were evidence in Movant's defense.

56. The FBI agents took this folder from Movant and placed it in the trunk of the

vehicle used to transport him. After arriving at Sacramento County Jail, Movant asked the FBI agents for his folder. The FBI agents advised that he could not have the folder back. Movant advised the agents that the folder contained confidential and privileged legal documents and that he should be allowed to retain it. One of the FBI agents then promised that he would deliver the folder to Movant's attorney. Movant believes he requested a property receipt for the envelope but was told by the agents they did not have the proper form. They reassured him again that the folder would be delivered to his attorney.

57. Movant followed up with his attorney multiple times concerning the folder. As of the last time he remembers asking about it in December of 2015, it still had not been delivered to Movant's attorney.

Eleventh Ground for Relief:

Prosecutorial Misconduct

58. Movant incorporates all preceding paragraphs as if fully set forth herein.

59. Movant submits that he was prejudiced by multiple instances of prosecutorial misconduct, including but not limited to those listed below.

60. The prosecution failed to produce relevant *Brady* and *Giglio* material during discovery. In particular, the prosecution failed to produce evidence relating to the alleged victims concerning the multiple conflicting accounts they gave of the crimes alleged, evidence of their motive to misrepresent facts concerning the alleged crimes and derogatory investigatory materials pertaining to the alleged victims tending to impugn their credibility as prosecution witnesses. It failed to disclose conflicts of interest by FBI

agents involved in the investigation, and of formal complaints against agents by the alleged victims.

61. The prosecution also failed to produce other relevant evidence during discovery, including communications and investigatory records indicating the Movant's electronic devices and other records. had been searched and examined by authorities in advance of obtaining any warrants or other authorization. Prosecuting attorneys were aware that the entire investigation and case against Movant stemmed from unlawful warrantless searches of electronic devices.

62. The prosecution made statements about Movant to the Court and to the public that it knew to be false, and/or made such statements in reckless disregard of their falsity and/or made such statements while in possession of evidence and records clearly indicating the statements were false, and while having a duty to reasonably investigate said evidence and records prior to making the false claims. In particular, the prosecution reportedly asserted that Movant was involved in a series of sexual assaults in the San Francisco bay area while possessing evidence showing he was not.

63. The prosecution failed to make a full and truthful disclosure of investigatory sources they relied upon in developing their case against Mr. Muller. While they purported to have obtained information from a particular source such as pursuant to a lawful search; in fact, they had received it first from a different source and/or under circumstances that could make the information suppressible or that could lead Movant to discover information unfavorable to the prosecution's case. In particular, Respondent attempted to "launder" electronic evidence against Muller that had already been

unlawfully reviewed before Respondent made it appear to have been properly discovered.

64.     The prosecution reviewed confidential and privileged legal papers unlawfully seized from Movant's person when FBI agents assumed custody of Movant. The prosecution failed to return the papers to Movant's attorney or to notify Movant's attorney that the papers had come into their possession.

65.     The prosecution engaged in inappropriate contacts and activities calculated to impugn Movant and to harm his interests and ability to defend against criminal charges. This conduct includes but is not limited to communications with Movant's ex-spouse and/or her. attorneys providing information to help her in a civil action to terminate her spousal support obligations to Movant. Movant's former spouse was successful in her action as a result. This in turn diminished the financial resources available to Movant to mount his criminal defense.

Twelfth Ground for Relief:

Ineffective Assistance of Counsel

66.     Movant incorporates all preceding paragraphs as if fully set forth herein.

67.     As explained more fully in a motion to be filed shortly after filing of this amended supplement, Movant has been prevented by his former attorneys from fully investigating the circumstances surrounding their representation of him.  The following averments are based on current information and belief.

68.     After they were retained, Movant's counsel[2] failed to timely or sufficiently investigate Mr. Muller's then-present and past mental health.  Counsel was aware that

---

[2]     Movant's former attorneys Thomas Johnson and Kristy Horton are collectively referred to herein as "counsel."

Movant had a history that included severe depression, suicide attempts, psychosis, delusions, hallucinations, mania, anxiety and other mental health symptoms. They were further aware that at several points in his history, Movant had appeared to family and coworkers to be mentally well, but in fact had been suffering severe symptoms such as delusional beliefs. Counsel was aware that Movant had been placed on extended suicide watch at the Alameda County Jail, and that while in Alameda County custody he had been committed for a time to an inpatient psychiatric hospital. Counsel was also aware that before entering federal custody, Movant had suffered an in-court panic attack during his plea hearing and had lost consciousness, requiring emergency medical care to stabilize him. Indeed, counsel was present during the panic attack, waited for Movant to be revived and then allowed him to enter a guilty plea. Counsel was further aware that Movant was taking multiple psychotropic medications. They were aware that Movant had taken actions inconsistent with his own best interests while in custody. Movant had reported suffering ongoing episodic symptoms of psychosis while in custody, including a delusional belief that Alameda County Jail personnel were replacing his medications with placebos as part of an experiment.

69. Despite being aware of the foregoing circumstances, Movant's counsel did not seek a competency hearing for Movant or arrange for him to meet with an appropriate expert for a psychiatric evaluation. Movant was indigent, and under applicable California law counsel could have moved at any time during the three months Movant was in state custody for public funds to retain a defense psychiatric expert.

70. Movant's counsel failed to make sufficient efforts to obtain all of Movant's

relevant mental health records in preparation for a potential insanity defense. Movant and his family provided counsel with detailed information about how to obtain his mental health history and treatment records. However, counsel made only cursory efforts to secure the needed records. These records were later obtained without apparent difficulty by the U.S. probation officer conducting the presentence investigation.

71.     Movant informed counsel of numerous electronic records and items of evidence that would corroborate his compromised mental state and other defenses. Counsel failed to follow up on these leads or to investigate and obtain the relevant evidence.

72.     Up until September 2016, Movant's counsel consistently advised Movant and his family that they were planning and preparing a mental health defense. Counsel reassured Movant and his family that progress was being made on his case and that counsel would retain a psychiatric expert witness. Then, in September of 2016, Movant's counsel called a meeting with him and advised him that he did not see the grounds for a successful insanity defense. He stated that Movant's alleged conduct had "just been too organized" to support an insanity defense. Counsel did not have Movant examined or consult an expert familiar with the case before making this determination. Movant's attorneys advised that the best thing for him to do would be to accept a plea offer, and that they had negotiated a recommended sentence of forty years with the prosecution. Movant's attorney opined that this was the best offer Movant would get and that Movant would receive a life sentence if he took the matter to trial. In reliance on counsel's advice and representations, Movant agreed to the plea deal.

73.     Movant later learned that unknown to him, his attorney had missed a key deadline

by which to notify opposing counsel of his intention to mount an insanity defense. The prosecution had accordingly moved to exclude any defense of insanity, and a hearing had been set on the motion. Movant does not recall being advised of this motion, nor do Movant's parents, who communicated closely with Movant's counsel concerning developments in the case. Later, Movant's counsel sent him a copy of case materials that counsel stated contained all documents filed by either party with the court. However, the prosecution's motion to exclude a defense of insanity was omitted, as were other documents referencing the fact that counsel had missed a key deadline. Such omission strongly suggests counsel's consciousness of their error.

74. Following the prosecution's motion to exclude, Movant's attorneys moved quickly to conclude a plea agreement and set a change of plea hearing. They sought a continuance of the hearing on the missed deadline. *See* ECF 35-36. Movant entered a plea of guilty at a subsequent hearing, and Movant's counsel thereby avoided responding to the prosecution motion to exclude a defense of insanity.

75. Movant submits that his attorney's recommendation to plead guilty was unduly influenced by the prospect of having to explain to Movant, to Movant's parents and to the court why he had failed in the course of over a year to secure a psychological examination of Movant, and to take other steps to research, assess and prepare a mental defense. Throughout this time, counsel had consistently advised his client and his client's family that this was the planned strategy for the case, up until the day that the prosecution filed its motion to exclude an insanity defense. Movant submits that counsel's advice was not in keeping with the best interests of their client, and that it caused Movant to accept a

plea agreement and plead guilty when he would not have done so had he received effective legal advice and representation.

76. Although Movant's counsel had apparently determined that Movant's mental health was not relevant to the guilt phase of proceedings, they later advised Movant and his family that it would be important to have him evaluated for purposes of sentencing. Movant's counsel requested a continuance of sentencing, specifically citing the need to obtain a mental health examination of Movant.

77. Movant's family paid a large sum of money to retain an expert witness, who examined Movant. This examination entailed the same procedures and time that would have been used had counsel arranged the evaluation a year and a half before when the representation began. Following meetings and various written assessments and mental health inventories completed by Movant, the expert produced a draft report. The report was based on those meetings and exams, on Movant's psychiatric records, and on case and discovery materials reviewed by the expert. The expert report concluded that the Movant's alleged conduct was clearly caused by serious mental illness. Upon reviewing the report with Movant, Movant's attorneys opined that the expert report was in effect *too* good, and too absolving of Movant's criminal responsibility. Counsel expressed concern that it was dissonant with the overall message of Movant accepting criminal responsibility for the alleged conduct. They asked the expert to revise the report and "tone down" such language as a passage stating that Movant: had suffered greatly and was himself a victim in the case.

78. Ultimately, Movant's counsel decided not to submit the expert report at all.

Movant's attorneys told him that the report was just not consistent with him accepting responsibility, since it appeared instead to absolve him. Movant's counsel stated that although such a report might be helpful in the criminal liability phase of a case, it could end up hurting Movant at sentencing. Movant once again deferred to counsel's advice. Movant submits that the choice not to submit an expert report absolving Movant due to his mental illness was consistent with a concern by Movant's counsel that the report could raise questions about why they had not obtained an expert opinion in the first place, and about why they had abandoned an insanity defense.

79.    In their sentencing memoranda and at the sentencing hearing, prosecution attorneys repeatedly highlighted that Movant's counsel had requested a continuance specifically to obtain a forensic examination of Movant, but that Movant had chosen not to submit any expert evidence. The implication was that the presumed evaluation had revealed nothing favorable, and that there must be nothing wrong with Movant's mental health that would bear on his alleged conduct. Accordingly, the prosecution argued Movant should be held fully responsible for his conduct, and that there was no reliable evidence of mitigating mental health circumstances.

80.    Slightly less than a year after sentencing in this matter, Thomas Johnson held a meeting with Movant concerning the charges filed by Solano County. Movant and his family were assessing whether to hire Movant's counsel to represent him in the Solano matter. Movant's counsel stated at this meeting that he believed Movant had a strong mental defense, and that he could overcome most or all of the charges Solano County was bringing against him, which included a kidnapping charge.

81.     Since pleading guilty, Movant has become more familiar with both the law and the psychiatry relating to a not guilty by reason of insanity plea. Many of his psychiatric symptoms have gone into remission or become better-controlled by medication, allowing Movant more accurate insight into his current and past mental states. Based upon his research and knowledge of relevant facts, Movant submits he would have had a very strong insanity defense to the charge in this case. Had Movant's family (who were acting as Movant's de facto conservator given his then-poor health) known of the strength of this legal defense, they would have prevented Movant from pleading guilty under the offered terms. Had Movant insisted on pleading guilty despite having a strong defense, they would likely have concluded Movant's judgment was compromised by mental illness, and would have requested a competency evaluation or otherwise intervened.

82.     Movant submits that counsel also failed to take steps to assert applicable rights and obtain appropriate remedies in connection with all previously asserted grounds for relief in this motion, except grounds one and seven.

83.     To wit, Movant's attorney failed to investigate and obtain evidence of authorities' warrantless searches of his electronic devices (other than the first warrantless search by Dublin Police Services) and to file motions to suppress relating to these unlawful searches.

84.     Movant's counsel also failed to advise him of the existence of, and his eligibility for, government-funded experts and investigators in his case, pursuant to 18 U.S.C. §3006(a). Movant was of the belief that any experts or investigators used in his case would necessarily have to be paid for by his family. Movant repeatedly expressed to his

attorney that he felt deeply guilty and ashamed that his family had to pay for his legal defense. Movant agreed that he should be examined by a forensic psychological expert. But he expressed concern over the cost when his attorney suggested retaining a cellular phone expert to testify in relation to Movant's motion to suppress. Had he known it was possible to obtain litigation expenses through public funds, Movant would have insisted on expert testimony in his case. This would have included a computer forensics expert to investigate and prove that authorities had accessed various electronic devices of Movant before obtaining proper authorization to do so. This analysis in turn would have been the basis of motions to suppress key evidence in Movant's case.

85.     On information and belief, Movant's counsel failed to timely communicate to him a plea offer more favorable than that ultimately accepted by-the Movant. The prosecution offered a plea agreement in which it would recommend a sentence of 32 years and also include and bind the Solano County District Attorney's Office in the same agreement not to bring any charges against Movant. By the time this offer was communicated to Movant, it had been withdrawn by prosecutors. Based on the fact that he ultimately accepted a plea agreement under less favorable terms, Movant submits that he would have accepted the better plea agreement had it been timely communicated to him by counsel.

86.     Movant's counsel failed to object to statements in the presentence report that were inaccurate. When reviewing the draft report, Movant expressed to counsel that various facts were incorrect. His attorneys stated that he could raise those matters in his objections, but that ultimately it would be up to the probation. officer what to include in

her report. Upon reviewing objections his attorneys submitted to the probation officer, Movant saw that some of the matters he had discussed with his attorneys were raised and some were not. The omitted matters were not raised in objections to the final presentence report.

### Thirteenth Ground for Relief:

### Plea Agreement and Plea Not Knowing, Intelligent and Voluntary

87.    Movant incorporates all preceding paragraphs as if fully set forth herein.

88.    At the time he pleaded guilty, Movant was suffering a severe depressive episode, including suicidal ideation with specific plans to take his own life, anxiety attacks, sleep disturbances and pervasive thoughts of guilt, of hopelessness, of pointlessness and of no future, among other psychiatric symptoms. Movant's poor mental health was exacerbated by being locked down in solitary confinement for the preceding year an average of 23.6 hours a day, with no more than four periods of recreation in an enclosed area during that entire year.

89.    On information and belief, the Court ascertained a partial report of Movant's symptoms and the medications he was taking to address them. The Court did not rely upon the Movant's medical records or any expert report on his psychological health. Instead, it relied upon Movant's own self-report of some symptoms and his subjective perception and beliefs about whether he was competent to plead guilty. This questioning of Movant relied upon an incorrect assumption that Movant had adequate insight into his own mental health and the effects of the multiple psychotropic medications he was taking. The Court further assumed that Movant would be able to freely discuss his acute

psychiatric symptoms—symptoms most patients would find highly personal and embarrassing—in open court and in front of a large media presence.

90.     Movant submits that due to the above symptoms and circumstances, his guilty plea was not knowing, intelligent and voluntary.

91.     Movant's guilty plea was also strongly influenced by the ineffective assistance of counsel alleged under the previous ground. As a result of counsel's poor performance, Movant entered the plea bargain process in a far worse position than he would have had he received adequate representation. Had he been in this better bargaining position and been aware of all relevant. factual and legal circumstances, Movant likely would not have pleaded guilty.

92.     In addition, whether or not Movant's psychiatric illness rendered him incompetent to plead guilty, it did interact with other factors in his case to deprive him of protections and rights to which he was entitled under the Constitution and U.S. statutes, including but not limited to the Rehabilitation and Americans With Disabilities Acts. For example, Movant was especially susceptible to accepting erroneous legal advice from his attorney due to his compromised mental state. Although he had been previously licensed to practice law, Movant conducted no legal research of his own while incarcerated at the Sacramento County Jail. By contrast, during a period of temporarily improved mental health while in custody in Alameda County—before Movant had lapsed into a depressive episode—Movant requested multiple legal materials from his attorneys concerning his state charges and sent his attorneys a detailed legal memorandum to assist them in filing a pretrial motion.

## Fourteenth Ground for Relief:

### Sentence Enhanced Based on Facts
### Not Admitted or Found by a Jury Beyond a Reasonable Doubt

93.    Movant incorporates all preceding paragraphs as if fully set forth herein.

94.    Movant submits that his sentence was enhanced based upon alleged facts and conduct that was not admitted in the factual basis of his plea agreement, nor found beyond a reasonable doubt by a jury. Movant submits that such enhancements are in effect an end-run around his fundamental trial rights, and amounted to punishment for crimes with which Movant was never charged.

95.    Movant submits that all enhancements applied to him that were not necessarily part of an essential element of the charged offense were imposed in violation of Movant's constitutional rights under the Fifth and Sixth Amendments.

## **CONCLUSION**

WHEREFORE Movant respectfully requests that the Court:

(1) Vacate his conviction and sentence in this matter;

(2) Set aside Movant's guilty plea and all purported waivers of trial rights by Movant;

(3) Order Respondent to preserve all evidence relating to the Movant's claims herein; and

(4) Grant such other relief as the Court deems appropriate.

Respectfully submitted this eleventh day of November, 2018.

Signed: _____

Matthew Muller
Pro Se