MATTHEW D. MULLER
1684 Decoto Rd. #274
Union City, CA 94587
(415) 322-0492
matt@projectjusticeforall.org

*In Pro Se*



**FILED**

AUG 2 1 2019

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Respondent,<br><br>v.<br><br>MATTHEW D. MULLER,<br><br>Movant. | No. 2:15-cr-00205-TLN-EFB<br><br>**MOVANT'S EMERGENCY MOTION FOR STAY OF 180 DAYS; IN THE ALTERNATIVE, MOVANT'S NOTICE OF WITHDRAWAL OF INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM AND REVOCATION OF ANY IMPLIED WAIVER OF PRIVILEGE (VERIFIED)** |

COMES NOW the Movant Matthew Muller and requests that the Court stay these proceedings for a period of 180 days. This motion is filed appurtenant to Movant's concurrently filed response to the magistrate judge's findings and recommendations (ECF 108). Should the Court grant a stay in response to that motion, this motion may be denied as moot.

Emergency disposition of this motion is required due to the irreparable harm to Mr. Muller state defense should privileged information be disclosed. This Court has set a deadline of August 30, 2019, by which trial counsel is to file an affidavit that likely includes privileged material. Movant requests to shorten time, with any opposition filed on or before August 27, 2019, and the matter submitted thereafter.

1   In the alternative to emergency disposition of the stay request, Movant requests that the
2   Court extend the time by which trial counsel is to submit an affidavit to and including September
3   30, 2019.

## I.   INTRODUCTION

Dustin Gordon — Movant's appointed state defense counsel and also a member of this Court's bar — made an unequivocal, sworn statement: absent a stay in this matter, his defense of Mr. Muller will be irreparably harmed. Accordingly, Mr. Gordon "request[s] that the Court grant Mr. Muller to stay" these proceedings (ECF 104 at 13-14).

Therefore, the Movant respectfully requests a stay of at least 180 days. If a stay is denied, or the Court has not acted upon this motion on or before August 29, 2019, the Movant withdraws his ineffective assistance of counsel claims, respectfully objecting under the Fifth and Sixth Amendments and under the Suspension Clause. In that event, Movant also expressly revokes any implied waiver of privilege. He objects, and instructs Thomas Johnson and Kristy Horton to object, to the filing of any manner of privileged or confidential material in this case, by any person. Prosecutors have most recently filed and made public a series of e-mails containing confidential negotiations entered into in good faith during the trial phase of this matter (*see* ECF 113 and attachments). Such careless disclosures are complicating Mr. Muller's state defense and entangling the state and federal proceedings in the way Movant has sought to avoid. They further show the need for a stay.

## II.   PROCEDURAL HISTORY

In the motion now pending appurtenant to this motion (ECF 104), the government submitted its opposition (ECF 107) to the Movant's motion for stay on July 31, 2019. The Movant timely filed a reply (ECF 109) that was entered on the docket on August 7, 2019. However, it appears that reply was not read or considered prior to issuance of the findings and recommendations (ECF 108).[1] That reply proposed a fixed stay of 180 days in response to the

---

[1] The Movant respectfully objects to L.R. 230(l). It is not reasonable to expect an incarcerated pro se litigation to file a reply "not more than seven (7) days after the opposition has been filed in CM/ECF." The Movant did so only with great difficulty, by dictating a reply for filing by a family member who as monitoring the online docket. Even with these measures, his reply arrived too late to be considered.

government's objection to an indefinite abeyance and its proposal of a 45-day stay.

The instant motion is submitted in order to ensure consideration of the Movant's request for a fixed 180-day stay. He believes this will be sufficient period either for state proceedings to conclude or for him to sufficiently address and mitigate prejudice to those proceedings. The state matter was scheduled for trial on April 9, 2019. The Movant has been prepared to proceed, but requested the trial date be vacated after he learned of extensive fraud in the investigation and prosecution of his case. Mr. Muller expects that matter will be addressed such that trial can proceed within 180 days. He further states that proof of facts relevant to this matter will be developed in that period.

## III.  OFFER OF PROOF AND CONSTRAINTS ON MOVANT

The Movant makes an offer of proof as to all factual assertions included in the instant filling, in his adjacent motion to hold proceedings in abeyance (ECF 104), and in his reply to the government's opposition to that motion (ECF 109). The Movant incorporates all factual assertions in the above filings as if fully set forth herein, and reaffirms that the assertions are sworn to under penalty of perjury.

The remainder of the instant motion duplicates material from the adjacent motion for stay (*see* ECF 104, 108, 109).

The Movant is litigating under severe constraints arising from his incarceration, from his inability to afford counsel, and from his unsuccessful requests for appointed counsel in this matter. These constraints require explanation to understand their extent. Seemingly simple tasks, such as filing papers with requests to seal, are the work of weeks and hundreds of dollars for the Movant and his family. The Movant has sought special permission, but his detention facility has maintained that he may not confidentially receive or send documents to family members who assist with these filings.

To meet the facility's policy requirements, the Movant's spouse has had to retain a licensed investigator for the simple task of exchanging confidential documents. *See* Exhibit A (retainer). Each visit costs $200 or more and must be scheduled roughly one week in advance. This greatly complicates the timely receiving, providing or review of confidential documents without vitiating

1  confidentiality.

2      Some evidence the Movant would submit in support of his motion is not only confidential,
3  but also under seal of the state court. This includes excerpts of an unreleased manuscript and book
4  deal by Aaron Quinn and Denise Huskins containing relevant information. It takes weeks to move,
5  through state counsel, for modification of a protective order — especially if the motion is
6  contested. Urgent demands in this case force the Movant to consider whether to file sealed material
7  and risk contempt in his state case, in order to avoid irreparable injury in this case he may suffer
8  if he does not meet this Court's evidentiary requirements.

9      Nonconfidential mail delivery at the Movant's facility takes 7-9 days in each direction, and
10  is needed to provide typed filings. Handwritten fillings are no faster. It takes up to a week to
11  submit and receive back copies made by the jail, and some exhibits the Movant still must obtain
12  from outside the facility. Filings sent directly to the Court take a week or more to arrive. One
13  urgent filing Mr. Muller assisted an inmate with took 13 day to arrive at this Court by mail.

14      Further, the Movant is allowed to received only five sheets per envelope sent to him. A
15  recent sending had to be divided into almost 50 envelopes. *See* Exhibit B (photograph of envelopes
16  sent). Research is similarly limited by the jail's research paging system. Request take
17  approximately seven days to fulfill. The effect is like using an electronic research service with
18  one week between click. The Movant's attempts to work more quickly using unskilled research
19  by his family have resulted in his inadvertently relying on overruled cases or dissenting opinions,
20  which mistakes have been quickly seized upon by prosecutors. *See* ECF 85. The Movant was also
21  unable to obtain and respond to unpublished decisions cited and adopted as grounds for the
22  dismissal of most of his claims. *See* ECF 65, 91.

23      Also due to short timeframes Movant must meet, his spouse must almost daily generate
24  PACER docket reports. Absent that, the Movant cannot meet deadlines such as the L.R. 230 (*l*)
25  seven day reply deadline that runs from the time "the opposition has been filed in CM/ECF."
26  Absent PACER access, seven days would not even be sufficient time for Movant to receive an
27  opposition by mail, much less file a reply. The Movant has requested and been denied permission
28  to file documents electronically via his spouse. This has resulted in hundreds of dollars of

1 overnight mailing expenses, in addition to the expense of monitoring PACER. *See* Exhibit C

2 (PACER bill). Sometimes even express mail is not sufficient to meet short deadlines. The instant

3 filing was made by means of the Movant's spouse driving to and from court, totaling five hours of

4 her time plus the time taken to file with the clerk.

5 The constraints Movant faces stand in stark contrast to the expansive capabilities available

6 to prosecutors. Most recently, they have dispatched FBI agents to U.S. Penitentiary Tucson to

7 question inmate about the Movant and this case. One inmate stated through a family member that

8 he and others felt pressured by prison officials to make derogatory statements, and that officials

9 were searching for an inmate who would be willing make such statements.

10 Last year, less than two weeks after this Court and prosecutors received the Movant's

11 postconviction petition, the Movant was charged falsely with a highest severity disciplinary

12 offense. He was detained from the general prison population, and then locked down with inmates

13 intentionally chosen because of their known dangerousness. The Movant was beaten, raped,

14 denied access to report the rape outside the facility, and refused access to an attorney hired by his

15 family until she threatened to sue. Mr. Muller has since learned that prosecutors were in touch

16 with prison officials in that time frame. The Movant thinks it unlikely that prosecutors specifically

17 intended that the Movant be beaten and raped. But the Movant's false disciplinary charge and

18 detention did coincide with the threat that prosecutors' case would unravel, and extensive illegal

19 conduct by state and federal authorities come to light. It is not implausible that prosecutors

20 informed prison officials of the problems Mr. Muller's petition could cause, and left them with the

21 impression that the prosecution would not be overmuch concerned with any adversities that befell

22 the Movant as he pursued this petition.

23 And indeed Mr. Muller's ability to pursue this petition was crippled in the aftermath of the

24 restrictive detention and the attacks. He continues to be affected. Whether or not prosecutors had

25 anything to do with the incident, its fallout is associated in the Movant's mind with this petition

26 — an association he cannot choose to shut off to avoid its effects.

27 The Court will certainly require evidence of Mr. Muller's assertions relevant to this

28 challenge. And the Movant will provide it. He must have a genuine chance to do so. The Movant

therefore requests that the Court either state that it is taking the Movant's assertions as true for purposes of any adverse ruling, or provide Mr. Muller a meaningful opportunity to establish the truth of his statements — either through evidentiary proceedings in this matter, or by staying this petition for at least 180 days while necessary proof is developed in the state proceedings.

## IV.    RESPONSE TO FINDINGS AND RECOMMENDATIONS

### A.    The Movant Has Been And Will Continue To Be Constrained From Directly Addressing The Facts Underlying His Conviction, When Those Facts Are Very Much In Issue

This petition was filed in response to state charges brought to build on a 40-year sentence that the Movant was unlikely to outlive. Prosecutors announced state charges exactly one year after the Movant's federal sentencing — the very day that they incorrectly believed the Movant's right to challenge his federal conviction had expired. No challenge had yet been brought when charges were announced. The Movant quickly prepared and filed a last-minute petition on the actual last day his challenge would be timely. Succinctly stated, it was not the Movant who first changed the status quo.

Prosecutors waited until they believed the Movant's 40-year sentence was unchallengeable, so that he would simply plead guilty to charges unlikely to extend his actual time in prison. They had good reason to avoid a vigorous defense. The factual basis for the Movant's guilty plea is fatally false, and the case against him was riddled with illegal conduct by state and federal authorities. Upon regaining his health after nearly two years of crushing "total separation" confinement, the Movant chose to accept a 40-year sentence and to dedicate himself to helping other wrongfully convicted prisoners. Prosecutors did not leave the Movant alone to do this work. He now seeks a fair opportunity to litigate both the state charges and the federal challenge they prompted.

With state charges pending, the Movant has been constrained from the outset in this petition. He is unable to directly address the facts without hazarding both a loss of rights and strategic disadvantages in his state case. As a result, it may appear this challenge concerns only procedural defects and mental defenses, with little to say about the facts or the fundamental fairness of the

1    proceedings. As prosecutors know, this is not so.

2    This has been an embarrassing case for the government — one they hope to end quickly
3    before further embarrassment ensues. Beginning from when they blamed and then nearly charged
4    the victims, prosecutors have relied on tropes and suspicions to obtain their desired results. Their
5    most recent trope was the familiar one of a serial rapist acting alone to kidnap a woman and sexually
6    assault her. In opposing a stay, prosecutors aim to push through this proceeding before their false
7    narrative unravels.

8    It is already too late, as Movant can establish without making statements himself. Testifying
9    at the state preliminary hearing, the victims themselves eviscerated the false story on which the
10   Movant's conviction rests. *See* Exhibit D (excerpts from hearing transcript[2]). They attested to the
11   same facts they gave prosecutors from the outset: there were multiple kidnappers. There were
12   myriad details inconsistent with a kidnapping for sexual or financial motives. There were
13   indications one kidnapper was acting under duress of threats to his family. Prosecutors paved over
14   the evidence, casting inconvenient facts as either bizarre nothings or the work of a prescient
15   mastermind aiming to frustrate prosecutors' preferred story.

16   The Movant does wish to address the facts, but does not wish to aid prosecutors in crafting
17   their next story. Currently, the state proceedings are the proper venue in which to develop those
18   facts without prejudice to the Movant's trial rights. The outcome of those proceedings can then
19   inform questions in these, such as why the Movant's conviction rests on a patently false basis.

20   **B.    State Counsel Dustin Gordon — Also A Member Of This Court's Bar — Has**
21          **Sworn That Absent A Stay, His Defense Of Mr. Muller Will Be Prejudiced And**
          **The Attorney-Client Relationship Impaired**
22

23   Dustin Gordon represents the Movant in state criminal proceedings and is also admitted to
24   practice before this Court. He has submitted a declaration that is not only a representation of an
25   officer of this Court, but also sworn to under penalty of perjury. Mr. Gordon stated that continued
26   proceedings in this matter would interfere with the state case and impair his ability to represent the

27   _____

28   [2] The transcript contains a notice that it is not to be reproduced, but it is not under seal. In any event, Movant is
     making only a minimal disclosure of one percipient report.

1 Movant. *See* ECF 104 at 13-14.

2     Mr. Gordon directly requested that the Court grant a stay. *Id.* He advised that defending
3 state charges while being required to proceed in this matter creates an "untenable position" for the
4 defense and will "impinge upon the attorney client relationship in the state case." *Id.* Mr. Gordon
5 stated that under California caselaw, Mr. Muller hazards the loss of Fifth Amendment rights if he
6 must proceed without a stay. *Id.* State counsel further specified that "[t]his is not a situation where
7 a protective order is sufficient to guard against the potential harm to Mr. Muller." *Id.*

8     Mr. Gordon's opinion is based on his state and federal legal experience, which has included
9 a staff attorney position in the U.S. Court of Appeals screening postconviction appeals. It is further
10 based on his knowledge of Mr. Muller's state case and his review of documents in this matter. *Id.*
11 It is not reasonable to expect Mr. Gordon to disclose strategic information or the details of his
12 defense. Mr. Gordon's professional representations made under penalty of perjury are sufficient to
13 inform the Court that continued proceedings in this matter will interfere with the state defense.

14     **C.    Caselaw Militates the Grant Of A Stay When Necessary To Protect A Habeas**
15         **Petitioner's Rights**

16     The magistrate's findings cite cases stating that habeas corpus proceedings should allow
17 timely vindication of petitioners' rights. In both cases cited, prosecutors sought indefinite stays of
18 petitions where such stays would cause the continued imprisonment of petitioners who might
19 otherwise be freed. *See* ECF 108 (citing *Yong v. I.N.S.*, 208 F.3d 1116 (9th Cir. 2000) and *Savage*
20 *v. United States*, 225 F.Supp. 3d 1150 (C.D. Cal. 2016)). The principles enunciated in those
21 decisions militate in favor of a stay in the Movant's case. The *Yong* court emphasized that "habeas
22 proceedings implicate special considerations," and that particularly in stay requests involving a
23 "significant burden" on the rights of a petitioner, "special solicitude is required." 208 F. 3d at 1120-
24 21. Proceeding in a manner that prejudices the rights of habeas petitioners "threatens to create the
25 perception that courts are more concerned with effective trial management than with vindication of
26 constitutional rights." *Id.* The *Savage* court stated that "this Court must take a dim view" of stay
27 decisions that impinge on petitioners' rights, which in that case involved a threat that the petitioner
28 would suffer unnecessary and unjustified detention if the government's stay request were granted.

Another case denying the prosecution's stay request observed that "[t]he writ of habeas corpus...

is reduced to a sham" when stay requests are adjudicated without due regard for petitioners' rights.

*McPeters v. United States*, 220 F.Supp. 3d 1024, 1033 (C.D. Cal. 2016) (quotations omitted). In

short, this line of cases denying prosecution stay requests establishes a shield for habeas petitioners'

rights, not a sword to cut down their stay requests when protection of their rights favors such a stay.

As the Movant's state counsel has observed, the Movant is now in the "untenable position"

of being required to either sacrifice a crucial postconviction claim or hazard prejudice to his state

defense. "[W]e find it intolerable that one constitutional right should have to be surrendered in

order to assert another." *Simmons v. United States*, 390 U.S. 377. 394 (1968); *see also California

v. Trombetta*, 467 U.S. 479, 485 (1984) (due process requires that criminal proceedings "comport

with prevailing notions of fundamental fairness"). Courts have granted stay requests such as the

Movant's where practitioners similarly "are faced with a catch-22," *Purvis v. United States*, 662 F.

3d 939, 943 (7th Cir. 2011), of a sort that imposes "the risk of forever losing their opportunity for

any federal review." *Rhines v. Weber*, 544 U.S. 269, 275 (2005) (granting a stay in such a situation,

as was done in Purvis as well). Absent a stay, the Movant's right to a meaningful postconviction

challenge and his Fifth and Sixth Amendment rights in the state proceedings are places on a

collision course. The Movant should not be required to surrender his right to a habeas petition and

to effective assistance of counsel in order to protect his trial rights in the state proceeding. Such a

result is easily avoided by the grant of a stay.

**D.** **The Movant Has Set Forth Specific Ways In Which His State Case Will Be Prejudiced Absent A Stay**

The Movant has provided a six-page explanation of the ways in which continued

proceedings in this matter will harm his state defense. ECF 104 at 4-9. That explanation was

specific, was evidentiary as a certified motion, and supported its assertions of prejudice with

citations to both federal and California law. As in the case for state counsel, it is unreasonable to

expect the Movant to expose specific details of his defense and risk bringing about the very

prejudice that his stay request seeks to avoid. The magistrate judge suggests that Mr. Muller lay

out his state defense under seal. As detailed in a separate motion for appointment of counsel (made

1  in the alternative to this stay request), it is the work of weeks for Mr. Muller to prepare filings
2  together with a request to seal. The Movant is unable to confidentially transmit sensitive materials
3  into or out of the facility where he is detained without special and expensive arrangements. He has
4  been forced to retain a licensed investigator for the simple task of bringing documents to and from
5  the facility, due to restrictive jail policies. Although it may appear from his filings that the Movant
6  can readily submit reasonably competent filings, this is done with great difficulty, with undue
7  expense, and at a pace far slower than what is possible for an unincarcerated litigant.

8      **E.    A Protective Order Will Not Cure The Prejudice To The Movant's State**
9             **Proceedings, Which Prejudice Has Already Started To Accrue**

10     State counsel has declared based on his knowledge of the Movant's case that a protective
11  order will not avoid prejudice to the defense of the state charges. ECF 104 at 13-14. It is not
12  possible to anticipate what specifically state prosecutors may seek to admit or how a state court
13  will rule. The exact manifestation of harm to the state defense is inherently and unavoidably
14  speculative. It is not unreasonable to expect Movant or state counsel to anticipate and then disclose
15  specific possibilities.

16     The government's filings have already created unanticipated problems for the state defense.
17  In its most recent submission federal prosecutors disclosed in a public filing a series of e-mail
18  negotiations from the Movant's former attorney. *See* ECF 113. At a minimum, trial counsel's
19  external written communications about the case constitute attorney work product. *See Hickman v.*
20  *Taylor*, 329 U.S. 495, 67 S.Ct. 385,393 (1947) (attorney work product "is reflected, of course, in
21  … correspondence"); *BP Alaska v. Superior Court*, 245 Cal. Rptr. 682, 199 Cal. App 3d 1240,
22  1254-56 (Cal. App. 1996) (work product includes correspondence to third parties, including
23  "interested" third parties).

24     Broadly speaking, it is poor form to weaponize a litigant's good faith efforts to negotiate,
25  as the government has done here. The crux of prosecutors' public filing and work product
26  disclosure is that the Movant's potential mental defense was so weak that his own attorney felt that
27  a 40-year effective life sentence was a better deal than what his client could expect at trial. If these
28  disclosures were introduced against the Movant in his state case, he would then have to address and

1    document their true context arising from trial counsel's blunder and attempt to cover it up. These

2    proceedings already threaten to embed and entangle themselves with the state case. The Movant

3    did not anticipate this complication, and prosecutors made their disclosure of negotiations and work

4    product without regard to its effect on state proceedings.

5    Federal courts are not the arbiters of admissibility or privilege waivers in state court

6    proceedings. This Court's Rules expressly provide that "[a] protective order is entered without

7    prejudice to any rulings made in a different lawsuit or dispute, and the determination in an action

8    in this Court does not bind other courts." L.R. 141.1 (a)(2) (emphasis added); *see also* L.R. 141.1

9    (f) (the Court generally does not maintain jurisdiction to enforce a protective order after the

10   underlying action is closed by the clerk).

11   The Movant cannot rely in his state proceedings on a protective order from this Court.

12   Neither is he confidence relying on prosecutors who have already released sensitive materials, and

13   who may have committed serious misconduct in the course of this matter. *See, e.g.*, ECF 101 at

14   20-21, 30-38 (detailing how prosecutors appear to have intercepted and stolen a letter from Movant

15   to his parents sent shortly after Movant's guilty plea; in the letter, the Movant discloses that he is

16   suffering from cognitive difficulties and that he pleaded guilty despite not being guilty; the letter

17   never reached the Movant's parents and apparently was lent by prosecutors to trial counsel in aid

18   of their coordinated effort to defeat this petition).

19

20   **III.   CONCLUSION**

21   WHEREFORE the Movant requests that the Court order a 180-day stay of any further

22   filings or proceedings in this matter. Should a stay be denied, the Movant withdraws his ineffective

23   assistance of counsel claims under objection and will proceed only on the issue of the validity of

24   his guilty plea, without regard to whether or not trial counsel performed competently in relation to

25   that plea. Should a stay be denied, Movant further withdraws any implied waiver of privilege,

26   objects to the disclosure of privileged material by any means, and requests that the Court vacate the

27   order requiring trial counsel to file an affidavit. Should the Court still require such an affidavit, the

28   Movant requests an opportunity to negotiate and file for an *ex ante* protective order.

1                                      Respectfully submitted,

2

3    Dated: August 20, 2019                Signed:

4                                             Matthew D. Muller

5

6

7                               **VERIFICATION**

8           I declare under penalty of perjury of the laws of the State of California that the

9    foregoing is true and correct. Done this twenty day of August, 2019, in Fairfield, California.

10

11

12                                  Signed:

13                                       Matthew D. Muller

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit A

# *Hicks Investigations*

Licensed Private Investigator

P.O. Box 5175
Vallejo, CA 94591-0517
(707) 648-1594
(707) 864-8139 Fax
Email: tjhicks44@sbcglobal.net
Lic. #AQ009380



## **Retainer Fee Agreement And Receipt**

Date: 6/27/19

Hicks Investigations, hereby acknowledges receipt of a retainer fee of $1,000 from the Client

Matthew D. Muller, and agrees to provide the service and assistance of the case related matters.

T.J. Hicks

Exhibit B



Exhibit C

 **PACER**
Public Access to Court Electronic Records

**INVOICE**

Invoice Date: 07/08/2019
Usage From: 04/01/2019    to: 06/30/2019

## Account Summary

| | |
|---|---|
| **Pages:** | 1,004 |
| Rate: | $0.10 |
| Subtotal: | $100.40 |
| **Audio Files:** | 0 |
| Rate: | $2.40 |
| Subtotal: | $0.00 |
| **Current Billed Usage:** | $100.40 |
| **Previous Balance:** | $0.00 |
| Current Balance: | **$100.40** |

| | |
|---|---|
| **Account #:** | 5483358 |
| **Invoice #:** | 5483358-Q22019 |
| **Due Date:** | 08/09/2019 |
| **Amount Due:** | $100.40 |

### Contact Us

San Antonio: (210) 301-6440
Toll Free: (800) 676-6856
Hours: 8 am - 6 pm CT M-F
pacer@psc.uscourts.gov

See pacer.gov/billing for detailed billing transactions, instructions for disputing transactions, FAQs, and more.

It's quick and easy to pay your bill online with a credit card. Visit the **Manage My Account** section of the PACER Service Center website at pacer.gov.

The PACER Federal Tax ID is:
**74-2747938**

Questions about the invoice?
Visit **pacer.gov/billing**

**Total Amount Due:**  $100.40

### Eight More Courts Convert to NextGen CM/ECF

During the second quarter of 2019, eight more courts implemented the next generation case management/electronic case files (NextGen CM/ECF) system. To date, 53 courts have converted, and more will follow in the coming months. For more information and updates on NextGen conversion, please continue to check your court's website. Below is a list of the most recent NextGen courts:

· Wisconsin Eastern District Court
· Georgia Northern District Court
· North Carolina Eastern Bankruptcy Court
· Georgia Middle District Court
· Missouri Eastern District Court
· Indiana Northern Bankruptcy Court
· Colorado Bankruptcy Court
· New York Western Bankruptcy Court

*Please detach the coupon below and return with your payment.* **Thank you!**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

 **PACER**
Public Access to Court Electronic Records

| Account # | Due Date | Amount Due |
|---|---|---|
| 5483358 | 08/09/2019 | Auto Bill |

Do not send cash. Make checks or money orders drawn on a U.S. Bank in U.S. dollars payable to: PACER Service Center. Include your account ID on the check or money order.

This account is registered for automatic billing. The total amount due, $100.40, will be charged to the credit card on file up to 7 days before the due date.
Charges will appear on your credit card statement as: PACER 800-676-6856 IR.

*Visit pacer.gov for address changes.*

Huei Dai

U.S. Courts: PACER
P.O. Box 5208
Portland, OR 97208-5208

Exhibit D

1    IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

2             IN AND FOR THE COUNTY OF SOLANO

3                      ---o0o---

4    THE PEOPLE OF THE STATE OF          )              COPY
     CALIFORNIA,                         )
5                                        )
                    Plaintiff,           )
6                                        )
         vs.                             )        No. VCR231350
7                                        )
     MATTHEW DANIEL MULLER,              )
8                                        )
                    Defendant.           )
9    _____)

10

11                     ---o0o---

12    REPORTER'S TRANSCRIPT OF PRELIMINARY EXAMINATION

13    Held in the Superior Court, Solano County Superior Court
                District, on Wednesday, February 13, 2019
14

15       Before:  The Honorable TIM P. KAM, Judge thereof.

16

17                     ---o0o---

18

19                      APPEARANCES

20    FOR THE PLAINTIFF:           SHARON HENRY
                                   Deputy District Attorney
21                                 County of Solano
                                   Vallejo, California
22

23    FOR THE DEFENDANT:           MATTHEW MULLER,
                                   (In pro per)
24

25    REPORTED BY:                 KRISTA WRIGHT, CSR #11509

26

27

28

```
 1  ████████████████████████████████████████████████
 2  ████████████████████
 3              (Brief recess taken.)
 4       THE COURT:  We'll resume with the preliminary hearing in
 5  the matter of People versus Muller.  Mr. Muller is present.  The
 6  People are represented.  Our next witness.
 7       MS. HENRY:  Denise Huskins.
 8       THE CLERK:  You do solemnly swear that the testimony you
 9  shall give in this matter will be the truth, the whole truth and
10  nothing but the truth so help you God?
11       THE WITNESS:  I swear.
12       THE CLERK:  Please have a seat.  Please state your full
13  name, spelling both your first and last name.
14       THE WITNESS:  Denise Huskins, D-e-n--i-s-e,
15  H-u-s-k-i-n-s.
16            ████████████    ████████████████████
17            ████████████████    ██
18            ████████████    ████████████████████████████████
19  ████████    ████████████████████████████████████████████████
20  ██████████████████████████████████████████████████████████████
21  ██████████████████████████████████████████████████████████████
22  ██████  ████████████████████████████████████████████████████
23  ██████  ██████████████████████████████████████████████████████
24  ████████████████████████████████████
25                      ████████████████████████
26  ████████████████████████████████████
27  ████████████████
28  ████████████████
```

18  A.  Well, my head was down with my hair covering it because I
19  didn't want the intruders to think I was trying to see their
20  faces.  And as I was walking to the closet I saw two pair of
21  feet to my right at the edge of the bed where the voice was
22  speaking from and where the light was coming from, and I
23  continued walking.  But within a couple steps the cat, our cat,
24  ran across right in front of my feet.  I thought I was going to