McGREGOR W. SCOTT
United States Attorney
MATTHEW D. SEGAL
HEIKO P. COPPOLA
LAURA JEAN BERGER
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone:  (916) 554-2700
Facsimile:  (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO.  2:15-CR-00205-TLN-EFB |
| Plaintiff, | UNITED STATES' MOTION TO DISMISS DEFENDANT'S MOTION UNDER 28 U.S.C. § 2255 |
| v. | |
| MATTHEW D. MULLER, | COURT: Hon. Edmund F. Brennan |
| Defendant. | |

## I.      INTRODUCTION

The United States of America, by and through McGregor W. Scott, United States Attorney, and Matthew D. Segal, Heiko P. Coppola, and Laura Jean Berger, Assistant United States Attorneys, moves to dismiss Matthew D. Muller's motion brought under 28 U.S.C § 2255.  Dkt. 61.  This Court's screening procedures, Dkt. 65, and Muller's withdrawal of the claim of ineffective assistance of counsel, Dkt. 117, leave his sole remaining claim as the voluntary entry of his plea, and he procedurally defaulted on that claim for his failure to file a direct appeal.   Accordingly, his petition should be dismissed.

## II.      FACTUAL AND PROCEDURAL SUMMARY

### A.      Muller Pleaded Guilty to Kidnapping in Violation of 18 U.S.C. § 1201, Via Plea Agreement, Waived His Appellate and Collateral Attack Rights Generally, and Did Not File a Direct Appeal

The United States previously briefed the facts of this case in detail.  *See*. Dkt. 113 at 2-4.  In

summary, Muller concocted an elaborate scheme to kidnap and rape Victim 1, and to conceal his identity in so doing.  He broke into the residence of and violently threatened Victim 1 and Victim 2.  PSR ¶¶ 5, 21.  He blindfolded, restrained, and drugged both victims.  PSR ¶¶ 5, 21.  He moved a drugged and bound Victim 1 to the trunk of Victim 2's car, then to Muller's stolen car, and led Victim 2 to believe that he was being watched and that Victim 1 would be harmed were authorities contacted.  PSR ¶¶ 5, 23.  He brought Victim 1 to his cabin in South Lake Tahoe and held her as his hostage between March 23, 2015 and March 25, 2015, during which period he raped her twice and demanded ransom for her release.  PSR ¶¶ 12, 32, 53-54.  He psychologically manipulated Victim 1 and threatened harm to Victim 1's family if she reported the incident.  PSR ¶¶ 50, 58, 65.  He eventually drove her to Huntington Beach and released her.  PSR ¶ 5.  During the time Muller held Victim 1 hostage, he communicated anonymously with the media and law enforcement through sophisticated emails with metadata removed, posing as a group of numerous people.  PSR ¶¶ 19, 39.

Authorities apprehended Muller in June 2015 when he was identified in a second attempted kidnapping by the victims who fought him off and by the recovery of a cell phone linked to him at that crime scene.  PSR ¶¶ 39-40, 42-43.  The phone led to a search of his South Lake Tahoe cabin where Victim 1 was held hostage and revealed numerous instrumentalities of the kidnapping and rape, including: zip-ties, taped-over swim goggles described by Victim 1, a water pistol made to look like a laser-sighted firearm, and electronic evidence including audio files of Muller's own voice, video recordings of the rapes of Victim 1, drone footage of Victim 1 and Victim 2 in a private moment taken from outside their home, and the emails Muller anonymously sent to the press and law enforcement.  PSR ¶¶ 44-45.

Muller was charged by complaint with Kidnapping in violation of 18 U.S.C. § 1201(a)(1) on June 29, 2015.  Dkt. 1.  On October 1, 2015, the Grand Jury indicted Muller for the same.  Dkt. 12.  The defendant pleaded not guilty.  Dkt. 14.  After a monthslong conversation, the parties reached a plea agreement and finalized the agreement after negotiations.  *See*. Dkt. 113 at 4-6.  The plea agreement included a waiver of collateral attack.  *See*. Dkt. 113 at 6.  On September 29, 2016, the defendant pleaded guilty pursuant to the plea agreement.  Dkt. 39.  In so doing he recited the factual basis for the plea.  Dkt. 39.  The court found the defendant's plea to be voluntary and intelligent.  *Id*.

**B.     Muller Filed Numerous Pleadings and Supplements Alleging Various Claims Via §**
**2255, This Court Screened All but Two, and Muller Withdrew His Ineffective Assistance of**
**Counsel Claim**

The defendant filed a collateral attack on his plea on April 9, 2018.  Dkt. 61.  While the
defendant presented a vast array of claims, this Court screened the majority and ordered the
government's response to two claims: (1) Muller's claim of ineffective assistance of counsel for his
counsel's decision to not file a Rule 12.2 notice of insanity defense thereby rendering counsel's
recommendation of a plea bargain to Muller ineffective and (2) Muller's claim that his plea was not
knowing and voluntary.  Dkt. 65 at 9.  The district court adopted the findings and recommendations.
Dkt. 91.  Muller filed a motion to stay the proceedings on April 17, 2019.  Dkt. 101.  He further filed a
motion to hold the proceedings in abeyance on July 17, 2019.  Dkt. 104.  The government opposed.
Dkt. 107.  The government filed its opposition to the initial collateral attack as ordered by the court on
August 15, 2019.  Dkt. 113.  Muller filed an emergency request to stay the proceedings, coupled with a
withdrawal of his claim of ineffective assistance of counsel and revocation of any implied waiver of
attorney-client privilege, on August 21, 2019.  Dkt. 114.  He filed a separate document formally
withdrawing the ineffective assistance of counsel claim.  Dkt. 117.  He filed a reply to the government's
opposition brief on January 8, 2020.  Dkt. 126.

### III.     ARGUMENT

**A.     The Procedural Default Rule Generally Bars Claims Not Raised on Direct Appeal**
**From Review Under 28 U.S.C. § 2255**

It is well established that claims brought via collateral attack are procedurally barred if those
claims were not first raised on direct appeal.  *Massaro v. United States*, 538 U.S. 500, 504 (2003);
*Murray v. Carrier*, 477 U.S. 478, 490-92 (1986) (applying the procedural bar to collateral attacks of
state convictions).  Sound reasoning informs this philosophy: "[f]ailure to raise a claim on appeal
reduces the finality of appellate proceedings, deprives the appellate court of an opportunity to review
trial error, and 'undercut[s] the State's ability to enforce its procedural rules.'"  *Id*. at 491 (quoting *Engle*
*v. Isaac*, 456 U.S. 107, 134 n.3 (1982)).  Furthermore, the Supreme Court applied this rule to

proceedings under 28 U.S.C. § 2255.[1]  *United States v. Braswell*, 501 F.3d 1147, 1150 (9th Cir. 2007)

(citing *Bousley v. United States*, 523 U.S. 614, 621 (1993)).  Strong policy reasons underlie the

procedural default rule.  "Once the defendant's chance to appeal has been waived or exhausted, . . . we

are entitled to presume he stands fairly and finally convicted, especially when . . . he already has had a

fair opportunity to present his federal claims to a federal forum."  *United States v. Frady*, 456 U.S. 152,

164 (1982).

Only two claims[2] are excluded from the Procedural Default Rule: notably, ineffective assistance

of counsel as held in *Massaro*, 538 U.S. at 509, and lack of subject matter jurisdiction.  *See United*

*States v. Ratigan*, 351 F.3d 957, 962 (9th Cir. 2003) (clarifying that the issue of jurisdiction in the

procedural default context is one of subject-matter jurisdiction, and that a movant must show a "true

jurisdictional question, and not merely one of sufficiency of the government's evidence.").

**B.    Exceptions to the Procedural Default Rule are Few, and Overcoming the Procedural
Default Rule Carries a High Burden**

There are only two ways to overcome the Procedural Default Rule.  First, "[i]f a criminal

defendant could have raised a claim of error on direct appeal but nonetheless failed to do so, he must

demonstrate both cause excusing his procedural default, and prejudice resulting from the claim of error."

*United States v. Johnson*, 988 F.2d 941, 945 (9th Cir. 1993); *see United States v. Frady*, 456 U.S. 152

(1982) (applying the cause and prejudice test to claims brought under § 2255).  Second, he may

demonstrate actual innocence.  In either instance, the threshold showing does not warrant relief; rather,

"[i]t merely allows a federal court to consider the merits of a claim that otherwise would have been

---

[1] A hearing is not required for claims that are procedurally defaulted.  Typically, "a district court must grant a hearing to determine the validity of a petition brought under that section, '[u]nless the motions and the files and records of the case conclusively show that the prisoner is entitled to no relief.'"  *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (quoting 28 U.S.C. § 2255).  Furthermore, "[t]he court may deny a hearing if the petitioner's allegations, viewed against the record, fail to state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal.  To earn the right to a hearing, therefore, Appellant was required to allege specific facts which, if true, would entitle him to relief."  *United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996) (internal quotations and citations omitted).   This reasoning built on the notion that, "[b]are assertions, conclusory in nature, are insufficient to require a hearing."  *United States v. Hearst*, 638 F.2d 1190, 1194 (9th Cir. 1980).
[2] One limited exception noted by the *Bousley* court is that a plea coerced by threats from a government agent is not subject to the Procedural Default Rule.  523 U.S. at 621-22.

procedurally defaulted." *Martinez v. Ryan*, 566 U.S. 1, 17 (2012).

The Ninth Circuit[3] summed up the seminal caselaw as to the cause and prejudice test in *United States v. Braswell*, 501 F.3d 1147 (9th Cir. 2007).  In *Braswell*, a federal defendant brought a constitutional challenge to his conviction by a jury though he failed to do so on direct appeal.  The court emphasized that "'for both federal and state convictions, habeas review is not to substitute for an appeal,'" *id*, at 1150 (quoting *Bousley*, 523 U.S. at 621), and further recited:

> The cause and prejudice test for excusing the failure to raise a claim on direct appeal will apply, for example, where the claim rests upon a new legal or factual basis that was unavailable at the time of direct appeal, or where interference by officials may have prevented the claim from being brought earlier. . . . If a petitioner succeeds in showing cause, the prejudice prong of the test requires demonstrating not merely that the errors . . . at trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.

*Id*. (internal quotations and citations omitted).

Also highly informative is how cause is determined when no claim for ineffective assistance of counsel is at issue.  For instance, the concept of cause is part and parcel with "the dual notion that, absent exceptional circumstances, a defendant is bound by the tactical decisions of competent counsel . . . ." *Reed v. Ross*, 468 U.S. 1, 13 (1984) (analyzing a state habeas petitioner's claim in light of the procedural default rule when counsel failed to raise a constitutional issue on appeal in state court).

The Supreme Court articulated the test for the actual innocence exception.  "In light of new evidence 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'"  *House v. Bell*, 547 U.S. 518, 537 (2006) (quoting *Schlup v. Delo*, 513 U.S. 298, 327).[4]  The Court has also made clear that the actual innocence exception is very limited in its

---

[3] The Ninth Circuit in one instance applied the cause and prejudice test to a claim brought by a defendant that vaguely implied prosecutorial misconduct.  In that light, the court held, "[t]o warrant habeas relief [under cause and prejudice], prosecutorial misconduct must 'so infect [ ] the trial with unfairness as to make the resulting conviction a denial of due process,'" *Ratigan*, 351 F.3d at 964 (quoting *Davis v. Woodford*, 333 F.3d 982, 996 (9th Cir. 2003)).

[4] In *House*, the petitioner was found guilty by a jury of murder, and trial evidence (new DNA evidence and scientific evidence generally) was at issue in the habeas action.  The Court clarified that a reviewing court must consider all of the evidence in question, both old and new, in determining factual innocence.  *House*, 547 U.S. at 538.  As to the standard for actual innocence when a defendant was found guilty by a jury, the Court held, "[w]hen confronted with a challenge based on trial evidence, courts presume the jury resolved evidentiary issues reasonably so long as sufficient evidence supports

application even in habeas proceedings.  In articulating "the avoidance principle," the Court reasoned that a court should first address all nondefaulted claims and grounds to excuse procedural default prior to addressing the actual innocence issue as the Court affirmed with "confidence that, for the most part, victims of a fundamental miscarriage of justice will meet the cause-and-prejudice standard." *Dretke v. Haley*, 541 U.S. 386, 392 (2004) (internal quotation and citation omitted).  Important, too, is that when a court does apply the actual innocence test, overwhelming evidence of the defendant's guilt is a bar to applying the exception.  *See Braswell*, 501 F.3d at 1150.

When the cause and prejudice and the actual innocence tests are at issue in a case where a defendant pleaded guilty, different rules control.  Thankfully, the Supreme Court thoroughly analyzed this issue and others in *Bousley v. United States*, 523 U.S. 614 (1998).  In *Bousley*, the defendant pleaded guilty via a plea agreement in federal court to violations of federal law and, while he sought direct appeal as to some issues, he did not seek direct appeal as to the voluntariness of his plea, which he challenged under Section 2255.  The Court cautioned:

> We have strictly limited the circumstances under which a guilty plea may be attacked on collateral review.  It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.  And even the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review.  Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal.  Indeed, the concern with the finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas.  In this case, petitioner contested his sentence on appeal, but did not challenge the validity of his plea.  In failing to do so, petitioner procedurally defaulted the claim he now presses on us.

*Id*. at 620 (internal quotations and citations omitted).  After finding procedural default, the Court then addressed the cause and prejudice and the actual innocence tests in turn.  First, in analyzing what could amount to cause for failure to bring a voluntariness claim when the plea was assisted by counsel, the Court reasoned that the legal basis of voluntariness was certainly available for appeal, and only if a legal basis "'is so novel that [it] . . . is not reasonably available to counsel'" would it be considered unavailable.  *Id*. at 622 (quoting *Reed*, 468 U.S. at 16); *see also Reed*, 468 U.S. at 17 (a claim is not

_____

the verdict."  *Id*.

1   reasonably available if the Supreme Court decision establishing it (1) explicitly overrules precedent;

2   (2) overturns longstanding and widespread practice which a near-unanimous body of lower court

3   authority has expressly approved; or (3) disapproves a practice the Court arguably sanctioned in prior

4   cases.  Specifically, Bousley argued he was misinformed as to the elements of the offense to which he

5   pleaded.  But the Court was not persuaded that voluntariness generally[5] nor voluntariness in light of

6   whether the defendant was informed properly of the specific elements of the offense was novel and

7   amounted to cause, and accordingly did not analyze whether Bousley suffered any prejudice.  *Id*.  The

8   Court next articulated satisfaction of the actual innocence test in light of the defendant's guilty plea:

9   "if he can establish that the constitutional error in his plea colloquy 'has probably resulted in the

10  conviction of one who is actually innocent.'"  *Id*. at 623 (quoting *Murray v. Carrier*, 478 U.S. at 496).

11  But in order to refute this claim, the government "may present any admissible evidence of petitioner's

12  guilt even if that evidence was not presented during petitioner's plea colloquy and would not have

13  normally been offered . . . ."  *Id*. at 624.

14      **C.      Muller's Sole Remaining Claim of Voluntariness of His Plea is Procedurally
              Defaulted and His Motion Must Be Dismissed**

15

16          **1.      Muller declined to file a direct appeal and withdrew his claim of ineffective
                  assistance of counsel**

17          In his initial motion under Section 2255, the defendant raised numerous claims, but this Court

18  screened all but two: the voluntariness of the plea and ineffective assistance of counsel.  Dkt. 65.  As

19  previously discussed, Muller specifically withdrew his ineffective assistance of counsel claim.  Dkt. 117.

20  Accordingly, the only remaining claim is the voluntariness of the plea.  Given that ineffective assistance

21  of counsel is no longer asserted,[6] this case echoes *Bousley*, and *Bousley* provides guidance specifically

---

22          [5] While the United States contends that voluntariness is no longer at issue as it is procedurally

23  defaulted, "[i]t is well established that a defendant's statements made under oath during the plea
    colloquy are presumed true.  *See Blackledge v. Allison*, 431 U.S. 63, 7374 (1977) ("the representations

24  of the defendant [during a plea colloquy] . . . constitute a formidable barrier in any subsequent collateral
    proceedings.  Solemn declarations in open court carry a strong presumption of verity.").  In fact, the

25  *Bousley* court analyzed voluntariness and intelligence of a plea in its procedural default discussion and
    noted indicia of such a plea in open court, including a defendant being provided a copy of the

26  indictment, being advised by competent counsel, and in control of his mental faculties.  *See Bousley*, 523
    U.S. at 618-19.

27          [6] If Muller still maintained his ineffective assistance of counsel claim, he would likely be able to
    reach the question of voluntariness and survive procedural default because ineffective assistance of

28  counsel is not subject to procedural default requirements.  *See Massaro*, *supra,* 538 U.S. at 509.

applicable.  As in *Bousley*, Muller declined to file a direct appeal raising the voluntariness of his plea.  As in *Bousley*, there is no claim of ineffective assistance of counsel.  As in *Bousley*, Muller pleaded guilty to an offense in federal court and subsequently challenges the voluntariness of that plea pursuant to Section 2255.  Accordingly, the Supreme Court has spoken: "[i]t is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.  And even the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review."  *Bousley*, 523 U.S. at 620. Furthermore, the analysis is incomplete without recalling that a defendant is bound by competent counsel's decision to appeal or not to appeal a claim.  *Reed*, 468 U.S at 13.  As Muller specifically withdrew[7] any claims of ineffective assistance of counsel, he cannot escape from the decisions of counsel.  This precedent is watertight, and it leaves only one conclusion: that Muller's sole claim of voluntariness is procedurally defaulted.

### 2.     Muller cannot meet the cause and prejudice exception

As the claim of voluntariness is procedurally defaulted, this Court should then analyze the claim under the cause and prejudice exception to procedural default.  As in *Bousley*, Muller was instructed by counsel (who Muller no longer alleges was ineffective) during his change of plea.  Dkt. 39.  Counsel also participated in plea negotiations on Muller's behalf.  *See generally* Dkt. 113 at 4-6.  Accordingly, the standard for cause as dictated in *Bousley* applies: that Muller would need to assert a legal basis so novel that it would not have been available to counsel.

Muller cannot meet this standard.  Indeed, voluntariness of any self-incriminatory statement is a cornerstone right protected by the Fifth and Fourteenth Amendments to the United States Constitution.  *See generally Brady v. United States*, 397 U.S. 742, 748 ("Central to the plea and the foundation for entering judgment against the defendant is the defendant's admission in open court that he committed

---

[7] Accordingly, the United States brings this Motion to Dismiss based on procedural default at the first procedural opportunity to do so.  After screening, this Court ordered the United States to include an analysis of the ineffective assistance of counsel claim in its initial response, and Muller maintained the ineffective assistance of counsel claim in his reply to the United States' response.  *See* Dkt. 113.  The United States has therefore complied with the requirements of *United States v. Guess*, 203 F.3d 1143, 1146 (9th Cir. 2000), which describes procedural default as an affirmative defense that the government must assert.

the acts charged in the indictment.  He thus stands as a witness against himself and he is shielded by the Fifth Amendment from being compelled to do so . . . .");  *Miranda v. Arizona*, 384 U.S. 436 (1966) (requiring a voluntary waiver of the right against self-incrimination, among other rights, prior to the use of statements of the arrestee in a prosecution against him).  A claim of an involuntary or unknowing entry of a plea relies on basic principles of fundamental constitutional law and has been recognized for decades in this nation's highest court.  If ever a claim could be characterized as the opposite of novel, it is that of the fundamental right against self-incrimination.  Furthermore, under *Reed v. Ross*, Muller is bound by the decision of his competent counsel to not file a direct appeal on this issue.  Accordingly, Muller cannot meet the cause prong of the cause and prejudice exception, and as in *Bousley*, this court need not analyze whether Muller can meet demonstrate actual prejudice.

### 3.    Muller cannot meet the actual innocence exception

This court should follow the avoidance principle and decline to test Muller's procedurally defaulted claim under the actual innocence exception.  Muller through various filings after his initial petition under Section 2255[8] has attempted to raise and re-raise claims of prosecutorial misconduct, Fourth Amendment violations, collusion between the United States Attorney's Office and local authorities, and even a grand conspiracy to frame him for the acts of jealous ex-lovers.  In short, he has attempted to again raise all of the issues this Court properly screened under the guise of one claim: that of a knowing and voluntary plea.  Facially, these allegations are exactly the types described in *McMullen* and *Hearst*, *supra*, and for the same reasons that they lend credence to a course of action dismissing Muller's petition, they should also not be considered in light of actual innocence as they are simply fictional and, as in *Hearst*, Muller has not even earned the right to have a hearing in which he could raise these claims.

Even if this court analyzes Muller's procedural default in light of the actual innocence exception, this, too, fails.  In the course of the investigation and in the pendency of this case, the United States

---

[8] The United States intends to file an opposition to Muller's Motion for Leave to Amend and Amended Petition and contends that this court should consider only the claims and factual bases for such claims in Muller's initial motion under Section 2255.  Dkt. 61.  However, should this court entertain the contentions in Muller's subsequent filings, the United States proffers the evidence from the Presentence Investigation Report to refute any claims Muller brings, as is its right under *Bousley*.

recovered and the district court reviewed in the Presentence Investigation Report extensive, overwhelming evidence showing Muller's guilt in addition to the heinous facts of the offense generally. Muller was identified as a suspect in this case based on his nighttime burglary of a residence in Dublin, California, during which he violently assaulted the resident and clumsily dropped a cell phone as he fled. Dkt. 51 at 10:39-11:42.  The search of this phone, associated with Muller, led to his South Lake Tahoe cabin which contained extensive evidence including a laptop containing video footage of Muller's rapes of Victim 1, along with extensive indicia that the laptop and all other items in the cabin belonged to Muller.  Dkt. 51 at 11:43 – 12:46.  The Presentence Investigation Report as a whole describes the premeditation, callousness, calculated violence, cruelty, and torture exhibited by and carried out by Muller during this offense and separate instances of conduct.  *See generally* Dkt. 51.  Muller admitted to much of this when he pleaded guilty. Dkt. 39.  He cannot so easily escape the admissions he made during his guilty plea.  "Statements made by a defendant during a guilty plea hearing carry a strong presumption of veracity in subsequent proceedings attacking the plea."  *United States v. Ross*, 511 F.3d 1233, 1236 (9th Cir. 2008).  Any conjured new allegations couched by Muller in light of the extensive and persuasive record in this case are "so palpably incredible or patently frivolous as to warrant summary dismissal."  *McMullen*, 98 F.3d at 1159.

## IV.     CONCLUSION

Muller's withdrawal of his ineffective assistance of counsel claim renders his sole remaining claim of the voluntariness of his plea in procedural default.  He cannot meet the "cause and prejudice" nor the "actual innocence" exceptions to the procedural default rule.  Accordingly, since there is no relief to be granted by this court because his only remaining claim fails, this court should dismiss the defendant's motion brought pursuant to Section 2255.

1    Dated:  May 26, 2020                        McGREGOR W. SCOTT
2                                                United States Attorney

3                                     By:   /s/ LAURA JEAN BERGER
4                                            LAURA JEAN BERGER
                                             Assistant United States Attorney
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO DISMISS                            11