McGREGOR W. SCOTT
United States Attorney
MATTHEW D. SEGAL
HEIKO P. COPPOLA
LAURA JEAN BERGER
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile:  (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> MATTHEW D. MULLER, <br><br> Defendant. | CASE NO. 2:15-CR-00205-TLN-EFB <br><br> UNITED STATES' OPPOSITION TO DEFENDANT'S MOTIONS TO AMEND MOTION AND/OR MOTION SUPPLEMENT PURSUANT TO 28 U.S.C. § 2255 (ECF 131, ECF 141) <br><br> COURT: Hon. Edmund F. Brennan |

## I.  INTRODUCTION

The United States of America, by and through McGregor W. Scott, United States Attorney, and Matthew D. Segal, Heiko P. Coppola, and Laura Jean Berger, Assistant United States Attorneys, opposes Matthew D. Muller's motion to amend his petition brought under 28 U.S.C § 2255. Dkt. 61; *see also* Dkt. 75 and Dkt. 120 (filing initial amended motion pursuant to § 2255 and order granting motion to amend and accepting amended motion, respectively), and his motion to amend the supplement to his petition.  Dkt. 131.  The ends of justice do not require granting any further leave to amend, the claims do not relate back to the initial motion, the claims fail the requirements of notice pleading, the claims are untimely due to unlawful government action as an impediment, and lastly, amount to abuse of the writ of habeas corpus.  Accordingly, his motions should be denied.

## II. FACTUAL AND PROCEDURAL SUMMARY

### A. Muller Pleaded Guilty to Kidnapping in Violation of 18 U.S.C. § 1201, Via Plea Agreement, Waived His Appellate and Collateral Attack Rights Generally, and Did Not File a Direct Appeal

The United States previously briefed the facts of this case in detail. *See*. Dkt. 113 at 2-4. In summary, Muller concocted an elaborate scheme to kidnap and rape Victim 1, and to conceal his identity in so doing. He broke into the residence of and violently threatened Victim 1 and Victim 2. PSR ¶¶ 5, 21. He blindfolded, restrained, and drugged both victims. PSR ¶¶ 5, 21. He moved a drugged and bound Victim 1 to the trunk of Victim 2's car, then to Muller's stolen car, and led Victim 2 to believe that he was being watched and that Victim 1 would be harmed were authorities contacted. PSR ¶¶ 5, 23. He brought Victim 1 to his cabin in South Lake Tahoe and held her as his hostage between March 23, 2015 and March 25, 2015, during which period he raped her twice and demanded ransom for her release. PSR ¶¶ 12, 32, 53-54. He psychologically manipulated Victim 1 and threatened harm to Victim 1's family if she reported the incident. PSR ¶¶ 50, 58, 65. He eventually drove her to Huntington Beach and released her. PSR ¶ 5. During the time Muller held Victim 1 hostage, he communicated anonymously with the media and law enforcement through sophisticated emails with metadata removed, posing as a group of numerous people. PSR ¶¶ 19, 39.

Authorities apprehended Muller in June 2015 when he was identified in a second attempted kidnapping by the victims who fought him off and by the recovery of a cell phone linked to him at that crime scene. PSR ¶¶ 39-40, 42-43. The phone led to a search of his South Lake Tahoe cabin where Victim 1 was held hostage and revealed numerous instrumentalities of the kidnapping and rape, including: zip-ties, taped-over swim goggles described by Victim 1, a water pistol made to look like a laser-sighted firearm, and electronic evidence including audio files of Muller's own voice, video recordings of the rapes of Victim 1, drone footage of Victim 1 and Victim 2 in a private moment taken from outside their home, and the emails Muller anonymously sent to the press and law enforcement. PSR ¶¶ 44-45.

Muller was charged by complaint with Kidnapping in violation of 18 U.S.C. § 1201(a)(1) on June 29, 2015. Dkt. 1. On October 1, 2015, the Grand Jury indicted Muller for the same. Dkt. 12. The

defendant pleaded not guilty.  Dkt. 14.  After a months long conversation, the parties reached a plea agreement and finalized the agreement after negotiations.  *See*. Dkt. 113 at 4-6.  The plea agreement included a waiver of collateral attack.  *See*. Dkt. 113 at 6.  On September 29, 2016, the defendant pleaded guilty pursuant to the plea agreement.  Dkt. 39.  In so doing he recited the factual basis for the plea.  Dkt. 39.  The court found the defendant's plea to be voluntary and intelligent.  *Id*.

### B. Muller Filed Numerous Pleadings and Supplements Alleging Various Claims Via § 2255, This Court Screened All but Two, and Muller Withdrew His Ineffective Assistance of Counsel Claim

The defendant filed a collateral attack on his plea on April 19, 2018.  Dkt. 61.  While the defendant presented a vast array of claims, this Court screened the majority and ordered the government's response to two claims: (1) Muller's claim of ineffective assistance of counsel for his counsel's decision to not file a Rule 12.2 notice of insanity defense thereby rendering counsel's recommendation of a plea bargain to Muller ineffective and (2) Muller's claim that his plea was not knowing and voluntary.  Dkt. 65 at 9.  Muller requested two extensions to respond to this Court's screening: one in August 2018, and one in October 2018.  *See* Dkt. 66, Dkt. 69.  Muller filed his objections to the screening at the same time as his first motion to amend his initial petition, both filed November 13, 2018.  *See* Dkt. 76, Dkt. 75.  Muller also filed at that time a first amended supplement to his petition, *see* dkt. 77, as well as a letter regarding his motion to amend.  Dkt. 78.  He then filed a request for expedited relief in January 2019, *see* dkt. 82, and an emergency motion for disposition, as well as a supplement to the motion, also in January 2019.  *See* Dkt. 86; Dkt. 90.

The district court adopted the findings and recommendations of this Court's screening procedures in March of 2019.  Dkt. 91.  In an abrupt turn from his requests to expedite his proceedings, Muller filed a motion to stay the proceedings on April 17, 2019.  Dkt. 101.  He further filed a motion to hold the proceedings in abeyance on July 17, 2019.  Dkt. 104.  The government opposed.  Dkt. 107.

The government filed its opposition to the initial collateral attack as ordered by the court on August 15, 2019.  Dkt. 113.  Muller filed an emergency request to stay the proceedings, coupled with a withdrawal of his claim of ineffective assistance of counsel and revocation of any implied waiver of attorney-client privilege, on August 21, 2019.  Dkt. 114.  He later filed a separate document formally

OPPOSITION TO MOTIONS TO AMEND                3

withdrawing the ineffective assistance of counsel claim.  Dkt. 117.  He filed three motions for extension of time, one in November 2019, and two additional in January 2020.  *See* Dkt. 122; Dkt. 124; Dkt. 125.  He filed a reply to the government's opposition brief on January 8, 2020.  Dkt. 126.  After filing his reply brief, he then moved to amend the *supplement* to his motion on January 27, 2020.  Dkt. 131.  He filed an amended supplement on the same date.  Dkt. 132.  He presently moves this court yet again for leave to amend his motion, *see* dkt. 142, and provides this Court with yet another amended motion for its consideration.  Dkt. 143.

### III.     ARGUMENT

#### A.     This Court Should Deny Muller's Motion for Leave to Amend and Any Further Motions for Leave to Amend

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs the timing of motions brought under 28 U.S.C. § 2255.  It provides that such a motion must be filed within one year of the finality of the judgment in question.  The Federal Rules of Civil Procedure govern amendments to actions pursuant to 28 U.S.C. § 2255.  28 U.S.C. § 2242 ("[A petition] may be amended or supplemented as provided in the rules of procedure applicable to civil actions,"); *see also* Rules Governing Section 2255 Proceedings (hereinafter "Habeas Rules"), Rule 12 (stating the same).

##### 1.     The Ends of Justice Do Not Require Granting Leave to Amend Because Apparent Reason Exists to Deny Leave

Rule 11 of the Habeas Rules applies Federal Rule of Civil Procedure 15 to requests to amend § 2255 motions.  *Mayle v. Felix*, 545 U.S. 644, 655 (2005).  Importantly, once a responsive pleading is filed, Federal Rule of Civil Procedure 15(a)(2) requires the opposing party's written consent[1] or leave of court for the filing of an amended petition.  Under Federal Rule of Civil Procedure 15, "the grant or denial of an opportunity to amend is within the discretion of the District Court . . . ."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Of course, "leave to amend shall be freely given when justice so requires . . . [and a movant] out to be afforded the opportunity to test his claim on the merits."  *Id*.  However, this is only the case "in the absence of any apparent or declared reason [to deny leave]—such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by

---

[1] The United States explicitly does not consent to any efforts to amend made by Muller.

amendments previously allowed, undue prejudice to the opposing party . . . futility of amendment, etc. . . . ." *Id*. In *United States v. Pinson*, 584 F.3d 972, 977 (10th Cir. 2009), the court held that there was no abuse of discretion when "a district court [] den[ies] leave to amend pleadings due to . . . . futility of the amendment. . . . because Pinson's proposed amendment would only have added further factual support for claims that the district court had already found legally flawed." (citing *Foman*, 371 U.S. at 182) (internal quoations omitted). Furthermore, a petition under § 2255 is ripe for decision once the government's response and the movant's reply, if any, are filed. *See Jaramillo v. United* States, No. CV-19-8017-PCT-SPL, 2020 WL 3001708 at *1 (D. Ariz. May 11, 2020) (slip opinion) (finding that a petition brought under § 2255 was ripe for decision once the government's response and the movant's reply had been filed).

Here, the government's opposition to the original motion—the responsive pleading—has already been filed. *See* Dkt. 113. Muller also already filed his reply to the government's opposition. *See* Dkt. 126. Accordingly, this Court must affirmatively grant leave to amend in order for an amended motion to be considered, as the government does not consent to an amendment. Additionally, as in *Jaramillo*, the petition is ripe for decision on the merits, and given that the proposed amendments still pending before this Court were filed by Muller after his reply, they need not be considered.

However, should this Court wish to consider the motions, this Court should follow the Supreme Court's precedent in *Foman* and determine whether there is an apparent reason to deny leave. The history of delay and bad faith in this case is apparent on its face from the numerous filings alone, as recited in the procedural history of this case *supra*. Muller fluctuates between requesting extensions of time, filing motions to amend either the initial motion or the supplement to that motion, requesting expedited relief and/or emergency disposition, moving this court to stay and/or hold proceedings in abeyance, and then again moving thrice for extensions of time most recently from November 2019 through January 2020. Only at that time did Muller file his substantive reply brief to the government's opposition to his motion on the merits. Lastly, after filing a substantive reply, Muller filed two motions to amend—one to amend a supplement, and another to amend his motion. While at certain junctures the government has also requested extensions, the proceedings in total at this juncture span over two years from the initial filing of the motion pursuant to § 2255. So paramount is the expeditious litigation of

OPPOSITION TO MOTIONS TO AMEND          5

cases that the Federal Rules of Civil Procedure themselves shall be "construed, administered, and employed by the court and the parties to secure just, *speedy*, and inexpensive determination of every action and proceeding." Fed R. Civ. P. 1 (emphasis added).

In the instant case, as in *Pinson*, Muller in his motion to amend his supplement and his motion to amend his merits motion provides wildly vivid factual allegations that arguably relate[2] to claims already screened by this court pursuant to Rule 4. This Court already narrowed the petition to grounds cognizable for relief, and those findings were adopted by the district court. *See* Dkt. 91; *see also* Dkt. 131 at 2-4 (arguing that the question of whether the plea was knowing, intelligent, and voluntary by its nature encompasses "all relevant factual and legal circumstances . . . ." but then demonstrating that the proposed amendments relate to claims already screened out by this Court: specifically, "unlawful searching and warrants," "federal authorities becoming involved in the case and concealing illegal searches," and "failing to make complete disclosures."). The government responded only to those claims remaining after the Rule 4 screening. *See* Dkt. 113. Additionally, Muller further limited the scope of his petition's merits when he withdrew his claim of ineffective assistance of counsel. *See* Dkt. 117. Accordingly, this court should not grant Muller any further leave to amend the pleadings. To further delay[3] would amount to a waste of judicial resources and would not be in the interest of justice when this Court has already screened claims and when the parties have filed their responsive pleadings.

**2.    Muller is Time Barred from Asserting Claims Raised Because the Claims Do Not Relate Back to the Original Pleading, Fail the Requirements of Notice Pleading in the Habeas Context, and Were Not Initially Limited By a Government Impediment**

In *Mayle*, the Court stated, "Rule 15(c)(2) . . . provides that the pleading amendments relate back to the date of the original pleading when the claim asserted in the amended plea 'arose out of the

---

[2] While the facts asserted in the proposed amendments are arguably connected to some of the claims made in Muller's initial filings, this should not be confused with whether the assertions legally relate back to the initial motion, which is a separate question discussed *infra*.

[3] It is likely that delay is exactly what Muller wants, given the pendency of state court proceedings and this Court's denial of Muller's previous request to hold these proceedings in abeyance during the pendency of the state court proceedings. *See* Dkt .104. Any further leave to amend at this point would simply serve to further delay proceedings on the merits, reinforcing that the aim to delay these proceedings further is ample reason to deny leave to amend.

1  conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.'" 545
2  U.S. at 655 (quoting Fed. R. Civ. Pro. 15(c)(2)). Should a claim in an amended pleading not relate back,
3  it is time-barred by the one-year statute of limitations contained in § 2255. *Id*. at 654. The requirement
4  that a claim relate back is required to satisfy the notice pleading requirements for federal habeas actions.
5  "Habeas Corpus Rule 2(c) is more demanding [than notice pleading under ordinary civil proceedings].
6  It provides that the petition 'must specify all grounds for relief available to the petitioner' and 'state the
7  facts supporting each ground.'" *Mayle*, 545 U.S. at 655 (quoting *Conley v. Gibson*, 355 U.S. 41, 47
8  (1957) (overturned on grounds unrelated to habeas notice pleadings by *Bell Atlantic Corp. v. Twombly*,
9  550 U.S. 544 (2007)). This higher standard for particularity in pleadings is to aid the court in screening
10 the petition pursuant to Habeas Rule 4. *Mayle*, 545 U.S. at 656.

11      The test to determine whether an amendment relates back to the original pleading is whether it is
12 based on "the same core facts as the timely filed claims, and not when the new claims depend on events
13 separate in both time and type from the originally raised episodes." *Id*. at 645. *See Alfaro v. Johnson*,
14 862 F.3d 1176 (9th Cir. 2017) (clarifying that the key inquiry is the difference between the claims'
15 respective factual predicates). The Mayle court also determined that "[a]n amended habeas petition . . .
16 does not relate back . . . when it supports a new ground for relief supported by facts that differ in both
17 time and type from those the original pleadings set forth." 545 U.S. at 650 (emphasis added).

18      The Ninth Circuit discussed amendments to a petition brought under § 2254 and whether the
19 amendments related back in *Hebner v. McGrath*, 543 F.3d 1133 (9th Cir. 2008). In *Hebner*, the court
20 applied the Supreme Court's test as articulated in *Mayle*. In *Hebner*, the amendments dealt with "at
21 leaset two discrete occurrences . . . the admission of evidence during trial and the instructions charged to
22 the jury after the close of the evidence." 543 F.3d at 1139. Initially, the movant brought claims only
23 related to admission of evidence during the evidentiary phase. *Id*. at 1138. The court reasoned that the
24 evidentiary phase and the instructions were "separate transactions and do not share a common core of
25 operative fact," *id*., comparing the two different portions of the trial to the *Mayle* court's analysis where,
26 in a negligence claim, there was only one accident causing one injury and from that accident arose all
27 claims. *Id*. (citing *Mayle*, 545 U.S. at 660). Therefore, even when analyzing claims under the general
28 umbrella of a jury trial, the Ninth Circuit distinguished separate phases with separate occurrence and

OPPOSITION TO MOTIONS TO AMEND            7

different cores of operative fact among those occurrences. *See id*. at 1139.

The Ninth Circuit also analyzed an ineffective assistance of counsel claim labeled as such in both the initial and amended filing in *United States v. Marulanda*, No. 04-15824, 226 Fed. App'x 709, 711 (9th Cir. 2007) (not published in the Federal Reporter), finding that even though the claim at issue in both the amended and initial motions was ineffective assistance of counsel, the amended claim was barred because the initial claim dealt with issues during the movant's first trial, whereas the amended claim was based on the movant's second trial and the "new claims are based on independent facts, different in both time and type." The First Circuit also found that even if a claim in an amended pleading has the same name or label as one in the initial pleading, this does not remove the inquiry into the core facts: "The standard cannot be satisfied 'merely by raising some type of ineffective assistance claim based upon an entirely distinct type of attorney misfeasance.'" *Turner v. United States*, 699 F.3d 578 (1st Cir. 2012) (quoting *United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005)).

Importantly, an amended petition must meet particularity requirements, as

> district courts face no obligation to wade unguided through entire exhibits attached to an original petition to determine whether those exhibits contain core facts. Relation back is decided once there is an amended petition—and an amended petition must itself satisfy the particularity standards of Rule 2(c) in order to avoid dismissal . . . . [and a briefing motion should] identify the specific portions of an earlier pleading that contain the relevant factual material to which the new pleading is attempting to relate back . . . . If the submissions discussing the amended petition fail to do so, district courts have familiar remedies, such as dismissing the new claim as time-barred for failure to show that it relates back, declining to grant leave to amend for similar reasons, or requesting supplemental briefing to better explain the relationship between the amended petition and the original one—for example, by identifying the particular facts from an attachment that support each claim for relief.

*Ross v. Williams*, 950 F.3d 1160, 1172 (9th Cir. 2020).

Additionally, when a claim that illegal or unconstitutional action by the government is an impediment to filing a petition under § 2255, a movant has one year from the date of the removal of the impediment to file. 28 U.S.C. § 2255(f)(2).[4] Limited authority exists on this issue, and most of the authority exists analyzes the parallel § 2244 statute. As to this provision in § 2255 matters, the *Jaramillo* court stated that the impediment must be a violation of law created by governmental action

---

[4] The parallel statute for habeas proceedings in state actions is 28 U.S.C. § 2244(d)(1)(B).

OPPOSITION TO MOTIONS TO AMEND 8

that results in the movant from timely moving for relief.  2020 WL 3001783 at *4 (determining that ineffective assistance of defense counsel was not a governmental action).  Additionally, the impediment generally arises in the context of a prisoner's access to legal resources after the conclusion of his case, while incarcerated.  *See Robles-Vargas v. United States*, Nos. 05CR0117H, 07CV0861H, 2008 WL 755895 at *2-3 (S.D. Cal. March 19, 2008) (unpublished) (reasoning that lack of unfettered access to the prison law library was not an impediment for a § 2255 motion); *see also Bryant v. Ariz. Atty. Gen*, 499 F.3d 1056, 1059-60 (9th Cir. 2007) (analyzing lack of access to caselaw in § 2244 context); *Shannon v. Newland*, 410 F.3d 1083, 1087-88 (9th Cir. 2005) (describing prison interference with access to legal materials as the impediment generally at issue in § 2244 context); *Egerton v. Cockrell*, 334, F.3d 433, 436-37 (5th Cir. 2003) (finding the same).

      Here, Muller classifies the claim that his plea was not knowing, voluntary, and intelligent as "broad." Dkt. 131 at 3.  He further misapplies *Twombly* as the notice-pleading requirement for all federal claims and fails to acknowledge the heightened requirements for habeas and related claims.  Dkt. 131 at 3.  He also asserts that "Prosecutors were on notice that the totality of the government's conduct was at issue in relation to the plea challenge." *Id*.  However, this does not meet the standards set forth in *Mayle*, *Marulanda*, and *Turner*.  The additional allegations include actions by Alameda County law enforcement officials, Dkt. 132 at 3, "authorities" generally planting or destroying evidence "at some point," *id*. at 4, and specifics regarding allegations against the "Dublin authorities."  *Id*. at 5.  He accuses "Dublin authorities" of deleting video footage and withholding evidence, without any factual basis for the allegations.  *Id*. at 5-6.  He accuses federal prosecutors of collusion with the victims and local authorities, again without any proffers.  *Id*. at 8-9. As in *Turner*, the labels are not dispositive, and these additional facts cannot relate back.  Even so, his Second Amended Supplement (dkt. 132) directly recites the exact same grounds for relief raised in his original petition and screened by this Court.  He then frames similar allegations as relating to only the knowing/voluntary/intelligent plea entry claim in his Second Amended Motion. Dkt. 143. Additionally, in his Second Amended Motion, he again argues that "some of the factual material in the amended motion expands on [original claims] . . . . [and that] [o]ther factual material is new, but supports the existing claims . . . ."  *Id*. at 59.  As in his previous filing, Muller does not specifically state which claims he is referring to (apart from his amorphous

OPPOSITION TO MOTIONS TO AMEND         9

categorization of knowing/voluntary/intelligent plea entry), which facts he is referring to, and where those facts and/or claims can be found in 1) the original motion and 2) the subsequent filing as required by *Ross*.  This Court would need to engage in a scavenger hunt in order to make those determinations, and the court in *Ross* describes the impropriety of such a venture.

      Muller also alleges grand schemes of federal conspiracies to conceal and destroy evidence, plant evidence, and falsify warrants, dkt. 132 at 5-6, and a conspiracy with county authorities to wait to file charges.  *Id*. at 8.  These, too, have no connection to the initial petition.  While Muller did raise *Brady* and *Giglio* issues in his initial filing, he did so in a claim on the denial of a preliminary hearing, *see* dkt. 61 at 10-11, and on a claim of a failure to provide exculpatory evidence and a failure to investigate claims for their truth or falsity.  *Id*. at 13-14.  He goes on to further describe these grand conspiracies in his most recent filing.  *See* Dkt. 143.  His allegations are including but not limited to: use of false evidence and forgery to prosecute crime "victims" (*id*. at 1), planted evidence (*id*.), falsified warrants (*id*. at 19-21), forged signatures (*id*. at 20), claims of the use of Photoshop to alter evidence (*passim*), a claim that the FBI staged an entire search and evidence found during that search (*id*. at 15-16) and further inflammatory and baseless allegations of a similar nature.  He argues that his inability to learn of this "evidence," coupled with his *already existing* mental health conditions, rendered his plea involuntary/ unknowing/ unintelligent (*id*. at 55-58), and argues that his motion is timely given that the filing is within one year of the removal of purported illegal government impediments.

      On the whole, these are independent facts entirely, the likes of which were mentioned nowhere in Muller's initial pleadings.  That they could be interpreted to influence whether his plea was knowing, intelligent, and voluntary is too vague to meet the notice requirements under *Mayle* and its progeny.

      Furthermore, Muller's contention that the purported unconstitutional acts by government actors (both local and federal) constitute an impediment under § 2255(f)(2) is inaccurate.  Even *if* the outlandish and baseless claims proved true, the purported illegal acts constituting impediments occurred at the time of the crime in this case.  All allegations are surrounding the crime, investigation, prosecution, and plea. Muller asserts limited allegations of lack of access to materials, but he states the duration was for a timeframe of two months.  Dkt. 143 at 6.[5]  In fact, his voluminous filings in these

---

[5] Muller alleges that "the prosecution team precipitated his detention, rape and beating in prison
OPPOSITION TO MOTIONS TO AMEND      10

proceedings, coupled with outside assistance from family (*see* Dkt. 143 at 59), demonstrate his ability to litigate these proceedings.  In fact he implicitly argues that the illegality persists, as he states, "[t]he only way for the government to meaningfully remove the impediment its illegal act created would be to admit and repudiate them."  *Id*.  This argument has no limit.  Essentially, the defendant contends that he should be free to amend until such time as the government agrees with his fantasies.

### B. <u>Muller's Motions to Amend and Amended Pleadings Are Properly Classified As Amendments, Not Successive Pleadings, and As Such, Leave to Amend May Be Denied</u>

Typically, Section 2255(h)(1) governs successive applications for relief under the section: any second or successive motion must be certified by an appellate panel as provided in § 2244, and there would need to be "newly discovered evidence[6] that, if proven and viewed in the light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder

---

. . . ."  Dkt. 143 at 6.  The government explicitly denies any such allegations and would posit that if allegations of misconduct amounting to rape or beatings have occurred, a petition pursuant to § 2255 is the incorrect vehicle for relief.

[6] Some court suggest that when a motion pursuant to § 2255 asserts newly discovered evidence, the petition in some cases can be treated as a motion for a new trial, but not as a vehicle for relief pursuant to § 2255.  In *United States v. Jackson*, 209 F.3d 1103, 1106 (9th Cir. 2000), the court determined that where newly obtained evidence of a witness's "recantation" in a different proceeding prompted a movant's motion under § 2255, "[w]e treat [the] motion . . . as a motion for a new trial . . . ."  Accordingly, the movant would need to demonstrate that, "(1) the evidence was newly discovered, (2) [the movant] exercised due diligence in uncovering the new evidence, (3) the new evidence is not merely cumulative or impeaching, (4) the new evidence is material, and (5) the new evidence is such that a new trial would probably produce an acquittal."  *Id*. (citing *United States v. Lopez*, 803 F.2d 969, 977 (9th Cir. 1986) (distinguished on other grounds).  *See United States v. Kearney*, 682 F.2d 214 (D.C. Cir. 1982) (denying a petitioner's § 2255 motion because its basis was that of newly discovered evidence and was accordingly characterized as a motion for a new trial pursuant to Federal Rule of Criminal Procedure 33); *see also* Fed. R. Crim. Pro. 33 (allowing a motion for new trial to be granted after a verdict *or finding* of guilt).

Courts are still split as to whether a § 2255 claim should be viewed as a motion for new trial when alleged newly discovered evidence is at issue, but the Supreme Court articulated in *Herrera v. Collins*, 506 U.S. 390, 400 (1993) that a petitioner's argument under habeas review raising newly discovered evidence "is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits. . . . The fundamental miscarriage of justice exception is available only where the prisoner *supplements* his constitutional claim with a colorable showing of factual innocence.  We have never held that it extends to freestanding claims of actual innocence." (internal quotations and citations omitted).  *Accord*. *Conley v. United States*, 323 F.3d 7, 13-14 (1st Cir. 2003) (noting "new evidence claims . . . are cognizable grounds of relief only in post-trial motions for a new trial and not under habeas or its section 2255 surrogate. . . . Merely to claim that new evidence casts doubt, even grave doubt, no the correctness of a conviction is not a ground for relief on collateral attack."); *but cf*. *Guinan v. United States*, 6 F.3d 468, 470-71 (7th. Cir. 1993) (post-*Herrera*) (differentiating a motion for new trial's purpose as a remedy for factual error, not legal error).

would have found the movant guilty of the offense." 28 U.S.C. § 2255(h)(1).  *See United States v. Lopez*, 577 F.3d 1053, 1059-61 (9th Cir. 2009) (describing the jurisprudence limiting the scope of review and explaining the procedure for second or successive § 2255 petitions); Habeas Rule 9 (stating that, "[b]efore presenting a second or successive motion, the moving party must obtain an order from the appropriate court of appeals authorizing the district court to consider the motion, as required by 28 U.S.C. § 2255, para. 8.").

The Supreme Court explained in its decision in affirming the codification of the AEDPA and its restrictions on successive habeas corpus petitions that the Act, "constitute[s] a modified res judicata rule, a restraint on what is called in habeas corpus practice 'abuse of the writ.'" *Felker v. Turpin*, 518 U.S. 651, 664 (1996).  A district court can determine whether a petition is a "second or successive" petition for habeas relief.  *Cooper v. Calderon*, 274 F.3d 1270, 1274 (9th Cir. 2001).  However, when an apparent § 2255 motion is filed prior to a ruling on an initial § 2255 motion, "the district court should construe the second § 2255 motion as a motion to amend the pending § 2255 motion." *Woods v. Carey*, 525 F.3d 886, 889 (9th Cir. 2008) (internal quotations and citations omitted).

In so holding, the Ninth Circuit joins the Second Circuit in *Ching v. United States*, 298 F.3d 174, 177 (2d Cir. 2002), and further adopts reasoning from *Ching* that once such a motion is classified as an amendment, "the district court may deny that leave [to amend] where necessary to thwart tactics that are dilatory, unfairly prejudicial, or otherwise abusive." *Woods*, 525 F.3d at 889 (quoting *Ching*, 298 F.3d at 180).  The *Woods* court thus acknowledged, as did the *Ching* court, the possibility for the abuse of the processes pursuant to § 2255; the district court's ability to deny leave to amend when abusive tactics were in play "assuaged the Second Circuit's concern that prisoners would exploit the ability to amend their pending petitions, thereby undermining AEDPA's goals of efficiency and conservation of judicial resources." *Woods*, 525 F.3d at 889.

By the form and substance of both the amended supplement (dkt. 132) and the amended petition (dkt. 143) as well as their accompanying motions to amend, Muller appears to search for a work-around to this Court's findings pursuant to its Rule 4 screening by reasserting almost every claim and formulating documents that on their face could be construed as second or successive § 2255 petitions. Muller raises unsupported factual allegations discussed *supra*, and he even resorts to character attacks

pointed at the victims in this case. *See* Dkt. 132 at 8. He claims he raises only "further detail" regarding the claims set forth in his initial petition, and claims at length that this detail was unknown to him at the time of the filing of his initial petition. Dkt. 131 at 17; *see generally* Dkt. 131, Dkt. 132, Dkt. 143. But he also presents to this Court additional information regarding his "mental health, profound isolation, and extreme conditions of confinement," that existed prior to his plea. Dkt. 132 at 10. This information on its face was known to Muller at the time of his initial petition, as it recounts his own personal history while incarcerated.

Almost all of the factual allegations discussed at length *supra* fail to state specific time frames and perhaps most tellingly are at best loosely analyzed in light of the claims recited (and re-raised) in the body of the amendments. Not only do these allegations accordingly fail the notice requirements applied to § 2255 proceedings, but they also amount to the exact types of abusive tactics anticipated by the courts in *Woods* and *Ching*. Muller's tactics are obvious to the witting observer: he attempts to undermine this Court's Rule 4 screening in his blanket reassertion of numerous claims screened and excluded, couching this effort as simply providing "further detail." Dkt. 131 at 17. Accordingly, this Court should deny any leave to amend and decide the motion on its merits or, in the alternative, grant the government's pending Motion to Dismiss. Dkt. 146.

## IV.   CONCLUSION

Muller's motions to amend the supplement to his petition, amended supplement, motion to amend the petition, and second amended petition fail statutory and legal requirements for notice pleading and a relation back to initial claims. Furthermore, there was no unlawful impediment prohibiting Muller from filing the allegations contained in the motions and amended documents in a timely fashion. Lastly, the ends of justice would not be served if this Court were to grant leave to amend, as the filings amount to delay tactics and abuse of the writ of habeas corpus. Accordingly, the motions to amend both the supplement and the petition should be denied.

Dated:  July 10, 2020

McGREGOR W. SCOTT
United States Attorney

By: /s/ LAURA JEAN BERGER
LAURA JEAN BERGER
Assistant United States Attorney