MATTHEW D. MULLER
1684 Decoto Road #274
Union City, CA 94587
Phone: (415) 322-0492
Fax: (415) 366-3326
matt@projectjusticeforall.org

*In Pro Per*

FILED

JUL 14 2020

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
            DEPUTY CLERK

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Respondent,<br><br>　v.<br><br>MATTHEW MULLER,<br><br>　　　　　Movant. | CASE NO. 2:15-CR-205-TLN-EFB<br><br>**MOVANT'S OPPOSITION TO GOVERNMENT'S MOTION TO DISMISS** |

COMES NOW the Movant Matthew Muller and opposes the government's motion to dismiss his claims brought under 28 U.S.C. § 2255. The government moves for dismissal on grounds that the Movant's claims are procedurally defaulted. They are not. The claims the Movant asserts are exactly the sort the law contemplates will be brought on collateral review.

## ARGUMENT

### I. THE MOVANT'S CHALLENGE TO HIS PLEA IS NOT PROCEDURALLY DEFAULTED

A claim first brought on collateral review can overcome a procedural default defense where a movant shows "cause" why it should be allowed, and "prejudice" from the claimed error. *Bousley v. United States*, 523 U.S. 614, 622 (1998). A second exception to default applies where "a

constitutional violation has probably resulted in the conviction of one who is actually innocent.) *Murray v. Carrier*, 477 U.S. 478, 497 (1986); *Bousley*, 523 U.S. at 622.

As an initial matter, the Movant has previously set forth evidence and argument addressing the government's procedural default defense. (*See* ECF 126 at 25-28.) The Movant hereby incorporates his reply and memorandum of January 8, 2020. It describes the one and two-thirds years of profound isolation he endured in what has been called the most extreme solitary confinement then existing in the United States. (*See id.* at 7-11.) The aftermath of this abuse lasted until well after the time for direct appeal had expired.

The Movant has also described how the government intercepted and withheld a letter sent to his family around the time the Movant pleaded guilty. (*See* ECF 101 at 3.) The letter described how the Movant was suffering from cognitive problems. The Movant's letter could have alerted his family and attorney to his dire mental condition and inability to enter a valid plea—which presumably is why prosecutors withheld it. Further and far more egregious government misconduct detailed in the Movant's pending motion for leave to amend. (ECF 142.) It is incorporated with its attachments as further reason the Movant's claims could be brought no sooner.

### A.  The Government's Explanation Of Procedural Default Misses The Mark

The government allows that procedural default is excused for claims that counsel was ineffective, claims involving a new legal basis that emerged after direct review, a narrow class of innocence claims, and claims a court was without subject matter jurisdiction. As for other claims a guilty plea was invalid, the prosecution reads them out of existence. Its odd logic is that (1) a guilty plea involves self-incrimination, (2) the legal basis for a challenge under the self-incrimination clause is long established, and so (3) a challenge to a guilty plea involves no newly available legal claim and is accordingly defaulted on collateral review.

The fallacy is plain. Prosecutors ignore the large category of claims that rest on a *factual* rather than legal predicate not available or not yet ripe at the time of direct review. They cite a core authority on the procedural default doctrine, *United States v. Massaro*, 538 U.S. 500 (2003). But they miss its central principle: that defendants should "bring their contentions to the right tribunal at the right time." *Id* at 504. *Massaro* cautions that defendants should not be "compelled to raise

MOVANT'S OPPOSITION TO
MOTION TO DISMISS                - 2 -

[an] issue before there has been an opportunity fully to develop the factual predicate for the claim." *Id. Massaro* established a categorical procedural default excuse for ineffective assistance claims, which involved facts that are almost always extrarecord on direct review. But this was no *sui generis* rule. It derived from the same "right tribunal, right time" principle that is applied to other claims on a case-by-case basis. As set forth below, the Movant has seasonably asserted his claims in the tribunal best suited to assessing the relevant events.

### B. The Movant Has Shown The Unavailability Of His Claims For Earlier Review And Has Established Cause For Not Bringing Them Sooner

To show "cause," a movant may demonstrate that the factual predicate of his claim was not available at the time of direct review, or may show that "some objective factor external to the defense" impeded the possibility of raising the claim prior to collateral review. *Murray*, 477 U.S. at 488; *see also id.* at 492 ("cause ... requires a showing of some external impediment preventing [the movant] from constructing or raising the claim.").

As set forth in the Movant's Reply and Memorandum (ECF 126 at 7-15), the compromised mental state invalidating his guilty plea was not apparent to his attorney or to Mr. Muller himself. Although by its nature the Movant's poor mental state would not be evident in any event, the Movant also actively sought to maintain a front of apparent wellness. This behavior was highly consistent with the observed behavior of other inmates in solitary confinement. A leading expert describes how prisoners in solitary confinement characteristically claim they are well when they are not:

> I expected that inmates would feign illness and exaggerate whatever psychiatric symptomology they suffered. I discovered, however, something very different. Contrary to my expectations, the prisoners appeared to be extremely defensive about the psychiatric symptoms they were suffering in [solitary confinement] they tended to rationalize away their symptoms, avoid talking about them, or deny or distort their existence all in an apparent effort to minimize the significance of their reactions to isolation.

Stuart Grassian, "Psychiatric Effects of Solitary Confinement," *22 Wash. U.J.L. & Pol'y* 325, 334-37 (2006).

1   Such behavior was so characteristic that Dr. Grassian considered it part of a syndrome of symptoms arising from severe solitary confinement. *Id.* at 333-38. Grassian also notes ways in which inmates are dissuaded from seeking care or accurately reporting their symptoms — as was the case with Mr. Muller and the threat of humiliating suicide watch in "the classroom." *Id.* at 333.

The extent of the Movant's impairment after over a year in solitary confinement was not apparent to him until well after the time to seek direct review. Although some indication of Mr. Muller's impairment at the plea hearing appeared in the record, its significance was not clear without further factual development. It is exactly the sort of claim that "cannot be advanced without the development of facts outside the record." *United States v. Jeronimo*, 398 F.3d 1149, 1156 (9th Cir. 2005). The same is true of Mr. Muller's failure to assist meaningfully in his own defense. It would not be clear to the Movant's attorney that the Movant's withdrawal from participating in the defense stemmed from the dual toll of mental illness and solitary confinement. And because Mr. Muller had been a lawyer, counsel may have reasonably believed he understood more than he actually did about what was happening in the case.

The conduct of law enforcement and prosecutors that rendered the Movant's plea invalid similarly involves "facts outside the record." The claim itself turns on the prosecution's extensive efforts to *keep* facts "outside the record." Courts have recognized in the context of *Brady* claims that cause "parallel[s]… the alleged *Brady* violation itself — that evidence be suppressed by the state willfully or inadvertently[.]" *Strickler v. Greene*, 527 U.S. 263, 282 (1999).

The same is true in this matter. If the Movant establishes that prosecutors concealed and misrepresented evidence, and that this conduct was sufficiently egregious, he will have established "cause" for excusing default. The violations alleged and their concealment by prosecutors also indicate the claims asserted were unavailable on direct review. The Movant was under no "procedural obligation to assert constitutional error on the basis of mere suspicion" of illegal conduct. *Banks v. Dretke*, 540 U.S. 668, 695-96 (2004). The Movant has seasonably asserted his previously unavailable claims on collateral review.

///

///

MOVANT'S OPPOSITION TO
MOTION TO DISMISS                   - 4 -

C.     **If The Movant Shows Prejudice Arising From The Claimed Error Itself, He Has Also Shown Prejudice Excusing Any Default**

For practical purposes, the prejudice showing the Movant must make to excuse procedural default is coterminous with the showing required to succeed in the challenge to his plea. *See Banks v. Dretke*, 540 U.S. 668, 691 (2004) (citing *Strickler*, 527 U.S. at 282); *cf. Hein v. Sullivan*, 601 F.3d 897, 905 n.4 (9th Cir. 2010) (treating prejudice inquiries for *Brady* violations and prosecutorial misconduct the same despite "distinct formulation[s]," because both inquires ask whether the error had "some impact on the outcome of the proceeding").

The prejudice test is usually articulated as a reasonable probability of a different result. *E.g. United States v. Dominguez Benitez*, 542 U.S. 74, 76 (2005). The prejudice inquiry in a plea challenge "focuses on a defendant's decisionmaking, which may not turn solely on the likelihood of conviction after trial." *Lee v. United States*, 137 S. Ct. 1958, 1966 (2017). That likelihood is nevertheless a starting point, since "defendants obviously weigh their prospects at trial in deciding whether to accept a plea." *Id.* However, when the "consequences [of conviction by trial or by plea] are similarly dire, even the smallest chance of success at trial may look attractive." *Id.*

As defense counsel acknowledged, "[a] 40 year sentence is actually a life sentence in all likelihood." (ECF 113-3 at 2.) Government counsel agreed that "[f]orty years in a no-parole system is a very long sentence." (ECF 54 at 1.) Against this backdrop, the likelihood of a different result is hardly remote. If anything the fact that he accepted an effective life sentence on what is now shown to be a false factual basis raises even more questions about the validity of his plea.

The Movant has previously submitted argument and evidence on the issue of prejudice for procedural default and the claim itself. (ECF 126 at 13-15, 23-25, 28.) Some of the Movant's claims may require a lesser prejudice showing. The Supreme Court has noted that a guilty plea without mental capacity or understanding is reversible with no prejudice inquiry. *See Dominguez Benitez*, 542 U.S. at 84 n.10 (dicta). The Ninth Circuit has noted that for a *Napue* violation involving perjured testimony—akin to the prosecution proffering fabricated evidence—"reversal is virtually automatic." *Hayes v. Brown*, 399 F.3d 972, 978 (9th Cir. 2005) (en banc) (quotations omitted). So although the Movant easily meets the "reasonable probability of a different result"

MOVANT'S OPPOSITION TO
MOTION TO DISMISS                - 5 -

standard, an even more generous one many apply.

### D. The Movant Is Constrained From Bringing An Actual Innocence Claim

The Movant has previously detailed the constraints imposed by his pending state criminal matter. Under state case law, he may waive his right not to testify by making factual assertions based on his personal knowledge. Whether or not he plans to testify, he does not wish to sacrifice the strategic advantage of preserving that choice. And as the government observes, an actual innocence excuse to default is only assessed after other excuses to default are found not to apply. And the Movant easily meets the standard for another excuse.

Prosecutors have capitalized on the Movant's constraint, declaiming their story at every opportunity despite mounting evidence of its falsity. The Movant has fallowed that evidence to what prosecutors, now call a "grand conspiracy theory. Their view of it was less dim when they were assembling grand jury materials and espousing that exact theory. It demotion from grand jury to grand conspiracy has less to do with the evidence, more to do with squelching an embarrassing controversy.

## II. THE MOVANT IS ENTITLED TO AN EVIDENTIARY HEARING

The government quotes controlling authority on evidentiary hearings, but omits a key emphasis without saying it has done so. The Ninth Circuit instructs that "a district court must grant a hearing to determine the validity of a petition brought under that section '[u]nless the motion and the files and records of the case *conclusively show* that the prisoner is entitled to no relief.'" *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (quoting 28 U.S.C. § 2255) (emphasis in *Blaylock*).

The Movant has articulated a valid claim and made a *prima facie* showing that he is entitled to relief. *United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996) (an evidentiary hearing may be denied only where a § 2255 motion fails to state a claim, or the claims "are so palpably incredible or patently frivolous as to warrant summary dismissed."). The Movant's mental health claim is particularly well-corroborated. The severity of his treatment, and its especially deleterious effect on mentally ill defendants such as the Movant, is richly documented in a major class action that came before this Court.

Both caselaw and psychiatric literature provide further support. *E.g. Coleman v. Brown*, 28 F.Sapp.3d 1068, 1095-1100 (E.D. Cal. 2014) (directing that inmates with mental illness not be held in solitary confinement for more than 72 hours). The Movant's history of episodically severe mental illness is well-documented and he had been sent to an inpatient psychiatric hospital shortly before his transfer to the Sacramento County Jail. (*See* ECF 126 at 8-12 and exhibits) The effects of his profound isolation began to tell even before the Movant's plea hearing. His fear to leave his cell and be around people caused him to request that his appearances be waived, even though he was held just across the street from the court.

At his plea hearing, the Movant spoke just seventeen words, excepting honorifics and one or two word negative and affirmative answers. He did not, as the government falsely claims, recite the factual basis for his plea. Rather, he gave only three substantive answers besides his name and date of birth. And two of those three responses were wrong. One of them pertained to the Movant's psychiatric medication, which he had not received that morning. Another wrong answer pertained to his attorney's statements about the Movant's competence. (*See id.*)

In short, the Movant was unable even to reliably assist the Court in assessing his own competence. The extent to the Movant's impairment was not clear from the existing record alone, and psychiatric literature speaks to why it would be hard to discern. *See* Grassian, *supra*, at 344. The prosecution ensured the Movant's family and his attorney would not learn of his compromised mental state when it illegally withheld a letter he sent disclosing his cognitive problems. And it would not have been evident to the Court that the Movant was impaired. Courts have cautioned against relying on personal recollection of a plea hearing to deny a § 2255 motion. *See Bostic v. United States*, 298 F.2d 678, 680 (D.C. Cir. 1961) (judge's personal recollection that petition was competent during the plea proceeding was an insufficient basis for denying his § 2255 motion; an evidentiary hearing was required).

Far from being "palpably incredible or patently frivolous," McMullen, 98 F3s at 1159, the Movant's claim is already grantable on the expanded record he has developed. (*See* ECF 126 and exhibits.) Whether or not the Movant's pending amendments are allowed, a hearing on the government's illegal acts is still warranted. Despite prosecutors' premeditated efforts to destroy

MOVANT'S OPPOSITION TO
MOTION TO DISMISS - 7 -

evidence of their wrongdoing, a record exists and should be expanded. The government refused to provide discovery to the defense unless it agreed to destroy or return all materials at the end of trial-level proceedings. (*See* ECF 16.) As detailed in the Movant's proposed amendments, that discovery was extensively altered, fabricated or incomplete.

The prosecution has already capitalized on its preplanned destruction of discovery records. Its § 2255 opposition rewrites history by fabricating e-mail messages and documents that it tellingly refuses to authenticate in response to the Movant's unopposed motion to strike them. But the government cannot escape the public record created in the civil action related to this case. That record reflects that prosecutors withheld DNA test results not only from the Movant, but even from Denise Huskins. Those results show the government's theory and the factual basis of the guilty plea to be false.

Now that prosecutors' illegal acts are catching up with them, they ask the Court to do two things: uphold the fruit of their criminal acts, and reward their diligence in concealing those acts with a dismissal that ensure they will go unexamined. The Court should do neither.

## CONCLUSION

WHEREFORE, the Court should deny the government's motion to dismiss, grant the Movant an evidentiary hearing, and appoint counsel for the Movant.

Respectfully submitted,

Dated: July 10, 2020                    Signed: /s/ Matthew D. Muller

Matthew D. Muller
*In Pro Per*